IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - -- - - - - - - - - - - - - - x
                                    :
In re:                              :        Chapter 11
                                    :
JACKSON HEWITT TAX SERVICE          :        Case No. 11-[_____] (___)
INC., et al.,                       :
                                    :
              Debtors.[1]           :        Joint Administration Pending
- - - - - - - - - - - - - - - - - - - - - - - - - -x

## JOINT PREPACKAGED PLAN OF REORGANIZATION OF JACKSON HEWITT TAX SERVICE INC. AND SUBSIDIARIES

Mark A. McDermott
J. Gregory Milmoe
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Email: Mark.McDermott@skadden.com
Email: Gregory.Milmoe@skadden.com

Mark S. Chehi (I.D. No. 2855)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square, P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000
Email: Mark.Chehi@skadden.com

Attorneys for Jackson Hewitt Tax Service Inc. and
Subsidiaries

Dated: May 23, 2011

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Jackson Hewitt Tax Service Inc. (9692), Jackson Hewitt Inc. (9705), Jackson Hewitt Technology Services LLC (2409), Tax Services of America, Inc. (7427), Jackson Hewitt Corporate Services Inc. (2415), and Hewfant Inc. (0545). The address for each of the Debtors, with the exception of Jackson Hewitt Technology Services LLC, is 3 Sylvan Way, Parsippany, NJ 07054. The address for Jackson Hewitt Technology Services LLC is 501 N. Cattlemen Rd., Sarasota, FL 34232.

# TABLE OF CONTENTS

Page

**INTRODUCTION** ......................................................................................................... 1

## ARTICLE I

## DEFINED TERMS AND RULES OF INTERPRETATION

1.1     Administrative Agent ................................................................. 1
1.2     Administrative Claim .................................................................. 1
1.3     Affiliate....................................................................................... 1
1.4     Allowed ...................................................................................... 1
1.5     "Allowed ... Claim".................................................................... 2
1.6     Avoidance Action ....................................................................... 2
1.7     Bankruptcy Code......................................................................... 2
1.8     Bankruptcy Court........................................................................ 2
1.9     Bankruptcy Rules........................................................................ 2
1.10    Bayside ....................................................................................... 2
1.11    Business Day ............................................................................... 2
1.12    Cash............................................................................................. 2
1.13    Cash Collateral Account.............................................................. 2
1.14    Cause of Action........................................................................... 2
1.15    Chapter 11 Case(s) ...................................................................... 3
1.16    Claim ........................................................................................... 3
1.17    Class ............................................................................................ 3
1.18    Confirmation................................................................................ 3
1.19    Confirmation Date........................................................................ 3
1.20    Confirmation Hearing .................................................................. 3
1.21    Confirmation Order...................................................................... 3
1.22    Creditors' Committee ................................................................... 3
1.23    Debtor has the meaning set forth in the Introduction.................. 3
1.24    D&O Liability Insurance Policies................................................ 3
1.25    Disclosure Statement................................................................... 3
1.26    Disputed Claim ............................................................................ 3
1.27    Effective Date .............................................................................. 4
1.28    Entity ........................................................................................... 4
1.29    Estate(s) ....................................................................................... 4
1.30    Executory Contract...................................................................... 4
1.31    Exhibit ......................................................................................... 4
1.32    Existing Credit Agreement .......................................................... 4
1.33    Final Order................................................................................... 4
1.34    General Unsecured Claim............................................................ 4
1.35    Holder........................................................................................... 5

| 1.36 | Impaired | 5 |
|---|---|---|
| 1.37 | Intercompany Claim | 5 |
| 1.38 | Intercompany Interest | 5 |
| 1.39 | Interest | 5 |
| 1.40 | Jackson Hewitt | 5 |
| 1.41 | Lenders | 5 |
| 1.42 | Lien | 5 |
| 1.43 | Management Incentive Plan | 5 |
| 1.44 | New Board | 5 |
| 1.45 | New Common Stock | 5 |
| 1.46 | New Revolving Credit Facility | 5 |
| 1.47 | New Term Loan Facility | 6 |
| 1.48 | Other Priority Claim | 6 |
| 1.49 | Other Secured Claim | 6 |
| 1.50 | Participating Lenders | 6 |
| 1.51 | Person | 6 |
| 1.52 | Petition Date | 6 |
| 1.53 | Plan | 6 |
| 1.54 | Plan Supplement | 6 |
| 1.55 | Priority Tax Claim | 6 |
| 1.56 | Professional | 6 |
| 1.57 | Professional Fee Claim | 6 |
| 1.58 | Reinstated | 7 |
| 1.59 | Releasees | 7 |
| 1.60 | Reorganized Debtors | 7 |
| 1.61 | Reorganized Jackson Hewitt | 7 |
| 1.62 | Requisite Participating Lenders | 7 |
| 1.63 | Retained Actions | 7 |
| 1.64 | Secured Claim | 8 |
| 1.65 | Senior Credit Facility Claims | 8 |
| 1.66 | Secured Senior Credit Facility Claims | 8 |
| 1.67 | Shareholders' Agreement | 8 |
| 1.68 | Subordinated 510(b) Claim | 8 |
| 1.69 | Unclassified Claims | 8 |
| 1.70 | Unexpired Lease | 8 |
| 1.71 | Unimpaired | 8 |

## ARTICLE II

## TREATMENT OF UNCLASSIFIED CLAIMS

| 2.1 | Administrative Claims | 9 |
|---|---|---|
| 2.2 | Priority Tax Claims | 10 |

# ARTICLE III

# CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

| 3.1 | Separate Plans | 10 |
|-----|----------------|----|
| 3.2 | Classification And Settlement | 10 |
| 3.3 | Treatment Of Classes | 11 |
| 3.4 | Alternative Treatment | 14 |
| 3.5 | Special Provision Regarding Unimpaired Claims | 14 |
| 3.6 | Procedures For Resolving Disputed, Contingent, And Unliquidated Claims | 14 |

# ARTICLE IV

# ACCEPTANCE OR REJECTION OF THIS PLAN

| 4.1 | Acceptance By Class Entitled To Vote | 14 |
|-----|--------------------------------------|----|
| 4.2 | Presumed Acceptance Of The Plan | 15 |
| 4.3 | Presumed Rejection Of The Plan | 15 |
| 4.4 | Elimination Of Classes | 15 |
| 4.5 | Cramdown | 15 |

# ARTICLE V

# MEANS FOR IMPLEMENTATION OF THIS PLAN

| 5.1 | Continued Legal Existence | 15 |
|------|---------------------------|----|
| 5.2 | Sources Of Cash For Distribution | 15 |
| 5.3 | New Revolving Credit Facility | 15 |
| 5.4 | Approval And Authorization For The New Term Loan Facility And New Revolving Credit Facility | 16 |
| 5.5 | Issuance Of New Common Stock | 16 |
| 5.6 | Section 1145 Exemption | 16 |
| 5.7 | Shareholders' Agreement For New Common Stock | 16 |
| 5.8 | Management Incentive Plan | 17 |
| 5.9 | New Board Of Reorganized Jackson Hewitt | 17 |
| 5.10 | Corporate Action | 17 |
| 5.11 | Preservation Of Causes Of Action | 17 |
| 5.12 | Effectuating Documents; Further Transactions | 17 |
| 5.13 | Exemption From Certain Transfer Taxes And Recording Fees | 18 |
| 5.14 | Further Authorization | 18 |
| 5.15 | Dissolution Of Creditors' Committee | 18 |
| 5.16 | Cancellation Of Existing Securities And Agreements | 18 |

## ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTIONS

| | | |
|---|---|---|
| 6.1 | Allowed Claims | 19 |
| 6.2 | Distributions For Claims Allowed As Of The Effective Date | 19 |
| 6.3 | Fractional Shares | 19 |
| 6.4 | Interest And Penalties On Claims | 19 |
| 6.5 | Means Of Cash Payment | 19 |
| 6.6 | Withholding And Reporting Requirements/Allocations | 19 |
| 6.7 | Preservation Of Rights | 20 |

## ARTICLE VII

## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

| | | |
|---|---|---|
| 7.1 | Assumption Of Executory Contracts And Unexpired Leases | 20 |
| 7.2 | Compensation And Benefit Programs | 21 |
| 7.3 | D&O Liability Insurance Policies | 21 |
| 7.4 | Indemnification | 21 |

## ARTICLE VIII

## CONFIRMATION AND CONSUMMATION OF THE PLAN

| | | |
|---|---|---|
| 8.1 | Condition To Confirmation | 22 |
| 8.2 | Conditions To Effective Date | 22 |
| 8.3 | Waiver Of Conditions | 22 |

## ARTICLE IX

## EFFECT OF PLAN CONFIRMATION

| | | |
|---|---|---|
| 9.1 | Binding Effect | 23 |
| 9.2 | Revesting Of Assets | 23 |
| 9.3 | Compromise And Settlement Of Claims, Interests And Controversies | 23 |
| 9.4 | Releases And Related Matters | 23 |
| 9.5 | Discharge Of The Debtors | 24 |
| 9.6 | Injunction | 25 |
| 9.7 | Exculpation And Limitation Of Liability | 25 |
| 9.8 | Term Of Bankruptcy Injunction Or Stays | 25 |
| 9.9 | Post-Effective Date Retention Of Professionals | 26 |

**ARTICLE X**

**RETENTION OF JURISDICTION**

**ARTICLE XI**

**MISCELLANEOUS PROVISIONS**

| | | |
|---|---|---|
| 11.1 | Payment Of Statutory Fees | 27 |
| 11.2 | Amendment Or Modification Of This Plan | 27 |
| 11.3 | Severability Of Plan Provisions | 28 |
| 11.4 | Successors And Assigns | 28 |
| 11.5 | Revocation, Withdrawal, Or Non-Consummation | 28 |
| 11.6 | Notice | 28 |
| 11.7 | Governing Law | 29 |
| 11.8 | Exhibits | 29 |
| 11.9 | Filing Of Additional Documents | 29 |
| 11.10 | Conflicts | 29 |

**EXHIBITS**

EXHIBIT A          NEW REVOLVING CREDIT FACILITY TERM SHEET AND PROJECTED DRAW SCHEDULE

EXHIBIT B          NEW TERM LOAN FACILITY TERM SHEET

EXHIBIT C          SHAREHOLDERS' AGREEMENT TERM SHEET

EXHIBIT D          SCHEDULE OF SUB-CLASSES

# INTRODUCTION

Jackson Hewitt Tax Service Inc. ("Jackson Hewitt") and subsidiaries (collectively, the "Debtors") propose the following joint prepackaged plan of reorganization for the resolution of the outstanding Claims against and Interests in the Debtors. Reference is made to the Disclosure Statement, distributed contemporaneously herewith, for a discussion of (i) the Debtors' history, business and operations, (ii) a summary and analysis of this Plan, and (iii) certain related matters, including risk factors relating to the consummation of this Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtors reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation.

