IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - x
                                :

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| JACKSON HEWITT TAX SERVICE INC., et al., | : | Case No. 11-11587 (MFW) |
| | : | |
| Debtors.[1] | : | Joint Administration Pending |

- - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR INTERIM AND FINAL STIPULATED ORDERS UNDER 11 U.S.C. §§ 361, 363, AND 507(b), FED. R. BANKR. P. 4001(b) AND DEL. BANKR. L. R. 4001-2 (I) AUTHORIZING THE USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) SCHEDULING A FINAL HEARING AND (IV) GRANTING RELATED RELIEF**

        The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), hereby move (the "Motion") this Court for entry of interim (the "Interim Order") and final (the "Final Order") orders under sections 361, 363, and 507(b) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001(b) of Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware ("Local Rules"), authorizing the use of Cash Collateral (as defined below), granting adequate protection, and scheduling a final hearing regarding the same. At the interim hearing, the Debtors will request entry of an Interim Order, substantially in the form of the Interim Order attached hereto. In support of the Motion, the Debtors rely upon and incorporate by reference the Declaration of Daniel P. O'Brien, Chief Financial Officer of Jackson Hewitt Tax Service Inc.,

---

[1]     The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Jackson Hewitt Tax Service Inc. (9692), Jackson Hewitt Inc. (9705), Jackson Hewitt Technology Services LLC (2409), Tax Services of America, Inc. (7427), Jackson Hewitt Corporate Services Inc. (2415), and Hewfant Inc. (0545). The address for each of the Debtors, with the exception of Jackson Hewitt Technology Services LLC, is 3 Sylvan Way, Parsippany, NJ 07054. The address for Jackson Hewitt Technology Services LLC is 501 N. Cattlemen Rd., Sarasota, FL 34232.

in Support of Chapter 11 Petitions and First Day Pleadings (the "O'Brien Declaration"), filed

with the Court concurrently herewith. In further support of the Motion, the Debtors respectfully

represent:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.

§§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and

this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory and legal predicates for the relief requested herein are

Bankruptcy Code sections 361, 363, and 507(b), Bankruptcy Rule 4001(b), and Local Rule

4001-2.

## BACKGROUND

3.      On the date hereof (the "Petition Date"), the Debtors filed voluntary

petitions in this Court for relief under chapter 11 of the Bankruptcy Code. The factual

background regarding the Debtors, including their business operations, their capital and debt

structure, and the events leading to the filing of these bankruptcy cases, is set forth in detail in

the O'Brien Declaration. The Debtors continue to manage and operate their businesses as

debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108. On the Petition

Date, the Debtors filed with the Court, among other things, (i) the joint prepackaged plan of

reorganization (the "Plan") and (ii) a disclosure statement related thereto.

## RELIEF REQUESTED

4.      By this Motion, the Debtors hereby request entry of interim and final

orders authorizing the use of cash that constitutes Cash Collateral under the Credit Agreement

(defined below), granting adequate protection in connection with the use of such Cash Collateral,

and scheduling a final hearing regarding the same. The Debtors propose to serve a copy of any

interim order granting this Motion within three (3) business days after entry thereof. The Debtors further request that the Court (a) set a deadline for filing objections to the Motion and entry of the Final Order thereon, (b) set a final hearing on the Motion, and (c) enter the Final Order on this Motion at or after such final hearing.

## BASIS FOR RELIEF

5. The Debtors, Wells Fargo Bank, N.A., successor-by-merger to Wachovia Bank, N.A., as Administrative Agent (the "Agent"), and various lenders (the "Lenders") are parties to that certain Amended and Restated Credit Agreement, dated as of October 6, 2006 (as amended and modified and together with all ancillary documents, the "Credit Agreement").

6. As of the Petition Date, the Debtors were obligated on (a) approximately $288.2 million principal amount of term loans under the Credit Agreement, (b) approximately $65.6 million principal amount of outstanding revolver loans under the Credit Agreement (including unpaid interest that has accrued and been capitalized), and (c) approximately $2.4 million under related hedge agreements.

7. The obligations under the Credit Agreement are secured by a first priority lien on all of the Debtors' assets, including all of the Debtors' cash (collectively, the "Prepetition Collateral"). As described in more detail in the Debtors' motion to continue to use their cash management system, substantially all of the Debtors' cash is held in two accounts – the "Concentration Account" and the "Cash Collateral Account" – which are held by the Agent. Under the terms of the Credit Agreement, the Debtors are required to transfer from the Concentration Account excess cash over $10 million to the Cash Collateral Account. The Debtors' cash constitutes "cash collateral" under Bankruptcy Code section 363 (the "Cash Collateral").

## SUMMARY OF SELECTED TERMS OF INTERIM ORDER[2]

8.      In accordance with Local Rule 4001-2, the following is a summary of the

relief requested and set forth in the proposed form of Interim Order.[3]

(a)     Use of Cash Collateral.  Subject in all respects to the terms and conditions set forth in the Interim Order, including without limitation, those provisions relating to an event of default thereunder, and the termination of the use of Cash Collateral upon the occurrence of such an event of default and the giving of notice as set forth therein, the Debtors are authorized to use Cash Collateral up through and including the date that is sixty (60) days after the Petition Date (as such date may be extended either by this Court or consensually by the Debtors and the Lenders holding two-thirds of the principal amount of the loans under the Prepetition Loan Documents (the "**Required Lenders**") from time to time, the "**Termination Date**")) for the purposes set forth in, and in accordance with, the budget attached to the Interim Order as Schedule 1 (the "**Budget**").  During the term of the Interim Order, unless otherwise consented to by the Required Lenders, during any Reporting Period[4] (a) the Debtors' usage of Cash Collateral for employee wages, benefits, and other compensation  shall in the aggregate not exceed the amounts set forth in the Budget for such usage by more than fifteen percent (15%) and (b) such usage for all Controllable Cost,[5] net of cash collections, shall not exceed the net amounts set forth in the Budget by more than ten percent (10%).

(b)     Adequate Protection.  The Agent and the Lenders are granted the following adequate protection for any diminution in the value of the Agent and the Lenders' interests in the Prepetition Collateral from the Petition

---

[2]     The description of the terms of the proposed Interim Order provided in this Motion is intended only as a summary.  In the event of any inconsistency between the descriptions set forth herein and the terms of the Interim Order, the terms of the Interim Order shall govern.

[3]     The terms of the Final Order should be substantially similar to the terms of the Interim Order.

[4]     As used in the Interim Order a "Reporting Period" shall mean (v) the period commencing on the first Sunday following the Petition Date and ending on the Saturday of such week, then; (w)  the period commencing on the first Sunday following the Petition Date and ending on the Saturday of the second week following the Petition Date, then; (x) the period commencing on the first Sunday following the Petition Date and ending on the Saturday of the third week following the Petition Date, then; (y) the period commencing on the first Sunday following the Petition Date and ending on the Saturday of the fourth week following the Petition Date and, thereafter; (z) the next sequential rolling four-week period.

[5]     "Controllable Costs" includes business expenses, which shall include but not be limited to payroll, trade payables, and other ordinary course of business expenses, and reorganization costs and expenses, but excluding costs and expenses of the Debtors', Agent's and Lenders' professionals.

