IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :
In re:                              :      Chapter 11
                                    :
JACKSON HEWITT TAX SERVICE          :      Case No. 11-11587 (MFW)
INC., et al.,                       :
                                    :      Jointly Administered
            Debtors.[1]             :      Re: Docket Nos. 17, 46, 73, 172, **248**
- - - - - - - - - - - - - - - - - - - - - - - - - - x

**FINAL ORDER PURSUANT TO SECTIONS
105, 361, 362 AND 363 OF THE BANKRUPTCY CODE
AUTHORIZING USE OF CASH COLLATERAL
AND GRANTING ADEQUATE PROTECTION**

Upon the Debtors' Emergency Motion for Interim Authority to Use Cash

Collateral and Provide Adequate Protection and Request for a Final Hearing (the "**Motion**")[2] and

an interim hearing having been held on May 25, 2011 (the "**Interim Hearing**"), and this Court

having entered (i) an Interim Order Pursuant to Sections 105, 361, 362 and 363 of the

Bankruptcy Code Authorizing the Use of Cash Collateral and Granting Adequate Protection on

May 25, 2011; (ii) a Second Interim Order Pursuant to Sections 105, 361, 362 and 363 of the

Bankruptcy Code Authorizing the Use of Cash Collateral and Granting Adequate Protection on

June 14, 2011; and (iii) a Third Interim Order Pursuant to Sections 105, 361, 362 and 363 of the

Bankruptcy Code Authorizing the Use of Cash Collateral and Granting Adequate Protection on

June 22, 2011 (collectively, the "**Interim Order**"), and a final hearing having been held on June

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Jackson Hewitt Tax Service Inc. (9692), Jackson Hewitt Inc. (9705), Jackson Hewitt Technology Services LLC (2409), Tax Services of America, Inc. (7427), Jackson Hewitt Corporate Services Inc. (2415), and Hewfant Inc. (0545). The address for each of the Debtors, with the exception of Jackson Hewitt Technology Services LLC, is 3 Sylvan Way, Parsippany, NJ 07054. The address for Jackson Hewitt Technology Services LLC is 501 N. Cattlemen Rd., Sarasota, FL 34232.

[2] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Motion.

30, 2011 (the "**Final Hearing**"; the Interim Hearing and Final Hearing are collectively referred to herein as the "**Hearings**"), and upon the entire record made at the Hearings and this Court having found good and sufficient cause appearing therefor,

IT IS HEREBY FOUND that:

A.    On May 24, 2011 (the "**Petition Date**"), the Debtors filed voluntary petitions (the "**Chapter 11 Cases**") for relief with this Court under Chapter 11 of title 11 of the U.S. Code (the "**Bankruptcy Code**").  The Debtors are continuing in possession of their property, and operating and managing their businesses as debtors-in-possession pursuant to Bankruptcy Code §§1107 and 1108.

B.    This Court has jurisdiction over the Chapter 11 Cases and the Motion pursuant to 28 U.S.C. §§157(b) and 1334.  Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. §157(b)(2).

C.    Wells Fargo Bank, N.A., successor to Wachovia Bank, National Association, as administrative agent (in such capacity, the "**Agent**") and certain lenders (the "**Lenders**") and Jackson Hewitt Tax Service, Inc. (the "**Parent**"), Jackson Hewitt Inc. ("**JHI**"), Tax Services of America, Inc. ("**TSA**"), and Hewfant, Inc. ("**Hewfant**" and together with the Parent, JHI and TSA, the "**Borrowers**") are parties to that certain Amended and Restated Credit Agreement dated October 6, 2006, as amended by that certain First Amendment to Amended and Restated Credit Agreement dated October 31, 2007, as amended by that certain Second Amendment to Amended and Restated Credit Agreement dated May 21, 2008, as amended by that certain Agreement for Third Amendment of Amended and Restated Credit Agreement dated April 27, 2009, as amended by that certain Limited Waiver and Fourth Amendment to Amended

2

and Restated Credit Agreement, dated as of April 30, 2010, as amended by that certain Limited