# ARTICLE I

# DEFINED TERMS AND RULES OF INTERPRETATION

*Defined Terms*. As used herein, capitalized terms shall have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.1　　*Administrative Agent* means Wells Fargo Bank, N.A., the Administrative Agent under the Existing Credit Agreement, and any successor thereto.

1.2　　*Administrative Claim* means a Claim for costs and expenses of administration of the Chapter 11 Cases under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, but not limited to: (a) any actual and necessary costs and expenses, incurred on or after the Petition Date and through the Effective Date, of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries, and commissions for services and payments for goods, services, leased equipment and leased premises) and Claims of governmental units for taxes (including tax audit Claims related to tax years commencing after the Petition Date, but excluding Claims relating to tax periods, or portions thereof, ending on or before the Petition Date); (b) Professional Fee Claims; (c) all fees and charges assessed against the Estates under Chapter 123 of Title 28 of the United States Code; and (d) all other claims entitled to administrative claim status pursuant to a Final Order of the Bankruptcy Court.

1.3　　*Affiliate* means, with respect to any Person, "affiliate" as defined in section 101(2) of the Bankruptcy Code as if such Person were a Debtor.

1.4　　*Allowed* means, with respect to (a) any Claim, such Claim or any portion thereof that has been allowed (i) by a Final Order of the Bankruptcy Court, (ii) pursuant to the terms of this Plan, or (iii) by agreement between the Holder of such Claim and the Debtors or Reorganized Debtors; *provided, however*, that, notwithstanding anything herein to the contrary, by treating a Claim as an "Allowed Claim," the Debtors do not waive their rights to contest the amount and validity of any disputed, contingent or

unliquidated Claim in the manner and venue in which such Claim would have been determined, resolved or adjudicated if the Chapter 11 Cases had not been commenced; and (b) any Interest, an Interest that is allowed (i) pursuant to the Plan or, (ii) by agreement between the Holder of such Interest and the Debtors or Reorganized Debtors.

1.5     ***"Allowed ... Claim"*** means an Allowed Claim of the particular type or Class described.

1.6     ***Avoidance Action*** means any claim or Cause of Action of an Estate arising out of or maintainable pursuant to sections 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code or under any other similar applicable law, regardless of whether or not such action has been commenced prior to the Effective Date.

1.7     ***Bankruptcy Code*** means Title 11 of the United States Code, as now in effect or hereafter amended, to the extent such amendments apply to the Chapter 11 Cases.

1.8     ***Bankruptcy Court*** means the United States Bankruptcy Court for the District of Delaware, or any other court with jurisdiction over the Chapter 11 Cases.

1.9     ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended.

1.10     ***Bayside*** means, collectively, the affiliates of Bayside Capital, Inc. that are Lenders.

1.11     ***Business Day*** means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.12     ***Cash*** means legal tender of the United States of America and equivalents thereof.

1.13     ***Cash Collateral Account*** means that certain 2011 Cash Collateral Account (as defined in the Existing Credit Agreement) maintained by the Debtors, into which Cash in excess of the Maximum Cash Amount (as defined in the Existing Credit Agreement) is deposited, as required under the Existing Credit Agreement.

1.14     ***Cause of Action*** means any action, proceeding, agreement, Claim, cause of action, controversy, demand, debt, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, recoupment, crossclaim, counterclaim, third-party claim, indemnity claim, contribution claim or any other claim known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether pending in litigation or otherwise, in contract or in tort, in law or in equity or pursuant to any other theory of law, based in whole or in part upon any act or omission or other event occurring prior to the

Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date.

        **1.15**    *Chapter 11 Case(s)* means (a) when used with reference to a particular Debtor, the case under Chapter 11 of the Bankruptcy Code commenced by such Debtor in the Bankruptcy Court and (b) when used with reference to all Debtors, the cases under Chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court.

        **1.16**    *Claim* means a "claim" as defined in section 101(5) of the Bankruptcy Code.

        **1.17**    *Class* means a category of Claims or Interests, as described in Article III hereof.

        **1.18**    *Confirmation* means the confirmation of this Plan by the Bankruptcy Court under section 1129 of the Bankruptcy Code.

        **1.19**    *Confirmation Date* means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

        **1.20**    *Confirmation Hearing* means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

        **1.21**    *Confirmation Order* means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

        **1.22**    *Creditors' Committee* means the statutory committee of unsecured creditors, if any, appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

        **1.23**    *Debtor* has the meaning set forth in the Introduction.

        **1.24**    *D&O Liability Insurance Policies* means all insurance policies for directors' and officers' liability maintained by the Debtors, including any directors' and officers' "tail policy."

        **1.25**    *Disclosure Statement* means the disclosure statement (including all exhibits and schedules thereto) relating to this Plan, as amended, modified or supplemented from time to time, and distributed contemporaneously herewith in accordance with, among others, sections 1125, 1126(b) and 1145 of the Bankruptcy Code and Bankruptcy Rule 3017.

        **1.26**    *Disputed Claim* means (a) any Claim as to which the Debtors have interposed an objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, or any Claim otherwise disputed by the Debtors, the Reorganized Debtors, or other party in interest in accordance with applicable law, which

objection has not been withdrawn or determined by a Final Order, (b) if there are schedules, any Claim scheduled by the Debtors as contingent, unliquidated, or disputed, (c) any Claim which amends a claim scheduled by the Debtors as contingent, unliquidated, or disputed, or (d) any Claim prior to it having become an Allowed Claim.

1.27 *Effective Date* means the Business Day this Plan becomes effective as provided in Article VIII hereof.

1.28 *Entity* means "entity" as defined in section 101(15) of the Bankruptcy Code.

1.29 *Estate(s)* means, individually, the estate of any of the Debtors and, collectively, the estates of all of the Debtors created under section 541 of the Bankruptcy Code.

1.30 *Executory Contract* means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.31 *Exhibit* means an exhibit annexed to either this Plan or as an appendix to the Disclosure Statement, as amended, modified or supplemented from time to time.

1.32 *Existing Credit Agreement* means that certain Amended and Restated Credit Agreement dated as of October 6, 2006, as amended, by and among Jackson Hewitt Tax Service Inc., Jackson Hewitt Inc., Tax Services of America, Inc. and Hewfant Inc. as borrowers; the lenders from time to time party thereto as lenders; Jackson Hewitt Technology Services LLC and Jackson Hewitt Corporate Services Inc. as guarantors; and Wells Fargo Bank, N.A., successor-by-merger to Wachovia Bank, National Association, as administrative agent.

1.33 *Final Order* means an order or judgment, the operation or effect of which has not been reversed, stayed, modified, or amended, and as to which order or judgment (or any reversal, stay, modification, or amendment thereof) (a) the time to appeal, seek certiorari, or request reargument or further review or rehearing has expired and no appeal, petition for certiorari, or request for reargument or further review or rehearing has been timely filed, or (b) any appeal that has been or may be taken or any petition for certiorari or request for reargument or further review or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed, from which certiorari was sought, or to which the request was made, and no further appeal or petition for certiorari or request for reargument or further review or rehearing has been or can be taken or granted.

1.34 *General Unsecured Claim* means any Claim against any Debtor other than an Administrative Claim, a Priority Tax Claim, an Other Priority Claim, an Other Secured Claim, a Secured Senior Credit Facility Claim, a Subordinated 510(b) Claim, or an Intercompany Claim.

**1.35** *Holder* means a holder of a Claim or Interest, as applicable.

**1.36** *Impaired* means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.37** *Intercompany Claim* means any and all Claims of a Debtor against another Debtor.

**1.38** *Intercompany Interest* means an Interest in a Debtor held by another Debtor.

**1.39** *Interest* means any equity security, including a limited liability company membership interest, in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized or outstanding shares of capital stock of the Debtors, together with any warrants, options or contractual rights to purchase or acquire such equity securities at any time and all rights arising with respect thereto.

**1.40** *Jackson Hewitt* has the meaning set forth in the Introduction.

**1.41** *Lenders* means all lenders party to the Existing Credit Agreement as of the Effective Date and any Hedge Party under any Hedge Agreement (as each such term is defined in the Existing Credit Agreement).

**1.42** *Lien* shall mean any lien, security interest, pledge, title retention agreement, encumbrance, charge, mortgage or hypothecation.

**1.43** *Management Incentive Plan* means a post-Effective Date management incentive plan for management, selected employees and directors of the Reorganized Debtors, providing for incentive compensation consisting of (i) 5% of the number of shares of New Common Stock (on a fully diluted basis) in the form of restricted shares and (ii) 5% of the number of shares of New Common Stock (on a fully diluted basis) in the form of non-qualified stock options, which will (a) be allocated by the New Board, (b) be struck at the per-share value of the New Common Stock as set forth in the Confirmation Order, (c) vest over a 3-year timeframe (subject to certain performance thresholds) and (d) dilute Lender participation in the New Common Stock on a pro rata basis.

**1.44** *New Board* means the initial board of directors of Reorganized Jackson Hewitt appointed as of the Effective Date.

**1.45** *New Common Stock* means common shares in the capital of Reorganized Jackson Hewitt, par value $0.01 per share, to be authorized pursuant to the Plan.