Date resulting from the use, sale, lease, disposition, shrinkage, decline in market value, consumption or physical deterioration of the Prepetition Collateral (including Cash Collateral) by the Debtors:

(i)     the Agent and the Lenders shall have and are hereby granted the Replacement Liens[6] subject to the Carve-Out and having the same relative priority as the prepetition liens held by the Agent and the Lenders;

(ii)    If, and to the extent that, the Replacement Liens and adequate protection payments provided by the Interim Order are insufficient to provide adequate protection for the Agent and the Lenders, the Agent and the Lenders are hereby granted allowed superpriority claims pursuant to § 361 of the Bankruptcy Code (the "**Superpriority Claims**"), subject to the Carve-Out, with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, §§ 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 and 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtors, and any successor trustee or any creditor, in the Chapter 11 Cases or any subsequent proceedings under the Bankruptcy Code.  Except for the Carve-Out, no cost or expense of administration under §§105, 364, 503(b), 506(c) and 507(b) of the Bankruptcy Code, or otherwise, including those resulting from the conversion of any of the Chapter 11 Cases pursuant to Bankruptcy Code §1112, shall be senior to, or pari passu with, any allowed Superpriority Claims of the Agent and the Lenders;

(iii)   (a) Within five (5) days following a request by the Agent or the Required Lenders the Debtors shall remit to the Agent (or the applicable Lender) an amount sufficient to reimburse the Agent and Lenders for all out-of-pocket expenses, including but not limited to all legal and other professional fees and expenses, incurred by the Agent and Lenders in connection with these Chapter 11 Cases and (b) upon a request by the Debtors' largest Lender, Bayside Capital, Inc., the Debtors shall remit to such party an amount equal to the fees and expenses incurred by such party

---

[6]     In the Interim Order, the term "**Replacement Lien**" shall mean that, subject to the terms and conditions set forth in the Interim Order, the Agent and Lenders shall have and are thereby granted valid binding, enforceable, non-avoidable, and perfected, security interests in, and liens upon all present and after-acquired property of the Debtors, including, without limitation, all cash contained in any account in the possession or control of the Debtors and the proceeds of all causes of action, whether pursuant to federal law or applicable state law of the Debtors or their estates, other than avoidance actions (collectively, with all proceeds and products of any or all of the foregoing, the "**Postpetition Collateral**").

(each such payment under (a) or (b), an "**Adequate Protection Payment**").

Except as expressly set forth to the contrary in the Interim Order, the Replacement Liens granted to the Agent and the Lenders pursuant to the Interim Order shall be prior and senior to all liens and encumbrances of (a) all other secured creditors in and to such property granted, or arising, subsequent to the date of the Interim Order, and (b) any intercompany claim of any Debtor or subsidiary or affiliate of any Debtor; provided, however, that the Replacement Liens granted to the Agent and the Lenders pursuant to the Interim Order shall not attach to any proceeds of claims for relief obtained pursuant to Chapter 5 of the Bankruptcy Code ("**Avoidance Actions**"), if any.

(c)     Carveout.  Any provision of the Interim Order to the contrary notwithstanding, the Replacement Liens and Superpriority Claims shall be subject and subordinate to carve-outs (collectively the "**Carve-Out**") for: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under 28 U.S.C. § 1930(a) plus interest pursuant to 31 U.S.C. § 3717 (without regard to the occurrence of an event of default or the Termination Date); (ii) accrued fees, disbursements, costs and expenses incurred at any time before the termination of the use of Cash Collateral upon the occurrence of an event of default and the giving of notice as set forth therein (whether or not paid or allowed by interim order, procedural order or otherwise as of such termination) by professionals or professional firms retained by (a) the Debtors pursuant to sections 327, 328 or 363 of the Bankruptcy Code (the "**Debtors' Professionals**") and (b) any statutory committee appointed in these chapter 11 cases (a "**Committee**") pursuant to section 1103 of the Bankruptcy Code (the "**Committee's Professionals**", and together with the Debtors' Professionals, the "**Case Professionals**"); and (iii) all fees, disbursements, costs and expenses incurred on and after the termination of the use of Cash Collateral upon the occurrence of an event of default and the giving of notice as set forth therein by the Case Professionals in an aggregate amount not to exceed $500,000.00 which is an amount estimated to cover such fees, disbursements, costs, and expenses for a reasonable period thereafter (the "**Post Termination Date Cap**"); provided, further, that the Post Termination Date Cap shall neither be reduced nor increased by the amount of any fees, disbursements, costs or expenses incurred, awarded or paid prior to such termination; provided, however, that neither the Carve-Out nor any of the Cash Collateral shall be used to pay fees, disbursements, costs or expenses incurred in connection with the commencement and prosecution of any adversary proceeding or contested matter in which any party asserts any claims or causes of action against any or all of the Agent or Lenders and/or challenges or raises any defense to the Prepetition Obligations, the Agent, the Lenders, or the Replacement Liens.  Absent the occurrence of the

termination of the use of Cash Collateral upon the occurrence of an event of default and the giving of notice as set forth therein, the Debtors shall be permitted to pay all fees, disbursements, costs or expenses allowed and payable under Bankruptcy Code §§ 328, 330 and 331 and any administrative order of this Court, as the same may be payable.

Notwithstanding anything to the contrary in the Interim Order, and absent further order of this Court, (i) in no event during the course of the Chapter 11 Cases will actual payments in respect of the aggregate fees and expenses of all Committee's Professionals exceed $250,000 in the aggregate (the "**Committee Expense Cap**"); any portion of the Committee Investigation Fund (as defined below) actually used by a Committee and its professionals shall be deducted from, and shall reduce dollar-for-dollar the Committee Expense Cap; and (iii) any and all claims incurred by a Committee in excess of the Committee Expense Cap shall not constitute an allowed administrative expense claim for purposes of section 1129(a)(9)(A) of the Bankruptcy Code.

(d)     <u>Deadline to Bring Actions</u>. The Debtors' stipulations contained in paragraph D of the Interim Order regarding the validity of the Lenders liens, claims, and security interests shall be binding upon all persons and entities including, but not limited to the Debtors, any Committee, and any chapter 11 or chapter 7 trustee hereafter appointed with respect to the Debtors and their estates, if any, except to the extent that (a) in the event a party in interest with standing (other than the Debtors) has timely filed an adversary proceeding or contested matter asserting any claims or causes of action against the Agent or Lenders, objecting to the Lenders' claims or liens, or challenging any of the stipulations set forth in Paragraph D (a "**Challenge**") no later than the date that is two weeks prior to the proposed Confirmation Date (unless such deadline is extended by written consent of the Required Lenders or by order of the Court) (the "**Challenge Period**") and (b) this Court rules in favor of the plaintiff or movant in any such timely-filed Challenge and enters a final order with respect thereto (a "**Successful Challenge**"). If no such Challenge is timely commenced within the Challenge Period, all persons and entities shall be forever barred from bringing or taking such action and the stipulations contained in Paragraph D hereof shall be permanently and irrevocably binding upon all persons and entities. Any stipulation contained in Paragraph D that is not expressly challenged in a Challenge during the Challenge Period shall remain in full force and effect and shall permanently and irrevocably bind all entities and persons, despite the filing of any other Challenge in accordance with this paragraph. Notwithstanding the foregoing, in no event shall any Cash Collateral be used by any party to commence or prosecute any adversary proceeding, contested matter or other action against any or all of the Agent or the Lenders or challenge or raise any defense to the Prepetition Obligations, the Agent, the Lenders or the Replacement Liens; <u>provided</u> <u>however</u> that, up to $50,000 of the Cash

Collateral (the "**Committee Investigation Fund**") may be used by the Committee to investigate the claims and liens of the Agent and Lenders.

(e)     <u>Termination of Use of Cash Collateral</u>.  Anything in the Interim Order to the contrary notwithstanding, the Debtors shall be prohibited from using Cash Collateral absent further order of this Court, three (3) calendar days after the Required Lenders notify the Debtors (and their counsel and counsel for any Committee) in writing that an event of default has occurred and is continuing.  The occurrence of any of the following shall constitute an event of default under the Interim Order:

(A)     (i) This Court enters an order finding that the Debtors have engaged in fraudulent conduct (either prior to or after the Petition Date); or (ii) imminent danger exists with respect to all or any material portion of the Prepetition Collateral.