Waiver and Fifth Amendment to Amended and Restated Credit Agreement, dated as of

December 17, 2010, as amended by that certain Sixth Amendment to Amended and Restated

Credit Agreement dated February 7, 2011, as amended by that certain letter agreement dated

April 14, 2011, as amended by that certain Seventh Amendment to Amended and Restated Credit

Agreement dated April 29, 2011, and as amended by that certain Eighth Amendment to

Amended and Restated Credit Agreement dated May 20, 2011 (as such Agreement has been

amended from time to time and including all annexes, exhibits and schedules thereto,

collectively the "**Credit Agreement**").  Jackson Hewitt Technology Services, LLC ("**JHTS**")

and Jackson Hewitt Corporate Services, Inc. ("**JHCS**", and together with JHTS the

"**Guarantors**") executed that certain Guaranty dated October 6, 2006 (as amended from time to

time, the "**Guaranty**") pursuant to which the Guarantors guaranteed the obligations of the

Borrowers to the Lenders and the Agent under the Credit Agreement, as more specifically set

forth therein.

        D.      Without prejudice to the rights of any non-Debtor party in interest as

provided in paragraph 14 herein, the Debtors permanently, immediately, and irrevocably

acknowledge, represent, stipulate, agree, and admit that, subject to the limitations contained in

Paragraph 14 hereof:

        (1)      In accordance with the terms of the Credit Agreement, the Guaranty, and
all other documents executed by the Debtors in connection with the Credit
Agreement (collectively, the "**Prepetition Loan Documents**"),

                (i)      the Debtors are truly, justly, and unconditionally indebted
to the Agent and the Lenders, without defense,
counterclaim or offset of any kind, and that as of the
Petition Date, the Debtors were liable to the Agent and the

US_ACTIVE-106475617.5

Lenders in an amount not less than $357 million, plus interest, plus any then-outstanding fees and expenses and amounts outstanding under any Hedge Agreement (as defined in the Credit Agreement) (collectively, the "**Prepetition Obligations**");

(ii)   all claims in respect of the Prepetition Obligations are not and shall not be subject to any avoidance, reduction, set off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, recoupment, defenses, disallowance, or any other challenges under the Bankruptcy Code or any other applicable domestic or foreign law or regulation and the Prepetition Loan Documents constitute legal, valid, and binding obligations of the Debtors and their respective estates, and are enforceable against each such Debtor or estate in accordance with the terms of the Prepetition Loan Documents; and

(iii)   the Prepetition Obligations are secured by valid, enforceable, binding, duly perfected liens and security interests (collectively, the "**Existing Liens**") granted by the Debtors to the Agent, for the benefit of the Secured Parties (as defined in the Credit Agreement), on and in the collateral described in the Prepetition Loan Documents (the "**Prepetition Collateral**"), including, without limitation, all Accounts, As-Extracted Collateral, Chattel Paper, Commercial Tort Claims, Contracts, Copyright Collateral, Deposit Accounts, Documents, Equipment, Fixtures, General Intangibles, Goods, Instruments, Inventory, Investment Property, Letter-of-Credit Rights, Patent Collateral, Pledged Interests, Software, Supporting Obligations, Trademark Collateral, all Money, all other personal property, all Records, all accessions, additions, attachments, improvements, modifications and upgrades to, replacements of and substitutions for any of the foregoing, and all Proceeds and products thereof (all as defined in and more specifically set forth in the Pre-Petition Loan Documents) and are not, and shall not be, subject to avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, or any other challenges under the Bankruptcy Code or any other applicable foreign or domestic law or regulation. All of the cash in the Debtors' possession and control, constitutes proceeds of the Prepetition Collateral and, therefore, is cash collateral of

4

the Agent and the Lenders within the meaning of Bankruptcy Code §363(a) (the "**Cash Collateral**");

(iv)    the Agent, and the Lenders are not persons in control or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the Prepetition Loan Documents;