**1.46** *New Revolving Credit Facility* means the Reorganized Debtors' new secured revolving credit facility in an aggregate committed amount of $115 million,

which shall have terms substantially as set forth in the term sheet attached hereto as <u>Exhibit A</u>.

**1.47** *New Term Loan Facility* means the Reorganized Debtors' new secured term loan facility in an amount of no more than $100 million, which shall have terms substantially as set forth in the term sheet attached hereto as <u>Exhibit B</u>.

**1.48** *Other Priority Claim* means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Claim or Priority Tax Claim.

**1.49** *Other Secured Claim* means any Secured Claim, other than a Secured Senior Credit Facility Claim.

**1.50** *Participating Lenders* means the Lenders that vote in favor of the Plan.

**1.51** *Person* means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, or other entity.

**1.52** *Petition Date* means, with respect to a Debtor, the date on which such Debtor filed its petition for relief commencing its Chapter 11 Case.

**1.53** *Plan* means this Chapter 11 plan of reorganization, including the Exhibits and all supplements, appendices, and schedules hereto, either in its current form or as the same may be altered, amended, supplemented, or modified from time to time.

**1.54** *Plan Supplement* means the compilation of documents and forms of documents, schedules and exhibits to the Plan to be filed by the Debtors no later than ten (10) Business Days prior to the hearing at which the Bankruptcy Court considers whether to confirm the Plan, as may thereafter be altered, amended, modified or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**1.55** *Priority Tax Claim* means any Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

**1.56** *Professional* means (a) any professional employed in these Chapter 11 Cases pursuant to sections 327, 328 or 1103 of the Bankruptcy Code or otherwise and (b) any professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

**1.57** *Professional Fee Claim* means an Administrative Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges incurred on or after the Petition Date and prior to and including the Effective Date.

**1.58** *Reinstated* means (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim or Interest entitles the Holder of such Claim or Interest so as to leave such Claim or Interest Unimpaired in accordance with section 1124 of the Bankruptcy Code or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default, (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code, (ii) reinstating the maturity of such Claim or Interest as such maturity existed before such default, (iii) compensating the Holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law, and (iv) not otherwise altering the legal, equitable, or contractual rights to which such Claim or Interest entitles the Holder of such Claim or Interest; *provided*, *however*, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim or Interest is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, and affirmative covenants regarding corporate existence prohibiting certain transactions or actions contemplated by this Plan, or conditioning such transactions or actions on certain factors, shall not be required to be cured or reinstated to achieve reinstatement.

**1.59** *Releasees* means the Debtors, the Reorganized Debtors, the Participating Lenders, and each of their respective members, officers, directors, agents, financial advisors, attorneys, employees, partners, Affiliates and representatives.

**1.60** *Reorganized Debtors* means the Debtors, or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

**1.61** *Reorganized Jackson Hewitt* means Jackson Hewitt or any successor thereto, by merger, consolidation or otherwise, on or after the Effective Date.

**1.62** *Requisite Participating Lenders* means the Holders of at least two thirds in dollar amount and more than one half in number of the aggregate amount of outstanding Claims under the Existing Credit Agreement.

**1.63** *Retained Actions* means all claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which any Debtor or any Debtor's Estate may hold against any Person, including, without limitation, (a) claims and Causes of Action brought prior to the Effective Date, (b) claims and Causes of Action against any Persons for failure to pay for products or services provided or rendered by any of the Debtors, (c) claims and Causes of Action relating to strict enforcement of any of the Debtors' intellectual property rights, including patents, copyrights and trademarks, (d) claims and Causes of Action seeking the recovery of any of the Debtors' or the Reorganized Debtors' accounts receivable or other receivables or rights to payment created or arising in the ordinary course of any of the Debtors' or the Reorganized Debtors' businesses, including, without limitation, claim overpayments and tax refunds, (e) all Avoidance Actions, and (f) any such claims, Causes of Action, rights

of action, suits or proceedings listed in the Disclosure Statement or any schedules filed by the Debtors in this cases, if any; *provided, however*, that Retained Actions shall not include those claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, released under Article IX herein.

      **1.64** ***Secured Claim*** means a Claim that is secured by a Lien on property in which a Debtor's Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code.

      **1.65** ***Senior Credit Facility Claims*** means all Claims outstanding under the Existing Credit Agreement, plus all amounts owed to any Hedge Party under any Hedge Agreement (as each such term is defined in the Existing Credit Agreement).

      **1.66** ***Secured Senior Credit Facility Claims*** means Senior Credit Facility Claims in an amount equal to the value of the Liens securing such Claims.

      **1.67** ***Shareholders' Agreement*** means (a) the shareholders' agreement, with respect to the New Common Stock, contemplated by the term sheet attached hereto as <u>Exhibit C</u> and (b) the final form of the shareholders' agreement as and when filed with the Bankruptcy Court.

      **1.68** ***Subordinated 510(b) Claim*** means any Claim subordinated pursuant to Bankruptcy Code section 510(b), which shall include (a) any Claim arising from the rescission of a purchase or sale of (i) Interests in Jackson Hewitt or (ii) debt securities of Jackson Hewitt, (b) any Claim for damages arising from the purchase or sale of (i) any Interests in Jackson Hewitt or (ii) debt securities of Jackson Hewitt, or (c) any Claim for reimbursement, contribution or indemnification on account of any such Claim.

      **1.69** ***Unclassified Claims*** means Administrative Claims and Priority Tax Claims.

      **1.70** ***Unexpired Lease*** means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

      **1.71** ***Unimpaired*** means a Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

      *Rules Of Interpretation And Computation Of Time.* For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in

such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns; (e) all references in this Plan to Sections and Articles are references to Sections and Articles of or to this Plan; (f) the words "herein," "hereunder," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) subject to the provisions of any contract, certificates of incorporation, by-laws, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (j) in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply; (k) "including" means "including without limitation;" and (l) with reference to any distribution under this Plan, "on" a date means on or as soon as reasonably practicable after that date.

*Exhibits*.  All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court on or after the Petition Date, but in any event, no later than ten (10) Business Days prior to the hearing at which the Bankruptcy Court considers whether to confirm the Plan.  Holders of Claims and Interests may obtain a copy of the Exhibits upon written request to the Debtors.  Upon their filing, the Exhibits may be inspected (a) in the office of the clerk of the Bankruptcy Court or its designee during normal business hours; (b) on the Bankruptcy Court's website at http://www.deb.uscourts.gov (registration required) or (c) at our noticing agent's website at http://www.jacksonhewittcaseinfo.com. The documents contained in the Exhibits shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

## ARTICLE II

## TREATMENT OF UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not classified and are not entitled to vote on this Plan.

**2.1**     *Administrative Claims*.  On, or as soon as reasonably practicable after, the later of (a) the Effective Date, (b) the date on which an Administrative Claim becomes an Allowed Administrative Claim, or (c) the date on which an Allowed Administrative Claim becomes payable under any agreement relating thereto, each Holder of such Allowed Administrative Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Administrative Claim, Cash equal to the unpaid portion of such Allowed Administrative Claim. Notwithstanding the foregoing, (x) any Professional Fee Claim shall not be paid except in

accordance with an order of the Bankruptcy Court permitting such payment, (y) any Allowed Administrative Claim based on a liability incurred by a Debtor in the ordinary course of business during the Chapter 11 Cases may be paid in the ordinary course of business in accordance with the terms and conditions of any agreement relating thereto and (z) any Allowed Administrative Claim may be paid on such other terms as may be agreed to between the Holder of such Allowed Administrative Claim and the Debtors or the Reorganized Debtors.

      **2.2**    *Priority Tax Claims*.  The legal and equitable rights of the Holders of Priority Tax Claims are Unimpaired by the Plan.  Unless the Holder of an Allowed Priority Tax Claim and the Debtors agree to a different treatment, on the Effective Date, each Holder of an Allowed Priority Tax Claim shall have such Claim Reinstated.

# ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

      **3.1**    *Separate Plans*.  This Plan, though proposed jointly, constitutes separate plans proposed by each of the Debtors.  Therefore, except as expressly specified herein, the classifications set forth below shall be deemed to apply separately with respect to each plan proposed by each Debtor.

      **3.2**    *Classification And Settlement*.  Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtors.  Except as otherwise provided in the Plan, each Class consists of sub-Classes for each Debtor, and each sub-Class shall and shall be deemed to be a separate Class for all purposes under the Bankruptcy Code.  A schedule of the sub-Classes is set forth in <u>Exhibit D</u> to the Plan.  A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.  Each reference to "Class" or "Classes" shall include all sub-Classes of the respective Class or Classes, as applicable.

      Moreover, the Plan implements a compromise and settlement with respect to the Senior Credit Facility Claims, Intercompany Claims, and Intercompany Interests.  Pursuant to Bankruptcy Rule 9019 and section 1123(b)(3) of the Bankruptcy Code, the Plan shall constitute a motion for approval of, and the Confirmation Order shall authorize and constitute Bankruptcy Court approval of, such settlement.

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 ............. | Other Priority Claims | Unimpaired | No (deemed to accept) |
| Class 2 ............. | Other Secured Claims | Unimpaired | No (deemed to accept) |

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 3 ............. | Secured Senior Credit Facility Claims | Impaired | Yes |
| Class 4 ............. | General Unsecured Claims | Impaired | No (deemed to reject) |
| Class 5 ............. | Subordinated 510(b) Claims | Impaired | No (deemed to reject) |
| Class 6 ............. | Interests in Jackson Hewitt | Impaired | No (deemed to reject) |
| Class 7 ............. | Intercompany Claims | Unimpaired | No (deemed to accept) |
| Class 8 ............. | Intercompany Interests | Unimpaired | No (deemed to accept) |

### 3.3 *Treatment Of Classes*.

**(a)** *Class 1 – Other Priority Claims*

(i) *Claims In Class:* Class 1 consists of separate sub-Classes for all Other Priority Claims that may exist against each Debtor, respectively.