(B)     The Debtors fail to perform any of their obligations in accordance with the terms of the Interim Order, including, without limitation, the Debtors' failure to use Cash Collateral in the manner and in the amounts provided for in the Budget, or to provide the information or access required by the Interim Order.

(C)     Any representation or warranty made by the Debtors under the Interim Order or any pleading, certificate, report or financial statement delivered to the Agent in these Chapter 11 Cases proves to have been false or misleading in any material respect as of the time when made or given (including by the omission of material information necessary to make such representation, warranty or statement not misleading).

(D)     The Debtors shall file a motion seeking or this Court shall enter an order appointing a Chapter 11 trustee or an examiner with expanded powers beyond those set forth in Bankruptcy Code §1104(c).

(E)     The Debtors shall file a motion seeking or this Court shall enter an order dismissing the Chapter 11 Cases or converting them to cases under Chapter 7 of the Bankruptcy Code.

(F)     Without the prior written consent of the Required Lenders, the Debtors shall file a motion seeking to grant a third party a security interest or lien upon all or part of any property of the Debtors that has a priority which is senior to, or pari passu with, the Prepetition Liens or Replacement Liens of the Agent or the Lenders in all or any of a portion of such property.

(G)     Without the prior written consent of the Required Lenders, the Debtors seek to establish additional deposit and/or other accounts

or move any Cash Collateral to an account other than with the Agent.

(H)    Entry of an order by this Court extending the Debtors' exclusive periods for the filing and confirmation of a plan of reorganization.

(I)    An order confirming the Debtors' Plan of Reorganization has not been entered by this Court on or before the sixtieth day after the Petition Date.

(J)    All conditions precedent to the effectiveness of the Debtors' Plan of Reorganization have not occurred on or before seventy-fifth day after the Petition Date.

## APPLICABLE AUTHORITY

**A.    The Use of Cash Collateral is Necessary and is a Sound Exercise of the Debtors' Business Judgment**

9.    As discussed above, all of the Debtors' cash constitutes the Cash Collateral of the Lenders. As such, without immediate authority to use Cash Collateral, the Debtors would have insufficient cash to sustain their business operations and would be forced to immediately cease operating as a going concern to the detriment of all stakeholders. Thus, the Debtors and their estates will suffer irreparable harm if such use is not immediately authorized. Accordingly, the need for the immediate use of Cash Collateral pending the final hearing is critical.

10.    Moreover, the Debtors submit that the terms and conditions set forth in the Interim Order and Final Order are, taken as a whole, fair and reasonable under the circumstances; reflect the Debtors' reasonable exercise of business judgment consistent with their fiduciary duties; and are supported by reasonably equivalent value and fair consideration. Accordingly, the relief requested is warranted under the circumstances. See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) (business judgment rule requires finding that good business reason exists to grant debtor's application under section 363(b)); see also In re Delaware & Hudson Ry. Co., 124 B.R. 169, 178-79 (D. Del. 1991).

**B.     The Use of Cash Collateral is Warranted Based on the Lenders' Consent**

        11.     The use of estate property by a debtor in possession is governed by

Bankruptcy Code section 363.  Section 363(c)(1) provides that a debtor may use estate assets in

the ordinary course of its business without notice or a hearing.  11 U.S.C. § 363(c)(1).  Section

363(c)(2), however, permits a debtor to use, sell or lease cash collateral only if the entity with an

interest in the cash collateral consents or the Court authorizes such use.  11 U.S.C. § 363(c)(1),

(2).  The Lenders have consented to the Debtors' continued use of Cash Collateral pursuant to the

terms of the Interim Order and the Final Order.  Therefore, the Court has authority to enter such

orders pursuant to Bankruptcy Code section 363(c)(2).

**C.     The Lenders' Interests are Adequately Protected**

        12.     The Debtors believe that the Lenders are adequately protected in

connection with the Debtors' proposed use of Cash Collateral.  What constitutes adequate

protection is determined on a case-by-case basis.  See MNBank Dallas, N.A. v. O'Conner (In re

O'Connor), 808 F.2d 1393, 1396 (10th Cir. 1987); Martin v. U.S. (In re Martin), 761 F.2d 472

(8th Cir. 1985); In re Beker Indus. Corp., 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986).  Although

the Bankruptcy Code does not define the term "adequate protection," it provides a non-

exhaustive list of types of adequate protection, including "other relief" resulting in the

"indubitable equivalent" of the secured creditor's interest in such property.  See 11 U.S.C. § 361.

Specifically, Bankruptcy Code section 361 provides the following non-exclusive examples of

what may constitute adequate protection:

> (1)     requiring the trustee to make a cash payment or periodic cash
>         payments to such entity, to the extent that the . . . use . . . under
>         section 363 . . . results in a decrease in the value of such entity's
>         interest in such property;

(2)     providing to such entity an additional or replacement lien to the extent that such . . . use . . . results in a decrease in the value of such entity's interest in such property; or

(3)     granting such other relief . . . as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.

13.     Essentially, the Bankruptcy Code intends "adequate protection" to shield a secured creditor from diminution in the value of its interest in the particular collateral during the period of use by the debtor.  See In re Swedeland Dev. Group, Inc., 16 F.3d 552, 554 (3d Cir. 1994) ("The whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy.") (internal citations omitted); In re 495 Cent. Park Ave. Corp., 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992).  The Debtors' requested use of Cash Collateral and the protections afforded the Lenders in the Interim Order, in light of the circumstances, are reasonable, appropriate, and sufficient to satisfy the legal standard of "adequate protection" and will serve to maintain the value of the Prepetition Collateral.

14.     The proposed use of the Lenders' Cash Collateral provides adequate protection to the Lenders.  As set forth above, the Lenders' Cash Collateral will be used to sustain the Debtors' business operations.  If Cash Collateral was not available for this purpose, the Debtors would not have the ability to fund payroll or otherwise maintain their operations pending confirmation and consummation of the Plan.  The Court's authorization of the use of Cash Collateral, therefore, will protect the Lenders' security interests by preserving the value of their collateral.  In re Constable Plaza Assocs., L.P., 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (observing that debtor's use of rents to maintain and operate property "will serve to preserve or enhance the value of the building which, in turn, will protect the collateral covered by [the

secured lender's] mortgage"); <u>In re Cardinal Indus. Inc.</u>, 118 B.R. 971, 981 (Bankr. S.D. Ohio 1990) (ruling that secured lenders were adequately protected by debtor's use of rents to maintain and manage encumbered properties).

15.     Further, the Bankruptcy Code expressly provides that "granting a replacement lien is a means of adequate protection." 11 U.S.C. § 361(2). Granting replacement liens provides ample adequate protection of the secured creditors' interest in cash collateral. <u>See, e.g.</u>, <u>In re Gen. Growth Props., Inc.</u>, 412 B.R. 122, 131 (Bankr. S.D.N.Y. 2009), <u>appeal dismissed as moot</u>, 423 B.R. 716 (S.D.N.Y. 2010); <u>In re Karl A. Neise, Inc.</u>, 16 B.R. 602, 603 (Bankr. S.D. Fla. 1981).

16.     Here, the Debtors have, among other things, granted the Lenders three primary forms of adequate protection. First, the Debtors will adequately protect the Lenders' interests in Cash Collateral by granting the Replacement Liens. Second, the Lenders will be granted allowed administrative expense claims having priority specified in Bankruptcy Code section 507(b). Finally, the Debtors have agreed to make the Adequate Protection Payments to the Agent and the Lenders.

17.     For the foregoing reasons, the Debtors' requested use of Cash Collateral and the protections provided to the Lenders' are reasonable, appropriate, and sufficient to satisfy the legal standard of "adequate protection."