(v)    as of the date hereof, there exist no claims or causes of action against any of the Agent or the Lenders with respect to, in connection with, related to, or arising from the Prepetition Loan Documents that may be asserted by the Debtors and the Debtors are aware of no such claims that may be asserted by any other person or entity;

(vi)    as of the date hereof, there exist no liens on or security interests in the Prepetition Collateral except for the Existing Liens and, to the extent such liens are determined to be valid, perfected, binding, and enforceable, the Permitted Liens (as defined in the Prepetition Loan Documents); and

(vii)    the Debtors forever and irrevocably release, discharge, and acquit the former and current Agent and Lenders, and each of their respective former, current, and future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest (collectively, the "**Releasees**") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, and judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened arising out of, in connection with, or relating to the Prepetition Loan Documents, or the transactions contemplated thereunder, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, including, without limitation, (a) any so-called "lender liability" or equitable subordination claims or defenses, (b) any and all claims and causes of action arising under title 11 of the United States Code, and (c) any and all claims and causes

5

of action with respect to the validity, priority, perfection or avoidability of the liens or claims of the Agent and/or the Lenders.

E.      The Debtors do not have sufficient available sources of working capital and financing to carry on the operation of their businesses without the use of the Cash Collateral. The Debtors' ability to maintain business relationships with their vendors, suppliers and customers, to pay their employees and otherwise finance their operations, is essential to the Debtors' continued viability.  In addition, the Debtors' critical need for use of Cash Collateral is immediate.  In the absence of the use of Cash Collateral, the continued operation of the Debtors' businesses would not be possible, and serious and irreparable harm to the Debtors and their estates would occur.  The preservation, maintenance and enhancement of the going concern value of the Debtors are of the utmost significance and importance to a successful reorganization of the Debtors under Chapter 11 of the Bankruptcy Code.

F.      Notice of the Final Hearing and the relief requested in the Motion has been given to (i) the Office of the United States Trustee, (ii) counsel to the Agent, (iii) the Debtors 30 largest creditors; (iv) all known secured creditors having an interest in the Cash Collateral; (v) the Debtors' taxing authorities; (vi) the attorney generals for all fifty (50) states; (vi) the Debtors' landlords; (vii) other interested parties; and (vii) parties who requested notice pursuant to Fed. R. Bankr. P. 2002.  Under the circumstances, sufficient and adequate notice of the Final Hearing and the relief requested in the Motion has been given pursuant to Bankruptcy Code §102(1) and Bankruptcy Rules 2002 and 4001.

6

G.      The terms of the Cash Collateral arrangement set forth in this Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, are supported by reasonably equivalent value and fair consideration and were negotiated at arms' length by the parties.  The Debtors, Agent, and Lenders have acted in good faith regarding Debtors' use of Case Collateral and the negotiation of this Order.

H.      The Debtors have requested immediate entry of this Order pursuant to Bankruptcy Rule 4001.  The permission granted herein to the use of Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtors.  This Court concludes that entry of this Order is in the best interest of the Debtors' respective estates and creditors as its implementation will, among other things, allow for the continued operation of the Debtors' existing businesses and enhance the Debtors' prospects for successful reorganization.

Based upon the foregoing findings and conclusions, and upon the record made before this Court at the Hearings, and good and sufficient cause appearing therefore:

**IT IS HEREBY ORDERED** that:

1.      The Motion is granted, subject to the terms and conditions set forth in this Order.

2.      Subject in all respects to the terms and conditions set forth herein, including without limitation, those provisions relating to an event of default hereunder, and the termination of the use of Cash Collateral upon the occurrence of such an event of default and the giving of notice as set forth herein, the Debtors are authorized to use Cash Collateral up through and including August 6, 2011 (as such date may be extended either by this Court or consensually by the Debtors and the Lenders holding two-thirds of the principal amount of the loans under the