(ii) *Treatment:* On, or as soon as reasonably practicable after, (a) the Effective Date if such Other Priority Claim is an Allowed Other Priority Claim on the Effective Date or (b) the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, each Holder of an Allowed Class 1 Other Priority Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Other Priority Claim, Cash equal to the unpaid portion of such Allowed Other Priority Claim.

(iii) *Voting:* Class 1 is Unimpaired, and the Holders of Allowed Class 1 Other Priority Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 1 Other Priority Claims are not entitled to vote to accept or reject this Plan.

**(b)** *Class 2 – Other Secured Claims*

(i) *Claims In Class:* Class 2 consists of separate sub-Classes for all Other Secured Claims that may exist against each Debtor, respectively.

(ii) *Treatment:* On, or as soon as reasonably practicable after, the Effective Date, each Holder of an Allowed Class 2 Other Secured Claim shall be Reinstated.

(iii) *Voting:* Class 2 is Unimpaired, and the Holders of Allowed Class 2 Other Secured Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 2 Other Secured Claims are not entitled to vote to accept or reject this Plan.

**(c)**     *Class 3 – Secured Senior Credit Facility Claims*

(i)     *Claims In Class:*  Class 3 consists of separate sub-Classes for all Secured Senior Credit Facility Claims against each Debtor, respectively. The Senior Credit Facility Claims are Allowed Claims, for all purposes, in the amount of no less than $357 million and shall not be subject to any avoidance, reductions, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection, or any other challenges under any applicable law or regulation by any person or entity.

(ii)     *Treatment:*  On, or as soon as reasonably practicable after, the Effective Date, each Holder of an Allowed Class 3 Secured Senior Credit Facility Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Secured Senior Credit Facility Claim, (i) its pro rata share of the New Term Loan Facility, (ii) its pro rata share of 100% of the New Common Stock, subject to dilution on account of the Management Incentive Plan, and (iii) an opportunity to elect to participate pro rata in the New Revolving Credit Facility (and receive the associated pro rata distribution of Cash, as set forth in Section 5.3 if such holder elects to so participate).

(iii)     *Voting:*  Class 3 is Impaired.  Pursuant to section 1126 of the Bankruptcy Code, each Holder of an Allowed Class 3 Secured Senior Credit Facility Claim is entitled to vote to accept or reject this Plan.

**(d)**     *Class 4 – General Unsecured Claims*

(i)     *Claims In Class:*  Class 4 consists of separate sub-Classes for all General Unsecured Claims that may exist against each Debtor, respectively.

(ii)     *Treatment:*  The Holders of Class 4 General Unsecured Claims shall not receive or retain any property under the Plan on account of such Class 4 General Unsecured Claims.

(iii)     *Voting:*  Class 4 is Impaired, and the Holders of Class 4 General Unsecured Claims are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, the Holders of Class 4 General Unsecured Claims are not entitled to vote to accept or reject this Plan.

**(e)**     *Class 5 – Subordinated 510(b) Claims*

(i)     *Claims In Class:*  Class 5 consists of all Subordinated 510(b) Claims.  This Class is applicable only to the Chapter 11 Case of Jackson Hewitt.

(ii)     *Treatment:*  The Holders of Class 5 Subordinated 510(b) Claims shall not receive or retain any property under the Plan on account of such Class 5 Subordinated 510(b) Claims.

(iii)    *Voting:*  Class 5 is Impaired, and the Holders of Class 5 Subordinated 510(b) Claims are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, the Holders of Class 5 Subordinated 510(b) Claims are not entitled to vote to accept or reject this Plan.

**(f)**    *Class 6 – Interests in Jackson Hewitt*

(i)    *Interests In Class:*  Class 6 consists of all Interests in Jackson Hewitt.  This Class is applicable only to the Chapter 11 Case of Jackson Hewitt.

(ii)    *Treatment:*  On the Effective Date, all Class 6 Interests in Jackson Hewitt shall be cancelled without further action by the Debtors or Reorganized Debtors.  The Holders of Class 6 Interests in Jackson Hewitt shall not receive or retain any property under the Plan on account of such Class 6 Interests in Jackson Hewitt.

(iii)    *Voting:*  Class 6 is Impaired, and the Holders of Class 6 Interests in Jackson Hewitt are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, the Holders of Class 6 Interests in Jackson Hewitt are not entitled to vote to accept or reject this Plan.

**(g)**    *Class 7 – Intercompany Claims*

(i)    *Claims In Class:*  Class 7 consists of three sub-Classes each consisting of the following Claims, respectively:  (i) the Intercompany Claim held by Jackson Hewitt Inc. against Jackson Hewitt; (ii) the Intercompany Claim held by Jackson Hewitt Corporate Services Inc. against Jackson Hewitt Inc.; and (iii) the Intercompany Claim held by Jackson Hewitt Inc. against Tax Services of America, Inc.

(ii)    *Treatment:*  On or prior to the Effective Date, (i) the Allowed Intercompany Claim held by Jackson Hewitt Inc. against Jackson Hewitt shall either be Reinstated, in full or in part, or cancelled and discharged, in full or in part; (ii) the Allowed Intercompany Claim held by Jackson Hewitt Corporate Services Inc. against Jackson Hewitt Inc. shall be Reinstated; and (iii) the Allowed Intercompany Claim held by Jackson Hewitt Inc. against Tax Services of America, Inc. shall be Reinstated.

(iii)    *Voting:*  Sub-Class 7 relating to the Intercompany Claim held by Jackson Hewitt Inc. against Jackson Hewitt is conclusively deemed to have rejected the Plan.  Sub-Classes 7 relating to the Intercompany Claim held by Jackson Hewitt Corporate Services Inc. against Jackson Hewitt Inc., and the Intercompany Claim held by Jackson Hewitt Inc. against Tax Services of America, Inc., respectively, are conclusively deemed to have accepted the Plan.  Therefore, the Holders of Class 7 Intercompany Claims are not entitled to vote to accept or reject this Plan.

**(h)** *Class 8 – Intercompany Interests*

(i) *Interests In Class:* Class 8 consists of five sub-Classes each consisting of the following Intercompany Interests, respectively: (i) Jackson Hewitt's Intercompany Interests in Jackson Hewitt Inc.; (ii) Jackson Hewitt Inc.'s Intercompany Interests in Jackson Hewitt Technology Services LLC; (iii) Jackson Hewitt Inc.'s Intercompany Interests in Jackson Hewitt Corporate Services Inc.; (iv) Jackson Hewitt Inc.'s Intercompany Interests in Tax Services of America, Inc.; and (v) Jackson Hewitt Inc.'s Intercompany Interests in Hewfant Inc.

(ii) *Treatment:* On the Effective Date, the Allowed Class 8 Intercompany Interests shall be Reinstated and the legal, equitable, and contractual rights to which the Holders of such Allowed Class 8 Intercompany Interests are entitled shall remain unaltered so as to maintain the organizational structure of the Debtors as such structure existed on the Petition Date.

(iii) *Voting:* Class 8 is Unimpaired, and the Holders of Allowed Class 8 Intercompany Interests are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 8 Intercompany Interests are not entitled to vote to accept or reject this Plan.

**3.4** ***Alternative Treatment***. Notwithstanding any provision herein to the contrary, any Holder of an Allowed Claim may receive, instead of the distribution or treatment to which it is entitled hereunder, any other distribution or treatment to which it and the Debtors or the Reorganized Debtors may agree in writing.

**3.5** ***Special Provision Regarding Unimpaired Claims***. Except as otherwise provided in this Plan, nothing shall affect the Debtors' or the Reorganized Debtors' rights and defenses, both legal and equitable, with respect to any Unimpaired Claims, including but not limited to all rights with respect to legal and equitable defenses to setoffs against or recoupments of Unimpaired Claims.

**3.6** ***Procedures For Resolving Disputed, Contingent, And Unliquidated Claims***. The Debtors and the Reorganized Debtors may contest the amount and validity of any disputed, contingent or unliquidated Claim in the ordinary course of business in the manner and venue in which such Claim would have been determined, resolved or adjudicated if the Chapter 11 Cases had not been commenced.

## ARTICLE IV

## ACCEPTANCE OR REJECTION OF THIS PLAN

**4.1** ***Acceptance By Class Entitled To Vote***. Class 3, which is the only Impaired Class of Claims of the Debtors that is entitled to receive or retain property or any interest in property under this Plan, is entitled to vote to accept or reject this Plan. Class 3 shall have accepted this Plan if (a) the Holders of at least two-thirds in amount of the Allowed Claims actually voting in the Class have voted to accept this Plan and (b) the Holders of more than one-half in number of the Allowed Claims actually voting in the

Class have voted to accept this Plan, not counting the vote of any Holder designated under section 1126(e) of the Bankruptcy Code.

**4.2**      ***Presumed Acceptance Of The Plan***.  Classes 1, 2, 7, and 8 are Unimpaired.  Therefore, such Classes are deemed to have accepted this Plan by operation of law and are not entitled to vote to accept or reject the Plan.

**4.3**      ***Presumed Rejection Of The Plan***.  Classes 4, 5, and 6 are Impaired.  Therefore, such Classes are deemed to have rejected this Plan by operation of law and are not entitled to vote to accept or reject the Plan.

**4.4**      ***Elimination Of Classes***.  To the extent applicable, any Class (including, for the avoidance of doubt, any sub-Class) that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed to have been deleted from this Plan for purposes of (a) voting to accept or reject this Plan and (b) determining whether it has accepted or rejected this Plan under section 1129(a)(8) of the Bankruptcy Code.

**4.5**      ***Cramdown***.  The Debtors shall request Confirmation of this Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code. The Debtors reserve the right to modify this Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THIS PLAN

**5.1**      ***Continued Legal Existence***.  Except as otherwise provided in this Plan, each of the Debtors will continue to exist after the Effective Date as a separate legal entity, with all the powers of such an entity (whether a corporation, limited liability company or other entity, as appropriate) under applicable law in the jurisdiction in which each applicable Debtor is incorporated or otherwise formed and pursuant to such Debtor's certificate or articles of incorporation and by-laws or other organizational documents in effect prior to the Effective Date, without prejudice to any right to terminate such existence (whether by merger or otherwise) under applicable law after the Effective Date.