## COMPLIANCE WITH LOCAL RULE 4001-2

18.     Local Rule 4001-2(i) provides, in pertinent part, that a motion for the use of cash collateral shall "(a) recite whether the proposed form of order and/or underlying cash collateral stipulation . . . contains any provision of the type indicated [in Local Rule 4001-2], (b) identify the location of any such provision in the proposed form of order [or] cash collateral stipulation . . . and (c) justify the inclusion of such provision." Del. Bankr. L.R. 4001-2(i)(a)-(c).

As highlighted above, the Interim Order contemplates two provisions that implicate or potentially implicate Local Rule 4001-2. Specifically, the Interim Order (i) provides disparate treatment for the professionals retained by a creditors' committee from those professionals retained by the Debtors with respect to the Carve-Out (See Interim Order ¶12) and (ii) includes provisions and findings of fact that bind the estate or other parties in interest with respect to the validity, perfection or amount of the secured creditor's prepetition lien or the waiver of claims against the secured creditor without potentially first giving parties in interest at least seventy-five (75) days from the entry of the order and the creditors' committee, if formed, at least sixty (60) days from the date of its formation to investigate such matters (See Interim Order ¶ ¶D(1)(i)-(vii), 14).

19.    The Debtors submit that, in the context of these cases and the expedited restructuring transactions contemplated by the Plan, each of the foregoing provisions is reasonable and appropriate. First, the Debtors submit that the disparate treatment is appropriate because the Debtors and their professionals will be required to perform substantially more tasks related to the Debtors proposed restructuring than the Committee's professionals. Moreover, all professionals' fees, including the committee's professionals' fees, will be paid from the Lenders' collateral, the value of which is insufficient to satisfy the Lenders' secured claims in full.

20.    Second, the Debtors undertook a review of the validity and priority of the Lenders' prepetition liens and security interests and concluded that the liens and security interests are both valid and properly perfected. To the extent an official committee or other party in interest desires to analyze those liens or security interests, the due diligence related to such a review has already been completed and can be made available by the Debtors. Moreover, the Debtors are requesting confirmation hearing in the first two months of these cases, which, if

granted, would enable them to emerge from bankruptcy prior to the deadlines set forth in Local Rule 4001-2.

21.     Accordingly, the facts and circumstances of these cases justify the inclusion of the above terms that require disclosure under Local Rule 4001-2, and these terms should be approved.

## REQUEST FOR FINAL HEARING

22.     Pursuant to Bankruptcy Rule 4001(b)(2), which requires that a final hearing on a motion to use cash collateral be commenced no earlier than 14 days after service of the motion, the Debtors request that the Court schedule the final hearing for a date that is as soon as practicable, but in no event later than seven (7) days following the date scheduled for creditors' committee organizational meeting, and establish the deadline prior to the final hearing for parties to file objections to the entry of a final order.

## NOTICE

23.     Notice of this Motion shall be given to (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the agent for the Debtors' prepetition lender; (iii) the Debtors' top thirty (30) largest unsecured creditors on a consolidated basis; and (iv) all parties entitled to notice pursuant to Local Rule 9013-1(m).

## NO PRIOR REQUEST

24.     No prior request for the relief requested herein has been made to this or any other Court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto, granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
       May 24, 2011

/s/ *Mark S. Chehi*
Mark S. Chehi (I.D. No. 2855)
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM, LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000
(302) 651-3001

- and –

Mark A. McDermott
J. Gregory Milmoe
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM, LLP
Four Times Square
New York, New York 10036-6522
(212) 735-3000
(212) 735-2000

Proposed Counsel for Debtors and Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                            :

In re:                        :      Chapter 11
                            :

JACKSON HEWITT TAX SERVICE  :      Case No. 11-11587 (MFW)
INC., et al.,                :
                            :

           Debtors.[2]   :      Joint Administration Pending
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

**INTERIM ORDER PURSUANT TO SECTIONS
105, 361, 362 AND 363 OF THE BANKRUPTCY CODE
AUTHORIZING USE OF CASH COLLATERAL
AND GRANTING ADEQUATE PROTECTION**

Upon the Debtors' Emergency Motion for Interim Authority to Use Cash

Collateral and Provide Adequate Protection and Request for a Final Hearing (the "**Motion**")[3] and

an interim hearing having been held on May __, 2011 (the "**Interim Hearing**") and upon the

entire record made at the Interim Hearing and this Court having found good and sufficient cause

appearing therefor,

          **IT IS HEREBY FOUND** that:

          A.      On May 24,  2011 (the "**Petition Date**"), the Debtors filed voluntary

petitions (the "**Chapter 11 Cases**") for relief with this Court under Chapter 11 of title 11 of the

U.S. Code (the "**Bankruptcy Code**").  The Debtors are continuing in possession of their

---

[2]      The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Jackson Hewitt Tax Service Inc. (9692), Jackson Hewitt Inc. (9705), Jackson Hewitt Technology Services LLC (2409), Tax Services of America, Inc. (7427), Jackson Hewitt Corporate Services Inc. (2415), and Hewfant Inc. (0545). The address for each of the Debtors, with the exception of Jackson Hewitt Technology Services LLC, is 3 Sylvan Way, Parsippany, NJ 07054.  The address for Jackson Hewitt Technology Services LLC is 501 N. Cattlemen Rd., Sarasota, FL 34232.

[3]      Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Motion.

property, and operating and managing their businesses as debtors-in-possession pursuant to Bankruptcy Code §§1107 and 1108.

B.      This Court has jurisdiction over the Chapter 11 Cases and the Motion pursuant to 28 U.S.C. §§157(b) and 1334.  Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. §157(b)(2).

C.      Wells Fargo Bank, N.A., successor to Wachovia Bank, National Association, as administrative agent (in such capacity, the "**Agent**") and certain lenders (the "**Lenders**") and Jackson Hewitt Tax Service, Inc. (the "**Parent**"), Jackson Hewitt Inc. ("**JHI**"), Tax Services of America, Inc. ("**TSA**"), and Hewfant, Inc. ("**Hewfant**" and together with the Parent, JHI and TSA, the "**Borrowers**") are parties to that certain Amended and Restated Credit Agreement dated October 6, 2006, as amended by that certain First Amendment to Amended and Restated Credit Agreement dated October 31, 2007, as amended by that certain Second Amendment to Amended and Restated Credit Agreement dated May 21, 2008, as amended by that certain Agreement for Third Amendment of Amended and Restated Credit Agreement dated April 27, 2009, as amended by that certain Limited Waiver and Fourth Amendment to Amended and Restated Credit Agreement, dated as of April 30, 2010, as amended by that certain Limited Waiver and Fifth Amendment to Amended and Restated Credit Agreement, dated as of December 17, 2010, as amended by that certain Sixth Amendment to Amended and Restated Credit Agreement dated February 7, 2011, as amended by that certain letter agreement dated April 14, 2011, as amended by that certain Seventh Amendment to Amended and Restated Credit Agreement dated April 29, 2011, and as amended by that certain Eighth Amendment to Amended and Restated Credit Agreement dated May 20, 2011 (as such Agreement has been

2

amended from time to time and including all annexes, exhibits and schedules thereto,

collectively the "**Credit Agreement**"). Jackson Hewitt Technology Services, LLC ("**JHTS**")

and Jackson Hewitt Corporate Services, Inc. ("**JHCS**", and together with JHTS the

"**Guarantors**") executed that certain Guaranty dated October 6, 2006 (as amended from time to

time, the "**Guaranty**") pursuant to which the Guarantors guaranteed the obligations of the

Borrowers to the Lenders and the Agent under the Credit Agreement, as more specifically set

forth therein.