7

Prepetition Loan Documents (the "**Required Lenders**") from time to time, the "**Termination Date**")) for the purposes set forth in, and in accordance with, the revised budget attached hereto as Schedule 1 (the "**Budget**").  During the term of this Order, unless otherwise consented to by the Required Lenders, during any Reporting Period (a) the Debtors' usage of Cash Collateral for employee wages, benefits, and other compensation  shall in the aggregate not exceed the amounts set forth in the Budget for such usage by more than fifteen percent (15%) and (b) such usage for all aggregate Controllable Costs, net of cash collections, shall not exceed the net amounts set forth in the Budget by more than ten percent (10%).  As used herein a "Reporting Period" shall mean (v) the period commencing on the Petition Date and ending on the first Saturday following the Petition Date, then; (w)  the period commencing on the Petition Date and ending on the Saturday of the second week following the Petition Date, then; (x) the period commencing on the Petition Date and ending on the Saturday of the third week following the Petition Date, then; (y) the period commencing on the Petition Date and ending on the Saturday of the fourth week following the Petition Date and, thereafter; (z) the next sequential rolling four-week period.

        3.     In this Order, the term "Replacement Lien" shall mean that, subject to the terms and conditions set forth in this Order, the Agent and Lenders shall have and are hereby granted (effective upon the date of this Order and without the necessity of the execution by the Debtors of mortgages, deeds of trust, security agreements, pledge agreements, financing statements or otherwise), valid binding, enforceable, non-avoidable, and perfected, security interests in, and liens upon all present and after-acquired property of the Debtors, including, without limitation, all cash contained in any account in the possession or control of the Debtors

8

and the proceeds of all causes of action, whether pursuant to federal law or applicable state law of the Debtors or their estates, subject in all respects to paragraph 7 below (collectively, with all proceeds and products of any or all of the foregoing, the "Postpetition Collateral"); provided, however, that with respect to certain Jackson Hewitt locations at (i) 2828 Goliad Road, San Antonio, Texas; (ii) Neshaminy Mall, 707 Neshaminy Mall, Bensalem, Pennsylvania; (iii) Regency Square Mall, 9501 Arlington Expressway, Jacksonville, Florida, (iv) American Way, 4075 American Way, Memphis, Tennessee, (v) Galveston Place, 2705-R 61st Street, Galveston, Texas, (vi) Mission Center, 4020 S. Maryland Parkway, Suite B-2, Las Vegas, Nevada, (vii) Tropicana Beltway Center, 5130 S. Fort Apache Road, Suite 218, Las Vegas, Nevada, (viii) Wesley Chapel Crossing Shopping Center, 2440 Wesley Chapel Road, Suite F, Decatur, Georgia, and (ix) Mandarin Landing, 10601-206 San Jose Boulevard, Jacksonville, Florida (each an "Excluded Property"), to the extent the license or lease agreement with respect to the Excluded Property prohibits the applicable Debtor from granting a lien on such Debtor's license or leasehold interest in the Excluded Property, such Replacement Lien shall not include a lien on Debtor's leasehold interest in the Excluded Property, but only in the proceeds, if any, thereof. The Replacement Liens being provided herein are being given as adequate protection for the diminution in value, if any, of the Agent's and Lenders' interest in the Prepetition Collateral and shall be subject and subordinate only to the Carve-Out (as hereinafter defined).

4.      Any provision of this Order to the contrary notwithstanding, the Replacement Liens and Superpriority Claims (as defined below) granted to the Agent and the Lenders pursuant to this Order, and the Existing Liens, shall be subject and subordinate to carve-outs (collectively the "**Carve-Out**") for:  (i) all fees required to be paid to the Clerk of the

9

Bankruptcy Court and to the Office of the United States Trustee under 28 U.S.C. § 1930(a) plus

interest pursuant to 31 U.S.C. § 3717 (without regard to the occurrence of an event of default or

the Termination Date); (ii) accrued fees, disbursements, costs and expenses incurred at any time

before the termination of the use of Cash Collateral upon the occurrence of an event of default

and the giving of notice as set forth herein (whether or not paid or allowed by interim order,

procedural order or otherwise as of such termination) by professionals or professional firms

retained by (a) the Debtors pursuant to sections 327, 328 or 363 of the Bankruptcy Code (the