**5.2**      ***Sources Of Cash For Distribution***.  All Cash necessary for the Reorganized Debtors to make payments required by this Plan shall be obtained from (a) existing Cash balances, including balances in the Cash Collateral Account, (b) the operations of the Debtors or Reorganized Debtors and (c) the New Revolving Credit Facility.

**5.3**      ***New Revolving Credit Facility***.  All Lenders will be given the opportunity to participate in the New Revolving Credit Facility on a pro rata basis based upon the amount of their Secured Senior Credit Facility Claims.  To the extent the New Revolving Credit Facility is not fully subscribed, subscribing Lenders will "flex" their pro rata share thereof by 10% (by way of example, a 15% Lender would flex to 16.5%).

To the extent the New Revolving Credit Facility remains not fully subscribed after such "flex", subscribing Lenders electing to do so may, but shall not be obligated to, further subscribe on a pro rata basis. In exchange for providing the New Revolving Credit Facility, such Lenders will receive (on a pro rata basis based upon their participation in the New Revolving Credit Facility) the Cash on the Reorganized Debtors' balance sheet (including any Cash in the Cash Collateral Account) in excess of $5 million as of the Effective Date. On the Effective Date, the New Revolving Credit Facility will be drawn in an amount (the "Initial Draw") that shall be the lesser of (i) the actual amount of Cash collateral used by the Debtors between April 30, 2011 and the Effective Date (the "Actual Draw") and (ii) an amount based upon the Debtors' projected revolver draw (the "Projected Draw") as set forth on the Projected Draw Schedule contained in Exhibit A attached hereto, provided that during the period between the Petition Date and the Effective Date, all expenses of the Debtors and their estates, other than those related to professional fees, shall be in amounts consistent with the Debtors' ordinary course of operations and the cash budget approved pursuant to the terms of any cash collateral order. If the Initial Draw is deemed to be the Projected Draw and the Effective Date falls between two dates shown on the Projected Draw Schedule, the amount of the Initial Draw shall be prorated based upon the number of days between such Effective Date and the scheduled dates such Effective Date falls between.

**5.4** **_Approval And Authorization For The New Term Loan Facility And New Revolving Credit Facility_**. Confirmation shall be deemed approval of the New Term Loan Facility and the New Revolving Credit Facility and authorization for the Reorganized Debtors to enter into the New Term Loan Facility and the New Revolving Credit Facility and execute such documents as may be required to effectuate the treatment afforded to the Lenders pursuant to the New Term Loan Facility and the New Revolving Credit Facility.

**5.5** **_Issuance Of New Common Stock_**. On the Effective Date, Reorganized Jackson Hewitt shall issue shares of New Common Stock for distribution to Holders of Allowed Secured Senior Credit Facility Claims. All of the shares of New Common Stock issued pursuant to the Plan shall be duly authorized, validly issued, fully paid and non assessable. The New Common Stock issued to the Holders of Allowed Secured Senior Credit Facility Claims shall be subject to dilution by the Management Incentive Plan.

**5.6** **_Section 1145 Exemption_**. Pursuant to section 1145 of the Bankruptcy Code, the issuance and allocation of the New Common Stock to Holders of Allowed Secured Senior Credit Facility Claims shall be exempt from registration under the Securities Act and any state or local law requiring registration for offer or sale of a security.

**5.7** **_Shareholders' Agreement For New Common Stock_**. On the Effective Date, Reorganized Jackson Hewitt and the Lenders shall be deemed to have executed and delivered the Shareholders' Agreement. Each Holder of an Allowed Class 3 Secured Senior Credit Facility Claim shall be deemed bound by the Shareholders'

Agreement as of the Effective Date without the need for execution or delivery by such Holder.

**5.8** *Management Incentive Plan*.  The New Board will implement the Management Incentive Plan.

**5.9** *New Board Of Reorganized Jackson Hewitt*.  The New Board of Reorganized Jackson Hewitt shall be comprised of five (5) directors elected by a majority of the shareholders.  The identity of the members of the New Board will be identified in the Plan Supplement or in a filing with the Bankruptcy Court at or prior to the Confirmation Hearing.

**5.10** *Corporate Action*.  Each of the matters provided for under this Plan involving the corporate structure of any Debtor or Reorganized Debtor or any corporate action to be taken by or required of any Debtor or Reorganized Debtor shall be deemed to have occurred and be effective as provided herein, and shall be authorized, approved and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by stockholders, members, creditors, directors, or managers of the Debtors or the Reorganized Debtors.

**5.11** *Preservation Of Causes Of Action*.  In accordance with section 1123(b)(3) of the Bankruptcy Code, the Reorganized Debtors will retain and may (but are not required to) enforce all Retained Actions, except that the Debtors hereby waive all Avoidance Actions.  After the Effective Date, the Reorganized Debtors, in their sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), without further approval of the Bankruptcy Court.  The Reorganized Debtors or any successors, in the exercise of their sole discretion, may pursue such Retained Actions so long as it is in the best interests of the Reorganized Debtors or any successors holding such rights of action.  The failure of the Debtors to specifically list any claim, right of action, suit, proceeding or other Retained Action in this Plan does not, and will not be deemed to, constitute a waiver or release by the Debtors or the Reorganized Debtors of such claim, right of action, suit, proceeding or other Retained Action, and the Reorganized Debtors will retain the right to pursue such claims, rights of action, suits, proceedings and other Retained Actions in their sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches will apply to such claim, right of action, suit, proceeding, or other Retained Action upon or after the Confirmation or consummation of this Plan.

**5.12** *Effectuating Documents; Further Transactions*.  Each of the Debtors and Reorganized Debtors, and their respective officers and designees, is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan, or to otherwise comply with applicable law.

**5.13** *Exemption From Certain Transfer Taxes And Recording Fees*. Pursuant to section 1146(a) of the Bankruptcy Code, any transfers from a Debtor to a Reorganized Debtor or to any other Person or entity pursuant to this Plan, or any agreement regarding the transfer of title to or ownership of any of the Debtors' real or personal property will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**5.14** *Further Authorization*. The Debtors and the Reorganized Debtors shall be entitled to seek such orders, judgments, injunctions, and rulings as they deem necessary to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

**5.15** *Dissolution Of Creditors' Committee*. A Creditors' Committee, if appointed, shall continue in existence until the Effective Date to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code and shall perform such other duties as it may have been assigned by the Bankruptcy Court prior to the Effective Date. On the Effective Date, the Creditors' Committee, if appointed, shall be dissolved and the Creditors' Committee's members shall be deemed released of all their duties, responsibilities, and obligations in connection with the Chapter 11 Cases or this Plan and its implementation, and the retention or employment of the Creditors' Committee's attorneys, accountants, professionals, and other agents shall terminate, except with respect to (a) all Professional Fee Claims and (b) any appeals of the Confirmation Order.

**5.16** *Cancellation Of Existing Securities And Agreements*. Except as provided in this Plan or in the Confirmation Order, on the Effective Date, all notes, stock, instruments, certificates, agreements, side letters, fee letters and other documents evidencing or giving rise to Senior Credit Facility Claims and Interests in Jackson Hewitt shall be cancelled, and the obligations of the Debtors thereunder or in any way related thereto shall be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote, or other approval or authorization by any Person. The Holders of or parties to such notes, stock, instruments, certificates, agreements, side letters, fee letters, and other documents shall have no rights arising from or relating to such notes, stock, instruments, certificates, agreements, side letters, fee letters, and other documents or the cancellation thereof, except the rights provided pursuant to this Plan and the Confirmation Order.

# ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTIONS

**6.1** *Allowed Claims*. Notwithstanding any provision herein to the contrary, the Debtors or the Reorganized Debtors shall make distributions only to Holders of Allowed Claims. A Holder of a Disputed Claim shall receive only a distribution on account thereof when and to the extent that such Holder's Disputed Claim becomes an Allowed Claim.

**6.2** *Distributions For Claims Allowed As Of The Effective Date*. Except as otherwise provided under this Plan or as ordered by the Bankruptcy Court, distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the Effective Date or as soon thereafter as is practicable. Any distribution to be made on the Effective Date pursuant to this Plan shall be deemed as having been made on the Effective Date if such distribution is made on the Effective Date or as soon thereafter as is practicable. Any payment or distribution required to be made under this Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

**6.3** *Fractional Shares*. No fractional shares of New Common Stock will be issued or distributed under this Plan. The actual distribution of shares of New Common Stock will be rounded to the next higher or lower whole number as follows: (a) fractions less than one-half (½) shall be rounded to the next lower whole number and (b) fractions equal to or greater than one-half (½) shall be rounded to the next higher whole number. The total number of shares of New Common Stock to be distributed herein will be adjusted as necessary to account for such rounding. No consideration will be provided to Holders of Secured Senior Credit Facility Claims in lieu of fractional shares that are rounded down.

**6.4** *Interest And Penalties On Claims*. Unless otherwise specifically provided for in this Plan or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest and penalties shall not accrue or be paid on any Claims, including Priority Tax Claims and Other Priority Claims, and no Holder of a Claim shall be entitled to interest and penalties accruing on or after the Petition Date through the date such Claim is satisfied in accordance with the terms of this Plan.