        D.      The Debtors permanently, immediately, and irrevocably acknowledge,

represent, stipulate, agree, and admit that, subject to the limitations contained in Paragraph 14

hereof:

        (1)     In accordance with the terms of the Credit Agreement, the Guaranty, and all other documents executed by the Debtors in connection with the Credit Agreement (collectively, the "**Prepetition Loan Documents**"),

        (i)     the Debtors are truly, justly, and unconditionally indebted to the Agent and the Lenders, without defense, counterclaim or offset of any kind, and that as of the Petition Date, the Debtors were liable to the Agent and the Lenders in an amount not less than $357 million, plus interest, plus any then-outstanding fees and expenses and amounts outstanding under any Hedge Agreement (as defined in the Credit Agreement) (collectively, the "**Prepetition Obligations**");

        (ii)     all claims in respect of the Prepetition Obligations are not and shall not be subject to any avoidance, reduction, set off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, recoupment, defenses, disallowance, or any other challenges under the Bankruptcy Code or any other applicable domestic or foreign law or regulation and the Prepetition Loan Documents constitute legal, valid, and binding obligations of the Debtors and their respective estates, and are enforceable against each such Debtor or

US_ACTIVE-105876655.4

estate in accordance with the terms of the Prepetition Loan Documents; and

(iii)     the Prepetition Obligations are secured by valid, enforceable, binding, duly perfected liens and security interests (collectively, the "**Existing Liens**") granted by the Debtors to the Agent, for the benefit of the Secured Parties (as defined in the Credit Agreement), on and in the collateral described in the Prepetition Loan Documents (the "**Prepetition Collateral**"), including, without limitation, all Accounts, As-Extracted Collateral, Chattel Paper, Commercial Tort Claims, Contracts, Copyright Collateral, Deposit Accounts, Documents, Equipment, Fixtures, General Intangibles, Goods, Instruments, Inventory, Investment Property, Letter-of-Credit Rights, Patent Collateral, Pledged Interests, Software, Supporting Obligations, Trademark Collateral, all Money, all other personal property, all Records, all accessions, additions, attachments, improvements, modifications and upgrades to, replacements of and substitutions for any of the foregoing, and all Proceeds and products thereof (all as defined in and more specifically set forth in the Pre-Petition Loan Documents) and are not, and shall not be, subject to avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, or any other challenges under the Bankruptcy Code or any other applicable foreign or domestic law or regulation.  All of the cash in the Debtors' possession and control, constitutes proceeds of the Prepetition Collateral and, therefore, is cash collateral of the Agent and the Lenders within the meaning of Bankruptcy Code §363(a) (the "**Cash Collateral**");

(iv)     the Agent, and the Lenders are not persons in control or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the Prepetition Loan Documents;

(v)      as of the date hereof, there exist no claims or causes of action against any of the Agent or the Lenders with respect to, in connection with, related to, or arising from the Prepetition Loan Documents  that may be asserted by the Debtors and the Debtors are aware of no such claims that may be asserted by any other person or entity;

4

(vi)     as of the date hereof, there exist no liens on or security interests in the Prepetition Collateral except for the Existing Liens and, to the extent such liens are determined to be valid, perfected, binding, and enforceable, the Permitted Liens (as defined in the Prepetition Loan Documents); and

(vii)     the Debtors forever and irrevocably release, discharge, and acquit the former, current, and future Agent and Lenders, and each of their respective former, current, and future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest (collectively, the "**Releasees**") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, and judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the Prepetition Loan Documents, or the transactions contemplated thereunder including, without limitation, (a) any so-called "lender liability" or equitable subordination claims or defenses, (b) any and all claims and causes of action arising under title 11 of the United States Code, and (c) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims of the Agent and/or the Lenders.

E.     The Debtors do not have sufficient available sources of working capital and financing to carry on the operation of their businesses without the use of the Cash Collateral. The Debtors' ability to maintain business relationships with their vendors, suppliers and customers, to pay their employees and otherwise finance their operations, is essential to the Debtors' continued viability. In addition, the Debtors' critical need for use of Cash Collateral is immediate. In the absence of the use of Cash Collateral, the continued operation of the Debtors'

5

businesses would not be possible, and serious and irreparable harm to the Debtors and their

estates would occur.  The preservation, maintenance and enhancement of the going concern

value of the Debtors are of the utmost significance and importance to a successful reorganization

of the Debtors under Chapter 11 of the Bankruptcy Code.

F.      Notice of the Interim Hearing and the relief requested in the Motion has

been given to (i) the Office of the United States Trustee, (ii) counsel to the Agent, (iii) the

Debtors 20 largest creditors; (iv) all known secured creditors having an interest in the Cash

Collateral, and (v) parties who requested notice pursuant to Fed. R. Bankr. P. 2002.  Sufficient

and adequate notice of the Interim Hearing and the relief requested in the Motion has been given

pursuant to Bankruptcy Code §102(1) and Bankruptcy Rules 2002 and 4001.

G.      The terms of the Cash Collateral arrangement set forth in this Interim

Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment

consistent with their fiduciary duties, are supported by reasonably equivalent value and fair

consideration and were negotiated at arms' length by the parties.  The Debtors, Agent, and

Lenders have acted in good faith regarding Debtors' use of Case Collateral and the negotiation of

this Interim Order.  .

H.      The Debtors have requested immediate entry of this Interim Order

pursuant to Bankruptcy Rule 4001.  The permission granted herein to the use of Cash Collateral

is necessary to avoid immediate and irreparable harm to the Debtors.  This Court concludes that

entry of this Interim Order is in the best interest of the Debtors' respective estates and creditors

as its implementation will, among other things, allow for the continued operation of the Debtors'

existing businesses and enhance the Debtors' prospects for successful reorganization.

US_ACTIVE-105876655.4

Based upon the foregoing findings and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefore:

**IT IS HEREBY ORDERED** that:

1.     The Motion is granted, subject to the terms and conditions set forth in this Interim Order.

2.     Subject in all respects to the terms and conditions set forth herein, including without limitation, those provisions relating to an event of default hereunder, and the termination of the use of Cash Collateral upon the occurrence of such an event of default and the giving of notice as set forth herein, the Debtors are authorized to use Cash Collateral up through and including the date that is sixty (60) days after the Petition Date (as such date may be extended either by this Court or consensually by the Debtors and the Lenders holding two-thirds of the principal amount of the loans under the Prepetition Loan Documents (the "**Required Lenders**") from time to time, the "**Termination Date**")) for the purposes set forth in, and in accordance with, the budget attached hereto as Schedule 1 (the "**Budget**").  During the term of this Interim Order, unless otherwise consented to by the Required Lenders, during any Reporting Period (a) the Debtors' usage of Cash Collateral for employee wages, benefits, and other compensation  shall in the aggregate not exceed the amounts set forth in the Budget for such usage by more than fifteen percent (15%) and (b) such usage for all Controllable Cost, net of cash collections, shall not exceed the net amounts set forth in the Budget by more than ten percent (10%).  As used herein a "Reporting Period" shall mean (v) the period commencing on the first Sunday following the Petition Date and ending on the Saturday of such week, then; (w) the period commencing on the first Sunday following the Petition Date and ending on the

7

Saturday of the second week following the Petition Date, then; (x) the period commencing on the first Sunday following the Petition Date and ending on the Saturday of the third week following the Petition Date, then; (y) the period commencing on the first Sunday following the Petition Date and ending on the Saturday of the fourth week following the Petition Date and, thereafter; (z) the next sequential rolling four-week period.