"**Debtors' Professionals**") and (b) the statutory committee of unsecured creditors appointed in

these chapter 11 cases (the "**Committee**") pursuant to section 1103 of the Bankruptcy Code (the

"**Committee's Professionals**", and together with the Debtors' Professionals, the "**Case**

**Professionals**"); and (iii) all fees, disbursements, costs and expenses incurred on and after the

termination of the use of Cash Collateral upon the occurrence of an event of default and the

giving of notice (the "**Post Termination Date Fees and Expenses**") as set forth herein by the

Case Professionals in an aggregate amount not to exceed $500,000.00 which is an amount

estimated to cover such fees, disbursements, costs, and expenses for a reasonable period

thereafter (the "**Post Termination Date Cap**"); provided, that each Case Professional holding a

retainer shall apply the full amount of such retainer to its Post Termination Date Fees and

Expenses before seeking payment from the Post Termination Date Cap; provided, further, that

the Post Termination Date Cap shall neither be reduced nor increased by the amount of any fees,

disbursements, costs or expenses incurred, awarded or paid prior to such termination; provided,

however, that neither the Carve-Out nor any of the Cash Collateral shall be used to pay fees,

disbursements, costs or expenses incurred in connection with the commencement and

10

prosecution of any adversary proceeding or contested matter in which any party asserts any claims or causes of action against any or all of the Agent or Lenders and/or challenges or raises any defense to the Prepetition Obligations, the Agent, the Lenders, or the Replacement Liens. Absent the occurrence of the termination of the use of Cash Collateral upon the occurrence of an event of default and the giving of notice as set forth herein, the Debtors shall be permitted to pay all fees, disbursements, costs or expenses allowed and payable under Bankruptcy Code §§ 328, 330 and 331 and any administrative order of this Court, as the same may be payable.

5.      The Agent and the Lenders are granted the following additional adequate protection for any diminution in the value of the Agent and the Lenders' interests in the Prepetition Collateral from the Petition Date resulting from the use, sale, lease, disposition, shrinkage, decline in market value, consumption or physical deterioration of the Prepetition Collateral (including Cash Collateral) by the Debtors:

6.      (i)      the Agent and the Lenders shall have and are hereby granted the Replacement Liens subject to the Carve-Out and having the same relative priority as the prepetition liens held by the Agent and the Lenders;

(ii)      If, and to the extent that, the Replacement Liens and adequate protection payments provided by this Order are insufficient to provide adequate protection for the Agent and the Lenders, the Agent and the Lenders are hereby granted allowed superpriority claims pursuant to § 361 of the Bankruptcy Code (the "**Superpriority Claims**"), subject to the Carve-Out, with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, §§ 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 and 1114 of the

11

Bankruptcy Code, and shall at all times be senior to the rights of the Debtors, and any successor trustee or any creditor, in the Chapter 11 Cases or any subsequent proceedings under the Bankruptcy Code.  Except for the Carve-Out, no cost or expense of administration under §§105, 364, 503(b), 506(c) and 507(b) of the Bankruptcy Code, or otherwise, including those resulting from the conversion of any of the Chapter 11 Cases pursuant to Bankruptcy Code §1112, shall be senior to, or pari passu with, any allowed Superpriority Claims of the Agent and the Lenders;

(iii)    (a) Within five (5) days following a request by the Agent or the Required Lenders the Debtors shall remit to the Agent (or the applicable Lender), with notice to the U.S. Trustee and counsel for the Committee, an amount sufficient to reimburse the Agent and Lenders for all out-of-pocket expenses, including but not limited to all legal and other professional fees and expenses, incurred by the Agent and Lenders in connection with these Chapter 11 Cases and (b) upon a request by a party named in paragraph 4(b) of the letter agreement dated May 23, 2011, by and among the Debtors and certain Lenders, the Debtors shall remit to such party an amount equal to the fees and expenses incurred by such party that are payable in accordance with the terms of such paragraph (each such payment under (a) or (b), an "**Adequate Protection Payment**").  Notwithstanding the foregoing, the Committee shall retain the right to seek recharacterization of such Adequate Protection Payments as principal payments under the Prepetition Loan Documents.