**6.5** *Means Of Cash Payment*. Payments of Cash made pursuant to this Plan shall be in U.S. dollars and shall be made, at the option and in the sole discretion of the applicable Reorganized Debtor, by (a) checks drawn on or (b) wire transfer from a domestic bank selected by the Reorganized Debtor. Cash payments to foreign creditors may be made, at the option of the applicable Reorganized Debtor, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

**6.6** *Withholding And Reporting Requirements/Allocations*. In connection with this Plan and all distributions hereunder, the Reorganized Debtors shall

comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Reorganized Debtors shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements. Each Holder of an Allowed Class 3 Secured Senior Credit Facility Claim shall be treated as receiving, for U.S. federal income tax purposes, in full satisfaction and discharge of its Claim (i) its pro rata share of the New Term Loan Facility, (ii) its pro rata share of the New Common Stock, and (iii) to the extent that such Holder participates in the New Revolving Credit Facility, its share of the Cash on the Reorganized Debtors' balance sheet (including any Cash in the Cash Collateral Account) in excess of $5 million as of the Effective Date, and the Initial Draw under the New Revolving Credit Facility. Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for U.S. federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

**6.7** *Preservation Of Rights*. The Reorganized Debtors shall retain all rights arising under section 558 of the Bankruptcy Code or applicable nonbankruptcy laws, including, but not limited to, the right to set off against any Claim, the payments or other distributions to be made pursuant to this Plan in respect of such Claim, or claims of any nature whatsoever that the Debtors or the Reorganized Debtors may have against the Holder of such Claim; *provided*, *however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors of any such claim that the Debtors or the Reorganized Debtors may have against such Holder; *provided*, *further*, that the Holder of any Claim must assert any right to setoff prior to the Effective Date or such right shall be deemed waived on the Effective Date.

## ARTICLE VII

## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

**7.1** *Assumption Of Executory Contracts And Unexpired Leases*. Except as otherwise provided in the Plan, on the Effective Date, all Executory Contracts and Unexpired Leases of the Debtors shall be deemed assumed in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease (a) has previously been rejected by order of the Bankruptcy Court in effect as of the Effective Date (which order may be the Confirmation Order); (b) is the subject of a motion to reject filed on or before the Effective Date; (c) is identified as an Executory Contract or Unexpired Lease to be rejected pursuant to the Plan Supplement before the Effective Date; or (d) expired or terminated pursuant to its own terms. An Executory Contract or Unexpired Lease that is deemed to be assumed pursuant to the foregoing sentence shall be referred to as an "Assumed Contract."

Entry of the Confirmation Order by the Bankruptcy Court shall constitute findings by the Bankruptcy Court that (a) the Reorganized Debtors had properly provided for the cure of any defaults that might have existed, (b) each assumption is in the best interest of the Reorganized Debtors, their Estates, and all parties in interest in the Chapter 11 Cases and (c) the requirements for assumption of any Executory Contract or Unexpired Lease to be assumed had been satisfied. Except as otherwise provided in the following sentence, all cure payments under any Assumed Contract shall be made by the Reorganized Debtors on the Effective Date or as soon as practicable thereafter. In the event of a dispute, cure payments required by section 365(b)(1) of the Bankruptcy Code shall be paid upon entry of a Final Order resolving such dispute.

**7.2** *Compensation And Benefit Programs*. All of the Debtors' programs, plans, agreements and arrangements relating to employee compensation and benefits, including, without limitation, all savings plans, retirement plans, healthcare plans, disability plans, severance plans, incentive plans, and life, accidental death and dismemberment insurance plans, entered into before the Petition Date and not since terminated, will be deemed to be, and will be treated as though they are (other than any Executory Contract rejected pursuant to Section 7.1), Executory Contracts that are assumed under Section 7.1 of this Plan, and the Debtors' and Reorganized Debtors' obligations under such programs, plans, agreements and arrangements will survive Confirmation of this Plan and will be fulfilled in the ordinary course of business.

**7.3** *D&O Liability Insurance Policies*. As of the Effective Date, the D&O Liability Insurance Policies shall be treated as if they were Executory Contracts that are assumed under this Plan. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the Debtors' foregoing assumption of each of the D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in the Plan, Confirmation of the Plan shall not discharge, impair or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation shall be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no proof of claim need be filed.

**7.4** *Indemnification*. Except as otherwise specifically limited in this Plan, any obligations or rights of the Debtors or Reorganized Debtors to defend, indemnify, reimburse, or limit the liability of the Debtors' present and former directors, officers, employees, agents, representatives, attorneys, accountants, financial advisors, investment bankers and consultants (the "Covered Persons") pursuant to the Debtors' or Reorganized Debtors' certificates of incorporation, by-laws, policy of providing employee indemnification, applicable state law, or specific agreement in respect of any claims, demands, suits, Causes of Action, or proceedings against such Covered Persons based upon any act or omission related to such Covered Persons' service with, for, or on behalf of the Debtors prior to the Effective Date, excluding claims resulting from gross negligence, willful misconduct, or intentional tort, shall be treated as if they were Executory Contracts that are assumed under this Plan and shall survive the Effective Date and remain unaffected thereby, and shall not be discharged, irrespective of whether such

defense, indemnification, reimbursement, or limitation of liability is owed in connection with an occurrence before or after the Petition Date.

## ARTICLE VIII

## CONFIRMATION AND CONSUMMATION OF THE PLAN

**8.1** *Condition To Confirmation*. Confirmation of the Plan is conditioned upon the Confirmation Order being reasonably acceptable in form and substance to the Debtors and the Participating Lenders.

**8.2** *Conditions To Effective Date*. The Debtors shall request that the Confirmation Order include a finding by the Bankruptcy Court that, notwithstanding Bankruptcy Rule 3020(e), the Confirmation Order shall take effect immediately upon its entry. The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived by the Debtors and the Participating Lenders in accordance with the terms hereof:

**(a)** The Confirmation Order, in form and substance reasonably satisfactory to the Debtors and the Participating Lenders, shall have become a Final Order and shall, among other things, provide that the Debtors and the Reorganized Debtors are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the New Term Loan Facility and the New Revolving Credit Facility and other agreements or documents created in connection with this Plan.

**(b)** All documents related to, provided for therein, or contemplated by the New Term Loan Facility and the New Revolving Credit Facility shall have been executed and delivered, and all conditions precedent thereto shall have been satisfied (other than the occurrence of the Effective Date).

**(c)** All authorizations, consents, and regulatory approvals required, if any, in connection with the consummation of this Plan shall have been obtained.

**(d)** All other actions, documents, and agreements necessary to implement this Plan shall have been effected or executed.

**(e)** The payment in full of all fees and expenses of the Administrative Agent and Bayside and their respective professionals (as set forth in Section 4(b) of the Plan Support Agreement.)

**(f)** The payment in full of all fees and expenses of the arranger under the New Term Loan Facility and the New Revolving Credit Facility.

**8.3** *Waiver Of Conditions*. Each of the conditions to the Effective Date set forth herein may be waived in whole or in part by the Debtors and the Participating Lenders, without any notice to parties in interest or the Bankruptcy Court and without a hearing. The failure to satisfy or waive any condition to the Effective Date

may be asserted by the Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied, including any action or inaction by the Debtors. The failure of the Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

## ARTICLE IX

## EFFECT OF PLAN CONFIRMATION

**9.1** **_Binding Effect_**. This Plan shall be binding upon and inure to the benefit of the Debtors, their Estates, all present and former Holders of Claims and Interests, and their respective successors and assigns, including but not limited to the Reorganized Debtors.

**9.2** **_Revesting Of Assets_**. Except as otherwise explicitly provided in this Plan, on the Effective Date, all property comprising the Estates (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in the Reorganized Debtors, free and clear of all Claims, Liens, charges, encumbrances, rights and Interests of creditors and equity security holders. As of the Effective Date, the Reorganized Debtors may operate their businesses and use, acquire, and dispose of their property without supervision of the Bankruptcy Court, and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan or the Confirmation Order.

**9.3** **_Compromise And Settlement Of Claims, Interests And Controversies_**. In consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan, shall constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates and Holders of Claims and Interests and is fair, equitable and reasonable. Without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against or Interests in them and Causes of Action against other Persons.

**9.4** **_Releases And Related Matters_**

**(a)** **Releases by the Debtors**

**As of the Effective Date, for good and valuable consideration provided by each of the Releasees, including, but not limited to, (i) the discharge of debt; (ii) the obligations of the Releasees to provide the support necessary for consummation of the Plan; and (iii) the services of the Releasees in facilitating the expeditious**

implementation of the restructuring contemplated by this Plan, the adequacy of which is hereby confirmed, each of the Debtors, in their individual capacities and as debtors in possession, their Estates, and the Reorganized Debtors shall be deemed to forever release, waive and discharge the Participating Lenders and each of the Participating Lenders' and the Debtors' respective current and former members, officers, directors, agents, financial advisors, accountants, investment bankers, consultants, attorneys, employees, partners, subsidiaries, affiliates, and representatives (in each case only in their capacity as such), and their respective properties from any and all Causes of Action, whether known or unknown, arising from or related in any way to the Debtors, including, without limitation, those that any of the Debtors or Reorganized Debtors would have been legally entitled to assert in their own right (whether individually or collectively) or that any Holder of a Claim or Interest or other Entity would have been legally entitled to assert on behalf of any of the Debtors or any of their Estates, and further including those in any way related to the Chapter 11 Cases, the Disclosure Statement or this Plan to the fullest extent of the law; *provided*, *however*, that the foregoing shall not operate to waive or release any Releasee from any Causes of Action arising under the New Term Loan Facility or the New Revolving Credit Facility.

**(b)** **Releases by the Lenders**

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Participating Lender shall be deemed to have fully discharged and released the Releasees and their respective property from any and all Causes of Action, whether known or unknown, arising from or related in any way to the Debtors, including, without limitation, those in any way related to the Chapter 11 Cases, the Disclosure Statement or this Plan; *provided*, *however*, that the foregoing shall not operate to waive or release any Releasee from any Causes of Action arising under the New Term Loan Facility or the New Revolving Credit Facility or any Causes of Action by any Participating Lender that provides cash management services to a Releasee to the extent such Causes of Action are for usual and customary cash management fees and charges.
.

**9.5** *Discharge Of The Debtors*

**(a)** Upon the Effective Date, the Debtors, and each of them, shall be deemed discharged and released under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in section 502 of the Bankruptcy Code, whether or not (i) a proof of claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (ii) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code, (iii) a Claim based upon such debt is or has been disallowed by order of the Bankruptcy Court, or (iv) the Holder of a Claim based upon such debt accepted this Plan.

**(b)** As of the Effective Date, except as provided in this Plan or the Confirmation Order, all Persons shall be precluded from asserting against the Debtors

or the Reorganized Debtors, any other or further Claims, debts, rights, Causes of Action, claims for relief, liabilities, or equity interests relating to the Debtors based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date.  In accordance with the foregoing, except as provided in this Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge of all such Claims and other debts and liabilities against the Debtors, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtors at any time, to the extent that such judgment relates to a discharged Claim.