3.       In this Interim Order, the term "**Replacement Lien**" shall mean that, subject to the terms and conditions set forth in this Interim Order, the Agent and Lenders shall have and are hereby granted (effective upon the date of this Interim Order and without the necessity of the execution by the Debtors of mortgages, deeds of trust, security agreements, pledge agreements, financing statements or otherwise), valid binding, enforceable, non-avoidable, and perfected, security interests in, and liens upon all present and after-acquired property of the Debtors, including, without limitation, all cash contained in any account in the possession or control of the Debtors and the proceeds of all causes of action, whether pursuant to federal law or applicable state law of the Debtors or their estates, subject in all respects to paragraph 7 below (collectively, with all proceeds and products of any or all of the foregoing, the "**Postpetition Collateral**").  The Replacement Liens being provided herein are being given as adequate protection for the diminution in value, if any, of the Agent's and Lenders' interest in the Prepetition Collateral and shall be subject and subordinate only to the Carve-Out (as hereinafter defined).

4.       Any provision of this Interim Order to the contrary notwithstanding, the Replacement Liens and Superpriority Claims (as defined below) granted to the Agent and the Lenders pursuant to this Interim Order shall be subject and subordinate to carve-outs

8

(collectively the "**Carve-Out**") for: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under 28 U.S.C. § 1930(a) plus interest pursuant to 31 U.S.C. § 3717 (without regard to the occurrence of an event of default or the Termination Date); (ii) accrued fees, disbursements, costs and expenses incurred at any time before the termination of the use of Cash Collateral upon the occurrence of an event of default and the giving of notice as set forth herein (whether or not paid or allowed by interim order, procedural order or otherwise as of such termination) by professionals or professional firms retained by (a) the Debtors pursuant to sections 327, 328 or 363 of the Bankruptcy Code (the "**Debtors' Professionals**") and (b) any statutory committee appointed in these chapter 11 cases (a "**Committee**") pursuant to section 1103 of the Bankruptcy Code (the "**Committee's Professionals**", and together with the Debtors' Professionals, the "**Case Professionals**"); and (iii) all fees, disbursements, costs and expenses incurred on and after the termination of the use of Cash Collateral upon the occurrence of an event of default and the giving of notice as set forth herein by the Case Professionals in an aggregate amount not to exceed $500,000.00 which is an amount estimated to cover such fees, disbursements, costs, and expenses for a reasonable period thereafter (the "**Post Termination Date Cap**"); provided, further, that the Post Termination Date Cap shall neither be reduced nor increased by the amount of any fees, disbursements, costs or expenses incurred, awarded or paid prior to such termination; provided, however, that neither the Carve-Out nor any of the Cash Collateral shall be used to pay fees, disbursements, costs or expenses incurred in connection with the commencement and prosecution of any adversary proceeding or contested matter in which any party asserts any claims or causes of action against any or all of the Agent or Lenders and/or challenges or raises any defense to the Prepetition

9

Obligations, the Agent, the Lenders, or the Replacement Liens. Absent the occurrence of the termination of the use of Cash Collateral upon the occurrence of an event of default and the giving of notice as set forth herein, the Debtors shall be permitted to pay all fees, disbursements, costs or expenses allowed and payable under Bankruptcy Code §§ 328, 330 and 331 and any administrative order of this Court, as the same may be payable.

5.      The Agent and the Lenders are granted the following additional adequate protection for any diminution in the value of the Agent and the Lenders' interests in the Prepetition Collateral from the Petition Date resulting from the use, sale, lease, disposition, shrinkage, decline in market value, consumption or physical deterioration of the Prepetition Collateral (including Cash Collateral) by the Debtors:

6.      (i)      the Agent and the Lenders shall have and are hereby granted the Replacement Liens subject to the Carve-Out and having the same relative priority as the prepetition liens held by the Agent and the Lenders;

(ii)      If, and to the extent that, the Replacement Liens and adequate protection payments provided by this Interim Order are insufficient to provide adequate protection for the Agent and the Lenders, the Agent and the Lenders are hereby granted allowed superpriority claims pursuant to § 361 of the Bankruptcy Code (the "**Superpriority Claims**"), subject to the Carve-Out, with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, §§ 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 and 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtors, and any successor trustee or any creditor, in the Chapter 11 Cases or any subsequent proceedings under

10

the Bankruptcy Code.  Except for the Carve-Out, no cost or expense of administration under §§105, 364, 503(b), 506(c) and 507(b) of the Bankruptcy Code, or otherwise, including those resulting from the conversion of any of the Chapter 11 Cases pursuant to Bankruptcy Code §1112, shall be senior to, or <u>pari</u> <u>passu</u> with, any allowed Superpriority Claims of the Agent and the Lenders;

(iii)     (a) Within five (5) days following a request by the Agent or the Required Lenders the Debtors shall remit to the Agent (or the applicable Lender) an amount sufficient to reimburse the Agent and Lenders for all out-of-pocket expenses, including but not limited to all legal and other professional fees and expenses, incurred by the Agent and Lenders in connection with these Chapter 11 Cases and (b) upon a request by a party named in paragraph 4(b) of the letter agreement dated May 23, 2011, by and among the Debtors and certain Lenders, the Debtors shall remit to such party an amount equal to the fees and expenses incurred by such party that are payable in accordance with the terms of such paragraph (each such payment under (a) or (b), an "**<u>Adequate Protection Payment</u>**").

7.     Except as expressly set forth to the contrary in this Interim Order, the Replacement Liens granted to the Agent and the Lenders pursuant to this Interim Order shall be prior and senior to all liens and encumbrances of (a) all other secured creditors in and to such property granted, or arising, subsequent to the date of this Interim Order, and (b) any intercompany claim of any Debtor or subsidiary or affiliate of any Debtor; provided, however that the Replacement Liens granted to the Agent and the Lenders pursuant to this Interim Order shall not attach to any proceeds of claims for relief obtained pursuant to Chapter 5 of the Bankruptcy Code ("**<u>Avoidance Actions</u>**"), if any.  The Replacement Liens granted pursuant to

11

this Interim Order shall constitute valid and duly perfected security interests and liens, and the

Agent and the Lenders shall not be required to file or serve financing statements, notices of lien

or similar instruments which otherwise may be required under federal or state law in any

jurisdiction, or take any action, including taking possession, to validate and perfect such security

interests and liens; and the failure by the Debtors to execute any documentation relating to the

Replacement Liens shall in no way affect the validity, perfection or priority of such Replacement

Liens.  If, however, the Agent or the Lenders, each in their respective sole discretion, shall

determine to file any such financing statements, notices of lien or similar instruments, or to

otherwise confirm perfection of such Replacement Liens, the Debtors are authorized to cooperate

with and assist in such process, the stay imposed by § 362(a) of the Bankruptcy Code hereby is

lifted to allow the filing and recording of a certified copy of this Interim Order or any such

financing statements, notices of lien or similar instructions, and all such documents shall be

deemed to have been filed or recorded at the time and date of this Interim Order.

        8.      Anything in this Interim Order to the contrary notwithstanding, the

Debtors shall be prohibited from using Cash Collateral absent further order of this Court, three

(3) calendar days after the Required Lenders notify the Debtors (and their counsel and counsel

for any Committee) in writing that an event of default has occurred and is continuing.  The

occurrence of any of the following shall constitute an event of default under this Interim Order:

        (a)      (i) This Court enters an order finding that the Debtors have

      engaged in fraudulent conduct (either prior to or after the Petition Date); or (ii)

      imminent danger exists with respect to all or any material portion of the

      Prepetition Collateral.

US_ACTIVE-105876655.4

(b)     The Debtors fail to perform any of their obligations in accordance with the terms of this Interim Order, including, without limitation, the Debtors' failure to use Cash Collateral in the manner and in the amounts provided for in the Budget as set forth in Paragraph 2 hereof, or to provide the information or access required in Paragraph 12 hereof.