7.    Except as expressly set forth to the contrary in this Order, the Replacement Liens granted to the Agent and the Lenders pursuant to this Order shall be prior and senior to all liens and encumbrances of (a) all other secured creditors in and to such property granted, or arising, subsequent to the date of this Order, and (b) any intercompany claim of any

12

Debtor or subsidiary or affiliate of any Debtor; provided, however, that notwithstanding anything in this Order, the Replacement Liens granted to the Agent and the Lenders pursuant to this Order shall not attach to any claim for relief or cause of action under Chapter 5 of the Bankruptcy Code (the "**Avoidance Actions**") or the proceeds of any Avoidance Action, if any.  The Replacement Liens granted pursuant to this Order shall constitute valid and duly perfected security interests and liens, and the Agent and the Lenders shall not be required to file or serve financing statements, notices of lien or similar instruments which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens; and the failure by the Debtors to execute any documentation relating to the Replacement Liens shall in no way affect the validity, perfection or priority of such Replacement Liens.  If, however, the Agent or the Lenders, each in their respective sole discretion, shall determine to file any such financing statements, notices of lien or similar instruments, or to otherwise confirm perfection of such Replacement Liens, the Debtors are authorized to cooperate with and assist in such process, the stay imposed by § 362(a) of the Bankruptcy Code hereby is lifted to allow the filing and recording of a certified copy of this Order or any such financing statements, notices of lien or similar instructions, and all such documents shall be deemed to have been filed or recorded at the time and date of this Order.

8.    Anything in this Order to the contrary notwithstanding, the Debtors shall be prohibited from using Cash Collateral absent further order of this Court, five (5) calendar days after the Required Lenders notify the Debtors (and their counsel and counsel for the Committee) in writing that an event of default has occurred and is continuing.  The occurrence of any of the following shall constitute an event of default under this Order:

US_ACTIVE-106475617.5

(a)    (i) This Court enters an order finding that the Debtors have engaged in fraudulent conduct (either prior to or after the Petition Date); or (ii) imminent danger exists with respect to all or any material portion of the Prepetition Collateral.

(b)    The Debtors fail to perform any of their obligations in accordance with the terms of this Order, including, without limitation, the Debtors' failure to use Cash Collateral in the manner and in the amounts provided for in the Budget as set forth in Paragraph 2 hereof, or to provide the information or access required in Paragraph 12 hereof.

(c)    Any representation or warranty made by the Debtors under this Order or any pleading, certificate, report or financial statement delivered to the Agent in these Chapter 11 Cases proves to have been false or misleading in any material respect as of the time when made or given (including by the omission of material information necessary to make such representation, warranty or statement not misleading).

(d)    The Debtors shall file a motion seeking or this Court shall enter an order appointing a Chapter 11 trustee or an examiner with expanded powers beyond those set forth in Bankruptcy Code §1104(c).

(e)    The Debtors shall file a motion seeking or this Court shall enter an order dismissing the Chapter 11 Cases or converting them to cases under Chapter 7 of the Bankruptcy Code.

US_ACTIVE-106475617.5

(f)     Without the prior written consent of the Required Lenders, the Debtors shall file a motion seeking to grant a third party a security interest or lien upon all or part of any property of the Debtors that has a priority which is senior to, or pari passu with, the Prepetition Liens or Replacement Liens of the Agent or the Lenders in all or any of a portion of such property.

(g)     Without the prior written consent of the Required Lenders, the Debtors seek to establish additional deposit and/or other accounts or move any Cash Collateral to an account other than with the Agent.

(h)     Entry of an order by this Court extending the Debtors' exclusive periods for the filing and confirmation of a plan of reorganization.

(i)     An order confirming the Debtors' Plan of Reorganization has not been entered by this Court on or before the sixtieth day after the Petition Date.