### 9.6    *Injunction*

Except as provided in this Plan or the Confirmation Order, as of the Effective Date, all Persons that have held, currently hold, may hold, or allege that they hold, a Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, or liability that is released or discharged under this Article IX are permanently enjoined from taking any of the following actions against the Debtors, the Reorganized Debtors, and their respective Affiliates or their property on account of any such released or discharged Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, or liability: (a) commencing or continuing, in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any Lien or encumbrance; (d) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to any released Person; or (e) commencing or continuing any action, in each such case in any manner, in any place, or against any Person that does not comply with or is inconsistent with the provisions of this Plan or the Confirmation Order.

### 9.7    *Exculpation And Limitation Of Liability*

**None of the Releasees shall have or incur any liability to any Entity, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the Disclosure Statement, the formulation, negotiation, or implementation of this Plan, the solicitation of acceptances of this Plan, the pursuit of Confirmation of this Plan, the Confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors; *provided*, *however*, that the foregoing provisions of this exculpation shall have no effect on the liability of any Releasee that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct; *provided further*, that each Releasee shall be entitled to reasonably rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Plan.**

### 9.8    *Term Of Bankruptcy Injunction Or Stays*.  Except as provided otherwise in this Plan, from and after the Effective Date, the automatic stay of section 362(a) of the Bankruptcy Code shall terminate.

**9.9**     *Post-Effective Date Retention Of Professionals*.  Upon the Effective Date, any requirement that professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate and the Reorganized Debtors will employ and pay professionals in the ordinary course of business.

## ARTICLE X

## RETENTION OF JURISDICTION

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction (unless otherwise indicated) over all matters arising out of, and related to, the Chapter 11 Cases and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

**(a)**     Resolve any matters related to the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which any Debtor is a party or with respect to which any Debtor or Reorganized Debtor may be liable and to hear, determine, and, if necessary, liquidate any Claims arising therefrom;

**(b)**     Decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date (which jurisdiction shall be non-exclusive as to any such non-core matters);

**(c)**     Enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan, the Disclosure Statement, or the Confirmation Order;

**(d)**     Resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of this Plan or any contract, instrument, release, or other agreement or document that is executed or created pursuant to this Plan, or any entity's rights arising from or obligations incurred in connection with this Plan or such documents;

**(e)**     Modify this Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, this Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan;

**(f)**     Hear and determine all applications for compensation and reimbursement of expenses of Professionals under this Plan or under sections 330, 331,

503(b), and 1129(a)(4) of the Bankruptcy Code; *provided*, *however*, that from and after the Effective Date the payment of fees and expenses by the Reorganized Debtors, including professional fees, shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

        **(g)**     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation, or enforcement of this Plan or the Confirmation Order;

        **(h)**     Adjudicate controversies arising out of the administration of the Estates or the implementation of this Plan;

        **(i)**     Hear and determine Causes of Action by or on behalf of the Debtors or the Reorganized Debtors;

        **(j)**     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked, or vacated, or distributions pursuant to this Plan are enjoined or stayed;

        **(k)**     Determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement, or the Confirmation Order;

        **(l)**     Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases;

        **(m)**     Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code; and

        **(n)**     Enter an order closing the Chapter 11 Cases.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

        **11.1**     *Payment Of Statutory Fees*.  All fees payable pursuant to section 1930 of Title 28, United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on the Effective Date.

        **11.2**     *Amendment Or Modification Of This Plan*.  Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, the Debtors reserve the right to alter, amend, or modify this Plan at any time prior to or after the Confirmation Date but prior to the substantial consummation of this Plan*, provided, however,* that the Participating Lenders approve of such alteration, amendment or modification.  A Holder of a Claim that has accepted this

Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.

**11.3** *Severability Of Plan Provisions*. If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**11.4** *Successors And Assigns*. This Plan shall be binding upon and inure to the benefit of the Debtors, and their respective successors and assigns, including, without limitation, the Reorganized Debtors. The rights, benefits, and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such entity.

**11.5** *Revocation, Withdrawal, Or Non-Consummation*.

The Debtors reserve the right to revoke or withdraw this Plan at any time prior to the Confirmation Date and to file other plans of reorganization. If the Debtors revoke or withdraw this Plan, or if Confirmation or consummation of this Plan does not occur, then (a) this Plan shall be null and void in all respects, (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount any Claim or Class of Claims), assumption of Executory Contracts or Unexpired Leases effected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void, and (c) nothing contained in this Plan, and no acts taken in preparation for consummation of this Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person, (ii) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (iii) constitute an admission of any sort by the Debtors or any other Person.

**11.6** *Notice*. All notices, requests, and demands to or upon the Reorganized Debtors to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

JACKSON HEWITT TAX SERVICE INC.
3 Sylvan Way
Parsippany, New Jersey 07054
Telephone: (973) 630-0707
Fax: (973) 630-0702
Att'n: Steven L. Barnett, Esq.

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
Fax: (212) 735-2000
Att'n: J. Gregory Milmoe, Esq.
Att'n: Mark A. McDermott, Esq.

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP
One Rodney Square, P.O. Box 636
Wilmington, Delaware 19899
Telephone: (302) 651-3000
Fax: (302) 651-3001
Att'n: Mark S. Chehi, Esq.

Attorneys for Debtors and Debtors in Possession

**11.7** *Governing Law*. Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an Exhibit or schedule to this Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of New York without giving effect to the principles of conflicts of law of such jurisdiction.

**11.8** *Exhibits*. All Exhibits to this Plan are incorporated and are a part of this Plan as if set forth in full herein.

**11.9** *Filing Of Additional Documents*. On or before substantial consummation of this Plan, the Debtors shall file such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

**11.10** *Conflicts*. In the event that provisions of the Disclosure Statement and provisions of this Plan conflict, the terms of this Plan shall govern.

*Remainder of Page Left Intentionally Blank*

Dated: May 23, 2011
Parsippany, New Jersey

JACKSON HEWITT TAX SERVICE INC.
(on behalf of itself and the other Debtors)

By: _____
Name: Daniel P. O'Brien
Title: EVP & CFO

Mark A. McDermott
J. Gregory Milmoe
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Email: Mark.McDermott@skadden.com
Email: Gregory.Milmoe@skadden.com

Mark S. Chehi (I.D. No. 2855)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
One Rodney Square, P.O. Box 636
Wilmington, Delaware 19899
(302) 651-3000
Email: Mark.Chehi@skadden.com

Attorneys for Jackson Hewitt Tax Service
Inc. and Subsidiaries

EXHIBIT A

TO

JOINT PREPACKAGED PLAN OF REORGANIZATION
<u>OF JACKSON HEWITT TAX SERVICE INC. AND ITS AFFILIATES</u>

# NEW REVOLVING CREDIT FACILITY TERM SHEET

| | | | |
|---|---|---|---|
| **Administrative Agent:** | Third Party Agent to be agreed upon by Bayside and the Company | | |
| **Arranger:** | Wells Fargo Securities, LLC | | |
| **Annual Agent Fee:** | TBD | | |
| **Arranger Fee:** | $125,000 under the New Revolver; $250,000 total | | |
| **New Revolver:** | $115 million or such slightly lesser amount as deemed acceptable by the Administrative Agent and Bayside | | |
| | 1st lien on all assets | | |
| | Maturity date 8/1/15 | | |
| | Pricing: | | |
| | | **Cash Rate** | **Unused Fee** |
| | | L + 4.50% | .50% |
| | * Cash rate declines by 1.00% (i.e. to L+ 3.50%) if Covenant EBITDA for any audited period exceeds $50MM.  Cash rate returns to L+4.50% if Covenant EBITDA for any audited period is less than or equal to $50MM. | | |
| | LIBOR Floor of 2.00% | | |
| | | | |
| **Financial Covenants Applicable to New Revolver:** | | **Minimum EBITDA** | **Maximum Average Total Leverage** |
| | Closing to 1st anniversary | $35 million | 4.25x |
| | 2nd full year | $37 million | 4.10x |
| | 3rd full year to maturity | $40 million | 3.80x |
| | | | |
| | | | |
| **Reporting Requirements:** | Reporting will be generally consistent with leveraged middle market credits. | | |
| **Control of Cash** | Cash subject to acceptable deposit account control agreements.  The Company will covenant not to retain more than $15 million in cash at any time that there is an outstanding revolver balance.  This covenant may not be modified without the consent of 90% of Lenders. | | |
| **Required Lenders:** | (a) For so long as Bayside holds twenty percent or more of the commitments under the New Revolver, Lenders holding two-thirds of the commitments under the New Revolver (or if the commitments under the New Revolver have expired or otherwise been terminated, the outstanding loans under the New Revolver); provided, however, that a majority of the non-Bayside Lenders may direct the Administrative Agent to declare an event of default and exercise rights and remedies thereafter; (b) Otherwise, Lenders holding a majority of the commitments under the New Revolver (or if the commitments under the New Revolver have expired or otherwise been terminated, the outstanding loans under the New Revolver). | | |
| **Other Terms** | Credit Agreement to include representations, warranties, affirmative covenants, negative covenants, events of default and other provisions generally consistent with leveraged middle market credits. | | |

## PROJECTED DRAW SCHEDULE

| Date of Emergence | 5/31 2011 | 6/30 2011 | 7/31 2011 | 8/31 2011 | 9/30 2011 | 10/31 2011 | 11/30 2011 | 12/31 2011 | 1/31 2012 | 2/29 2012 | 3/31 2012 | 4/30 2012 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Initial Draw (in $ millions) | 15.5 | 24.5 | 33.6 | 43.3 | 50.0 | 59.8 | 71.0 | 83.5 | 93.3 | 18.9 | 0.0 | 0.0 |