(c)     Any representation or warranty made by the Debtors under this Interim Order or any pleading, certificate, report or financial statement delivered to the Agent in these Chapter 11 Cases proves to have been false or misleading in any material respect as of the time when made or given (including by the omission of material information necessary to make such representation, warranty or statement not misleading).

(d)     The Debtors shall file a motion seeking or this Court shall enter an order appointing a Chapter 11 trustee or an examiner with expanded powers beyond those set forth in Bankruptcy Code §1104(c).

(e)     The Debtors shall file a motion seeking or this Court shall enter an order dismissing the Chapter 11 Cases or converting them to cases under Chapter 7 of the Bankruptcy Code.

(f)     Without the prior written consent of the Required Lenders, the Debtors shall file a motion seeking to grant a third party a security interest or lien upon all or part of any property of the Debtors that has a priority which is senior to, or pari passu with, the Prepetition Liens or Replacement Liens of the Agent or the Lenders in all or any of a portion of such property.

13

(g)     Without the prior written consent of the Required Lenders, the

Debtors seek to establish additional deposit and/or other accounts or move any

Cash Collateral to an account other than with the Agent.

(h)     Entry of an order by this Court extending the Debtors' exclusive

periods for the filing and confirmation of a plan of reorganization.

(i)     An order confirming the Debtors' Plan of Reorganization has not

been entered by this Court on or before the sixtieth day after the Petition Date.

(j)     All conditions precedent to the effectiveness of the Debtors' Plan of

Reorganization have not occurred on or before seventy-fifth day after the Petition Date.

Nothing in this Interim Order shall be deemed to waive the right of the Debtors or any successor

thereto, to bring a motion requesting that this Court authorize the use of Cash Collateral over the

objection of the Agent or the Lenders or any parties' rights to contest any such motion, upon any

termination of the Debtors' right to use Cash Collateral pursuant to the terms of this Interim

Order due to the occurrence of any of the foregoing events of default.

9.      The liens and security interests of the Agent and Lenders in the Prepetition

Collateral or Postpetition Collateral shall not be rendered invalid or unenforceable or valid or

enforceable as a result of the Debtors' commingling of assets after the Petition Date.  In addition,

the Debtors' cash management systems and accounts procedures shall be deemed to satisfy any

burden of the Agent and the Lenders after the Petition Date to trace or segregate the proceeds of

the Postpetition Collateral.

US_ACTIVE-105876655.4

10. The Debtors are authorized to perform all acts that are deemed reasonably necessary by the Agent or the Lenders to effectuate the terms and conditions of this Interim Order.

11. Any stay, modification, reversal or vacation of this Interim Order shall not affect the validity of any obligation of the Debtors to the Agent or the Lenders incurred pursuant to this Interim Order. Notwithstanding any such stay, modification, reversal or vacation, all use of Cash Collateral and all obligations incurred by the Debtors pursuant hereto prior to the effective date of such stay, modification, reversal or vacation, shall be governed in all respects by the original provisions hereof and the Agent and the Lenders shall be entitled to all the rights, privileges and benefits, including without limitation, the Replacement Liens and Superpriority Claims granted herein.

12. Unless the Required Lenders shall otherwise agree, upon written notice to the Debtors, to voluntarily limit or reduce any level of financial reporting deemed unnecessary by the Required Lenders, the Debtors shall provide to the Agent financial reporting, reasonably acceptable in format to the Required Lenders, to be delivered in accordance with the timetables set forth in this Order and, to the extent not inconsistent with this Order, the timetables provided by the Prepetition Loan Documents.[4] Such reporting and timetables shall include (without limitation) (i) on or before the second business day of every week, a rolling thirteen (13) week budget for the Debtors setting forth (a) controllable costs, including business expenses, which shall include but not be limited to payroll, trade payables, and other ordinary course of business

---

[4] In the event there is a conflict between the reporting and/or timetables in this Order and the reporting and/or timetables in the Prepetition Loan Documents, this Order shall control in all respects.

US_ACTIVE-105876655.4

expenses, and reorganization costs and expenses, but excluding costs and expenses of the Debtors', Agent's and Lenders' professionals(such costs the "**Controllable Costs**" and such budget, the "**Controllable Costs Budget**"); and (b) non-controllable costs relating to the Debtors', Agent's and Lenders' professionals (the "**Non-Controllable Costs Budget**"); (ii) on or before noon on the second business day of every other week (a) a reconciliation on a line-by-line basis, with a description of any material variance, of the Controllable Costs Budget for the prior weekly period against (1) the actual expenses for such weekly period, and (2) the actual cash flow for such weekly period (collectively, the "**Reconciliation**"); (b) a cash balance summary setting forth the aggregate, collected cash balances in each deposit account of the Debtors together with book cash balances for the Debtors, in each case as of the end of the prior weekly period; (c) an aged accounts payable summary by vendor as of the end of the prior weekly period; and (d) such other reporting as reasonably requested by the Required Lenders. Additionally, absent the prior written consent of the Required Lenders, the Debtors shall not seek to establish additional deposit and/or other accounts or move any Cash Collateral to an account other than with the Agent. Notwithstanding anything to the contrary herein, and absent further order of this Court, (i) in no event during the course of the Chapter 11 Cases will actual payments in respect of the aggregate fees and expenses of all Committee's Professionals exceed $250,000 in the aggregate (the "**Committee Expense Cap**"); any portion of the Committee Investigation Fund (as defined below) actually used by a Committee and its professionals shall be deducted from, and shall reduce dollar-for-dollar the Committee Expense Cap; and (iii) any and all claims incurred by a Committee in excess of the Committee Expense Cap shall not

US_ACTIVE-105876655.4

constitute an allowed administrative expense claim for purposes of section 1129(a)(9)(A) of the Bankruptcy Code.

13.     The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) confirming any plan of reorganization in any of the Chapter 11 Cases, (b) converting any of the Chapter 11 Cases to a Chapter 7 case or (c) dismissing any of the Chapter 11 Cases, and the terms and provisions of this Interim Order as well as the Superpriority Claims and Replacement Liens granted pursuant to this Interim Order shall continue in full force and effect notwithstanding the entry of such order, and such Superpriority Claims and Replacement Liens shall maintain their priority as provided by this Interim Order.

14.     The findings contained in paragraph D shall be binding upon all persons and entities including, but not limited to the Debtors, any Committee, and any chapter 11 or chapter 7 trustee hereafter appointed with respect to the Debtors and their estates, if any, except to the extent that (a) in the event a party in interest with standing (other than the Debtors) has timely filed an adversary proceeding or contested matter asserting any claims or causes of action against the Agent or Lenders, objecting to the Lenders' claims or liens, or challenging any of the stipulations set forth in Paragraph D hereof (a "**Challenge**") no later than the date that is two weeks prior to the proposed Confirmation Date (unless such deadline is extended by written consent of the Required Lenders or by order of the Court) (the "**Challenge Period**") and (b) this Court rules in favor of the plaintiff or movant in any such timely-filed Challenge and enters a final order with respect thereto (a "**Successful Challenge**").  If no such Challenge is timely commenced within the Challenge Period, all persons and entities shall be forever barred from

17

bringing or taking such action and the stipulations contained in Paragraph D hereof shall be permanently and irrevocably binding upon all persons and entities. Any stipulation contained in Paragraph D that is not expressly challenged in a Challenge during the Challenge Period shall remain in full force and effect and shall permanently and irrevocably bind all entities and persons, despite the filing of any other Challenge in accordance with this paragraph. Notwithstanding the foregoing, in no event shall any Cash Collateral be used by any party to commence or prosecute any adversary proceeding, contested matter or other action against any or all of the Agent or the Lenders or challenge or raise any defense to the Prepetition Obligations, the Agent, the Lenders or the Replacement Liens; provided however that, up to $50,000 of the Cash Collateral (the "**Committee Investigation Fund**") may be used by the Committee to investigate the claims and liens of the Agent and Lenders.