(j)     All conditions precedent to the effectiveness of the Debtors' Plan of Reorganization have not occurred on or before seventy-fifth day after the Petition Date. Nothing in this Order shall be deemed to waive the right of the Debtors or any successor thereto, to bring a motion requesting that this Court authorize the use of Cash Collateral over the objection of the Agent or the Lenders or any parties' rights to contest any such motion, upon any termination of the Debtors' right to use Cash Collateral pursuant to the terms of this Order due to the occurrence of any of the foregoing events of default.

9.     The liens and security interests of the Agent and Lenders in the Prepetition Collateral or Postpetition Collateral shall not be rendered invalid or unenforceable or valid or enforceable as a result of the Debtors' commingling of assets after the Petition Date.  In addition,

15

the Debtors' cash management systems and accounts procedures shall be deemed to satisfy any burden of the Agent and the Lenders after the Petition Date to trace or segregate the proceeds of the Postpetition Collateral.

10.    The Debtors are authorized to perform all acts that are deemed reasonably necessary by the Agent or the Lenders to effectuate the terms and conditions of this Order.

11.    Any stay, modification, reversal or vacation of this Order shall not affect the validity of any obligation of the Debtors to the Agent or the Lenders incurred pursuant to this Order.  Notwithstanding any such stay, modification, reversal or vacation, all use of Cash Collateral and all obligations incurred by the Debtors pursuant hereto prior to the effective date of such stay, modification, reversal or vacation, shall be governed in all respects by the original provisions hereof and the Agent and the Lenders shall be entitled to all the rights, privileges and benefits, including without limitation, the Replacement Liens and Superpriority Claims granted herein.

12.    Unless the Required Lenders shall otherwise agree, upon written notice to the Debtors, to voluntarily limit or reduce any level of financial reporting deemed unnecessary by the Required Lenders, the Debtors shall provide to the Agent and the Committee financial reporting, reasonably acceptable in format to the Required Lenders, to be delivered in accordance with the timetables set forth in this Order and, to the extent not inconsistent with this Order, the timetables provided by the Prepetition Loan Documents.[3]  Such reporting and timetables shall include (without limitation) (i) on or before the second business day of every

---

[3]    In the event there is a conflict between the reporting and/or timetables in this Order and the reporting and/or timetables in the Prepetition Loan Documents, this Order shall control in all respects.

US_ACTIVE-106475617.5

week, a rolling thirteen (13) week budget for the Debtors setting forth (a) controllable costs,

including business expenses, which shall include but not be limited to payroll, trade payables,

and other ordinary course of business expenses, and reorganization costs and expenses, but

excluding costs and expenses of the Debtors', Agent's and Lenders' professionals (such costs the

"**Controllable Costs**" and such budget, the "**Controllable Costs Budget**"); and (b) non-

controllable costs relating to the Debtors', Agent's and Lenders' professionals (the "**Non-**

**Controllable Costs Budget**"); (ii) on or before noon on the second business day of every other

week (a) a reconciliation on a line-by-line basis, with a description of any material variance, of

the Controllable Costs Budget for the prior week or partial week period against (1) the actual

expenses for such week or partial period, and (2) the actual cash flow for such week or partial

week period (collectively, the "**Reconciliation**"); (b) a cash balance summary setting forth the

aggregate, collected cash balances in each deposit account of the Debtors together with book

cash balances for the Debtors, in each case as of the end of the prior week or partial week period;

(c) an aged accounts payable summary by vendor as of the end of the prior week or partial week

period; and (d) such other reporting as reasonably requested by the Required Lenders.

Additionally, absent the prior written consent of the Required Lenders, the Debtors shall not seek

to establish additional deposit and/or other accounts or move any Cash Collateral to an account

other than with the Agent.  Notwithstanding anything to the contrary herein, absent further order

of the Court, (i) payment to Committee Professionals of fees and expenses authorized under this

Order shall not exceed $250,000 in the aggregate (the "**Committee Expense Cap**"); and (ii) any

portion of the Committee Investigation Fund (as defined below) actually used by a Committee

US_ACTIVE-106475617.5

and its professionals shall be deducted from, and shall reduce dollar-for-dollar the Committee

Expense Cap.