EXHIBIT B

TO

JOINT PREPACKAGED PLAN OF REORGANIZATION
<u>OF JACKSON HEWITT TAX SERVICE INC. AND ITS AFFILIATES</u>

# NEW TERM LOAN FACILITY TERM SHEET

| | |
|---|---|
| **Administrative Agent:** | Third Party Agent to be agreed upon by Bayside and the Company |
| **Arranger:** | Wells Fargo Securities, LLC |
| **Annual Agent Fee:** | TBD |
| **Arranger Fee:** | $125,000 under the New Term Loan; $250,000 total |
| **New Term Loan:** | $100 million |
| | 2nd lien on all assets |
| | Maturity date 8/1/16 (~5.25 years) |
| | Pricing: L + 8.00%.  Rate declines by 1.00% (i.e. to L+7.00%) if Covenant EBITDA for any audited period exceeds $50MM.  Rate returns to L+8.00% if Covenant EBITDA for any audited period is less than or equal to $50MM. |
| | LIBOR Floor of 2.00% |
| | May be pre-paid at any time without a premium |

| **Financial Covenants Applicable to New Term Loan:** | | **Minimum EBITDA** | **Maximum Average Total Leverage** |
|---|---|---|---|
| | Closing to 1st anniversary | $35 million | 4.25x |
| | 2nd full year | $37 million | 4.10x |
| | 3rd full year to maturity | $40 million | 3.80x |
| | | | |
| | | | |

| | |
|---|---|
| **Reporting Requirements:** | Reporting will be generally consistent with leveraged middle market credits. |
| **Control of Cash** | Cash subject to acceptable deposit account control agreements.  The Company will covenant not to retain more than $15 million in cash at any time that there is an outstanding revolver balance.  This covenant may not be modified without the consent of 90% of Lenders. |
| **Required Lenders:** | (a) For so long as Bayside holds twenty percent or more of the outstanding principal amount of the New Term Loan, lenders holding two-thirds of the outstanding principal amount of the New Term Loan; provided, however, that a majority of the non-Bayside Lenders may direct the Administrative Agent to declare an event of default and exercise rights and remedies thereafter; (b) Otherwise, Lenders holding a majority of the outstanding principal amount of the New Term Loan. |
| **Other Terms** | Credit Agreement to include representations, warranties, affirmative covenants, negative covenants, events of default and other provisions generally consistent with leveraged middle market credits. |

EXHIBIT C

TO

JOINT PREPACKAGED PLAN OF REORGANIZATION
<u>OF JACKSON HEWITT TAX SERVICE INC. AND ITS AFFILIATES</u>

# SHAREHOLDERS' AGREEMENT TERM SHEET

| | |
|---|---|
| **Board:** | Jackson Hewitt shall be managed by a board of **5** directors (the "**Board**") elected by a majority of shareholders. |
| **Pre-emptive Rights:** | Except in connection with a registered public offering of shares, each shareholder shall have a right to subscribe to any issuance by Jackson Hewitt of shares or any securities exercisable, convertible or exchangeable for shares (other than the issuance of shares to management through an incentive plan and such other exemptions as may be agreed to by the parties) in an amount that would allow each such shareholder to maintain its fully diluted equity ownership interest percentage in Jackson Hewitt. |
| **Tag Along Rights:** | In the event of a sale, transfer or other disposition by a shareholder, in one or more transactions, of more than 25% of the outstanding shares (including by means of merger), the other shareholders shall have the right to participate on a pro rata basis in such transaction, on identical terms and conditions and for the same consideration (subject to customary exclusions for transfers to affiliates and public offerings). |
| **Right of First Refusal:** | No shareholder may transfer (other than to a permitted transferee) any of its shares comprising less than 49.9% of the fully diluted equity of Jackson Hewitt (the "**Subject Shares**"), without first offering the Subject Shares to the other shareholders. Such offer must remain outstanding for not less than fifteen (15) days and shall allow shareholders acquiring Subject Shares not less than fifteen (15) additional days to close such sale transaction. In the event other shareholders desire to purchase the Subject Shares, they may do so on a pro rata basis among those so wishing to purchase subject to an overallotment right until such time as no shareholders elect to purchase any additional Subject Shares. The right of first refusal shall apply regardless of whether the other shareholders elect to purchase less than all of the Subject Shares. The selling shareholder is free to sell any shares not sold in accordance with the above terms to any non-shareholder on the same terms and conditions offered to the other shareholders during the 30 day period following the expiration of the period during which the other shareholders have the right to exercise their right of first refusal, provided that such selling shareholder will not sell such shares (a) to any competitor of Jackson Hewitt, or (b) in contravention of any transfer restrictions imposed on the shares (including, without limitation, those transfer restrictions imposed to preserve Jackson Hewitt's non-reporting status) by any legend contained thereon, by an restriction contained in the Shareholders' Agreement, or by any restriction in the organizational documents of Reorganized Jackson Hewitt. Any proposed transfer that would be in contravention of these provisions shall be void and of no force or effect. The right of first refusal and the procedures described in this section shall not apply to any transfer of shares to another shareholder, where the agreement to sell or transfer such shares was made prior to the Effective Date of the Plan. |
| **Drag Along Rights:** | In the event of a sale, transfer or other disposition of more than a majority of the outstanding shares to a third party (including by means of a merger), the selling shareholders may exercise a drag-along right in connection with such transaction to compel all other shareholders to dispose of their shares on identical terms and conditions and for the same per share consideration, provided that the other shareholders shall only be required to sell the same percentage of their shares as the selling shareholders are selling of their shares. |
| **Information Rights:** | Jackson Hewitt will provide to each shareholder party to the Shareholders' Agreement (i) within 120 days after the end of each fiscal year, audited financial statements for Jackson Hewitt and its consolidated subsidiaries for such year, together with a copy of the audit report of Jackson Hewitt's independent public accountants; (ii) within 45 days after the end of each fiscal quarter, unaudited |

| | quarterly financial statements for the quarterly period then ended and the comparable period in the prior year; and (iii) any other financial information, including budgets and projections, that such Shareholder may reasonably request from time to time. In addition, each Shareholder party to the Shareholder Agreement that holds more than 3% of the outstanding shares shall have the right, two times per year, upon reasonable notice and at reasonable times, to meet with management of the Company and one time per year to attend an annual group meeting with the auditors and other representatives of the Company; subject to appropriate confidentiality agreements and to the right of the Company to limit such access if necessary to preserve any privilege that the Company is entitled to claim; <u>provided, however</u>, that there shall be no limitation on meetings with auditors and other representatives of the Company after the occurrence and during the continuation of any event of default under the New Term Loan, New Revolver or any other material contract. |

EXHIBIT D

TO

JOINT PREPACKAGED PLAN OF REORGANIZATION
OF JACKSON HEWITT TAX SERVICE INC. AND ITS AFFILIATES

# SCHEDULE OF SUB-CLASSES

Set forth below are the sub-Classes for Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 3 (Secured Senior Credit Facility Claims), Class 4 (General Unsecured Claims), Class 7 (Intercompany Claims) and Class 8 (Intercompany Interests):

| SUB-CLASSES FOR CLASS 1 (OTHER PRIORITY CLAIMS) | DEBTOR |
|---|---|
| 1.1 | Hewfant Inc. |
| 1.2 | Jackson Hewitt Corporate Services Inc. |
| 1.3 | Jackson Hewitt Inc. |
| 1.4 | Jackson Hewitt Tax Service Inc. |
| 1.5 | Jackson Hewitt Technology Services LLC |
| 1.6 | Tax Services of America, Inc. |

| SUB-CLASSES FOR CLASS 2 (OTHER SECURED CLAIMS) | DEBTOR |
|---|---|
| 2.1 | Hewfant Inc. |
| 2.2 | Jackson Hewitt Corporate Services Inc. |
| 2.3 | Jackson Hewitt Inc. |
| 2.4 | Jackson Hewitt Tax Service Inc. |
| 2.5 | Jackson Hewitt Technology Services LLC |
| 2.6 | Tax Services of America, Inc. |

| SUB-CLASSES FOR CLASS 3 (SECURED SENIOR CREDIT FACILITY CLAIMS) | DEBTOR |
|---|---|
| 3.1 | Hewfant Inc. |
| 3.2 | Jackson Hewitt Corporate Services Inc. |
| 3.3 | Jackson Hewitt Inc. |
| 3.4 | Jackson Hewitt Tax Service Inc. |
| 3.5 | Jackson Hewitt Technology Services LLC |
| 3.6 | Tax Services of America, Inc. |

| SUB-CLASSES FOR CLASS 4 (GENERAL UNSECURED CLAIMS) | DEBTOR |
|---|---|
| 4.1 | Hewfant Inc. |
| 4.2 | Jackson Hewitt Corporate Services Inc. |
| 4.3 | Jackson Hewitt Inc. |
| 4.4 | Jackson Hewitt Tax Service Inc. |
| 4.5 | Jackson Hewitt Technology Services LLC |
| 4.6 | Tax Services of America, Inc. |

| SUB-CLASSES FOR CLASS 7 (INTERCOMPANY CLAIMS) | INTERCOMPANY CLAIMS |
|---|---|
| 7.1 | Intercompany Claim held by Jackson Hewitt Inc. against Jackson Hewitt |
| 7.2 | Intercompany Claim held by Jackson Hewitt Corporate Services Inc. against Jackson Hewitt Inc. |
| 7.3 | Intercompany Claim held by Jackson Hewitt Inc. against Tax Services of America, Inc. |

| SUB-CLASSES FOR CLASS 8 (INTERCOMPANY INTERESTS) | INTERCOMAPNY INTERESTS |
|---|---|
| 8.1 | Jackson Hewitt's Intercompany Interests in Jackson Hewitt Inc. |
| 8.2 | Jackson Hewitt Inc.'s Intercompany Interests in Jackson Hewitt Technology Services LLC |
| 8.3 | Jackson Hewitt Inc.'s Intercompany Interests in Jackson Hewitt Corporate Services Inc. |
| 8.4 | Jackson Hewitt Inc.'s Intercompany Interests in Tax Services of America, Inc. |
| 8.5 | Jackson Hewitt Inc.'s Intercompany Interests in Hewfant Inc. |