15.     Except with respect to the matters expressly governed by this Interim Order and provided that no event of default has occurred and is continuing, entry of this Interim Order shall be without prejudice to any and all rights, remedies, claims and causes of action which the Agent or the Lenders may have against the Debtors or third parties, and without prejudice to the right, if any, of the Agent and the Lenders to seek relief from the automatic stay in effect pursuant to § 362 of the Bankruptcy Code, or any other relief in the Chapter 11 Cases, and the right of the Debtors and any other party in interest to oppose any such relief. The provisions of this Interim Order shall be binding upon and inure to the benefit of the Agent, the Lenders, the Debtors, and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the Chapter 11 Cases as a legal representative of the Debtors or

US_ACTIVE-105876655.4

the Debtors' estates.  Nothing in this order shall affect the rights of any party under § 363 (including subsection (k)) of the Bankruptcy Code.

16.     The Debtors shall, within two business days of entry of this Interim Order, mail copies of a notice of the entry of this Interim Order, together with a copy of this Interim Order, to any party which has filed prior to such date a request for notice with this Court and to counsel for any statutory committee of unsecured creditors appointed pursuant to § 1102 of the Bankruptcy Code.

17.     The Final Hearing to consider the Motion will be held on _____, 2011 at __:__ _.m. prevailing Eastern time.

Dated: May ___, 2011

_____
MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE

End of Order

US_ACTIVE-105876655.4

# **SCHEDULE 1**

(Budget)

**Jackson Hewitt**
**60 Day Cash Forecast**

| | Week Ending: | Pro & Post Petition 5/28/2011 | 6/4/2011 | 6/11/2011 | 6/18/2011 | 6/25/2011 | 7/2/2011 | Week of Emergence 7/9/2011 | 7/16/2011 | 7/23/2011 |
|---|---|---|---|---|---|---|---|---|---|---|
| **Gold Guarantee Cash Flow** | | | | | | | | | | |
| *Receipts* | | | | | | | | | | |
| Policy Revenue | | 29,806 | 2,100 | 2,724 | 1,294 | 1,242 | 1,165 | 795 | 758 | 388 |
| Reimbursement of Claims from Trust | | - | 218,453 | - | - | 344,465 | 141,506 | - | 39,713 | 9,254 |
| Total | | 29,806 | 220,553 | 2,724 | 1,294 | 345,707 | 142,671 | 795 | 40,471 | 9,642 |
| *Disbursements* | | | | | | | | | | |
| Funding of Trust w/ Policy Sales | | - | - | - | - | (28,176) | - | (28,176) | - | - |
| Payments to Policy Holders | | (110,943) | (53,678) | (147,483) | (75,523) | (70,736) | (94,857) | (57,240) | (53,829) | (90,764) |
| Total | | (110,943) | (53,678) | (147,483) | (75,523) | (90,912) | (94,857) | (85,416) | (53,829) | (90,764) |
| | | - | - | - | - | - | - | - | | |
| **Total Gold Guarantee** | | (81,137) | 166,874 | (144,759) | (74,229) | 246,795 | 47,814 | (84,621) | (13,358) | (81,122) |
| | | | | | | | | | | |
| **Operational Cash Flow** | | | | | | | | | | |
| *Receipts* | | | | | | | | | | |
| Tax Prep Fees from COO | | 25,366 | 34,407 | 39,006 | 32,754 | 27,206 | 29,806 | 197,674 | 38,462 | 31,971 |
| Franchisee Receipts | | 126,438 | 116,184 | 112,428 | 167,004 | 109,309 | 59,789 | 223,651 | 146,354 | 163,703 |
| AR/RAL Fees/Cash Card | | 49,527 | 286 | 371 | 50,100 | 88,961 | 361 | 108 | 103 | 53 |
| Other | | - | 129 | 260 | 126 | 74 | 113 | - | - | - |
| Total | | 201,331 | 151,006 | 152,065 | 249,984 | 225,550 | 90,069 | 421,434 | 184,919 | 195,726 |
| | | | | | | | | | | |
| Marketing and Advertising | | - | (25,176) | (260,812) | (209,172) | (16,466) | (31,177) | (99,600) | (124,500) | (124,500) |
| Wal-Mart / Wal-Mart Kiosks | | - | (20,000) | - | - | - | (10,464) | - | - | - |
| Technology | | - | (37,722) | (35,731) | (134,251) | (73,573) | (911,764) | (20,000) | (25,000) | (25,000) |
| Payroll | | (545,000) | - | (1,175,000) | - | (1,175,000) | - | (1,179,000) | - | (1,179,000) |
| Benefits & Other Employee Costs | | (125,761) | - | - | (160,362) | - | (160,362) | - | (139,930) | - |
| Incentive Compensation | | - | - | (1,050,000) | - | - | - | - | - | - |
| Travel & Expense | | - | (120,429) | (34,567) | (24,758) | (5,726) | (44,873) | (19,000) | (23,750) | (23,750) |
| Rent | | (748,006) | (35,495) | (65,124) | (24,125) | (1,267,872) | (94,009) | (269,962) | (337,452) | (337,452) |
| Utilities (electric, phone, etc.) | | (138,040) | (27,012) | (20,781) | (112,529) | (114,444) | (14,751) | (60,012) | (75,016) | (75,016) |
| Ordinary Course Professional Fees | | - | (245,000) | (301,690) | (15,814) | (44,414) | (297,005) | - | - | - |
| Insurance | | - | - | (300) | - | (92) | - | (30,200) | (37,750) | (37,750) |
| Taxes | | - | - | - | - | - | - | - | - | - |
| EF / Franchisee Growth Incentive | | - | (3,000,000) | - | - | - | - | - | - | - |
| Baltimore Acquisition | | (250,000) | - | - | - | - | - | - | - | - |
| Amex - Collateralization | | - | - | - | - | - | - | - | - | - |
| Other | | (200,000) | (93,129) | (87,036) | (75,266) | (39,425) | (282,091) | (344,717) | (430,897) | (430,897) |
| Total | | (2,006,803) | (3,603,963) | (3,031,041) | (756,277) | (2,737,012) | (1,846,496) | (2,022,491) | (1,194,294) | (2,233,364) |
| | | | | | | | | | | |
| **Total Operating Cash Flow** | | (1,805,476) | (3,452,957) | (2,878,976) | (506,292) | (2,511,462) | (1,756,427) | (1,601,057) | (1,009,375) | (2,037,638) |
| | | | | | | | | | | |
| **Restructuring** | | | | | | | | | | |
| Professional fees [1] | | - | - | - | - | - | - | - | - | - |
| Utility Deposits | | - | - | - | - | - | - | - | - | - |
| Misc. Fees | | - | - | - | - | - | - | (1,000,000) | - | - |
| Plan Payments / Contract Cure | | - | - | - | - | - | - | (2,263,412) | - | - |
| Total | | - | - | - | - | - | - | (3,263,412) | - | - |
| | | | | | | | | | | |
| **Financing Cash Flows** | | | | | | | | | | |
| Interest / Fees | | - | - | - | - | - | - | - | - | - |
| Transfer From / (To) Restricted Account | | 3,230,764 | - | - | - | - | - | - | - | - |
| Other 1 | | - | - | - | - | - | - | - | - | - |
| Total | | 3,230,764 | - | - | - | - | - | - | - | - |
| | | | | | | | | | | |
| **Total Cash Flow** | | 1,344,150 | (3,286,082) | (3,023,735) | (580,522) | (2,264,667) | (1,708,613) | (4,949,090) | (1,022,733) | (2,118,760) |

(1) Professional fees to be paid as incurred