        13.      The provisions of this Order and any actions taken pursuant hereto shall

survive entry of any order which may be entered (a) confirming any plan of reorganization in any

of the Chapter 11 Cases, (b) converting any of the Chapter 11 Cases to a Chapter 7 case or (c)

dismissing any of the Chapter 11 Cases, and the terms and provisions of this Order as well as the

Superpriority Claims and Replacement Liens granted pursuant to this Order shall continue in full

force and effect notwithstanding the entry of such order, and such Superpriority Claims and

Replacement Liens shall maintain their priority as provided by this Order.

        14.      The findings contained in paragraph D shall be binding upon all persons

and entities including, but not limited to the Debtors, the Committee, and any chapter 11 or

chapter 7 trustee hereafter appointed with respect to the Debtors and their estates, if any, except

to the extent that (a) in the event a party in interest with standing (other than the Debtors) (a

"**Challenging Party**") has timely filed an adversary proceeding or contested matter asserting any

claims or causes of action against the Agent or Lenders, objecting to the Lenders' claims or liens,

or challenging any of the stipulations set forth in Paragraph D hereof (a "**Challenge**") on or

before (i) with respect to any Challenging Party other than the Committee, July 6, 2011 or (ii)

with respect to the Committee, the date that is five (5) days prior to the commencement of a

hearing to confirm a plan of reorganization or, if applicable in either instance, the date that such

Challenging Party has sought standing to commence a lien challenge (unless such deadline is

extended by written consent of the Required Lenders or by order of the Court) (the "**Challenge

Period**") and (b) this Court rules in favor of the plaintiff or movant in any such timely-filed

US_ACTIVE-106475617.5

Challenge and enters a final order with respect thereto (a "**Successful Challenge**") provided, that nothing shall prohibit the Committee or a Challenging Party from requesting an extension of the deadlines in clause (a) hereof. If no such Challenge is timely commenced within the Challenge Period, all persons and entities shall be forever barred from bringing or taking such action and the stipulations contained in Paragraph D hereof shall be permanently and irrevocably binding upon all persons and entities. Any stipulation contained in Paragraph D that is not expressly challenged in a Challenge during the Challenge Period shall remain in full force and effect and shall permanently and irrevocably bind all entities and persons, despite the filing of any other Challenge in accordance with this paragraph. Notwithstanding the foregoing, in no event shall any Cash Collateral be used by any party to commence or prosecute any adversary proceeding, contested matter or other action against any or all of the Agent or the Lenders or challenge or raise any defense to the Prepetition Obligations, the Agent, the Lenders or the Replacement Liens; provided however that, up to $50,000 of the Cash Collateral (the "**Committee Investigation Fund**") may be used by the Committee to investigate the claims and liens of the Agent and Lenders.

       15.     Except with respect to the matters expressly governed by this Order and provided that no event of default has occurred and is continuing, entry of this Order shall be without prejudice to any and all rights, remedies, claims and causes of action which the Agent or the Lenders may have against the Debtors or third parties, and without prejudice to the right, if any, of the Agent and the Lenders to seek relief from the automatic stay in effect pursuant to § 362 of the Bankruptcy Code, or any other relief in the Chapter 11 Cases, and the right of the Debtors and any other party in interest to oppose any such relief. The provisions of this Order

US_ACTIVE-106475617.5

shall be binding upon and inure to the benefit of the Agent, the Lenders, the Debtors, and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the Chapter 11 Cases as a legal representative of the Debtors or the Debtors' estates.  Nothing in this order shall affect the rights of any party under § 363 (including subsection (k)) of the Bankruptcy Code.

US_ACTIVE-106475617.5

16.     This Court shall maintain jurisdiction to hear and determine all matters

arising from or relating to the interpretation or implementation of this Order.


Dated: July 5 , 2011                          _____
                                              MARY F. WALRATH
                                              UNITED STATES BANKRUPTCY JUDGE




                              End of Order




                                  21