# Exhibit A

# EXHIBIT A

# Summary of Confirmation Objections, Debtors' Responses and Proposed Settlements

## Resolved Objections

| DKT | OBJECTOR | SUMMARY OF OBJECTION | RESPONSE OF PLAN PROPONENTS |
|---|---|---|---|
| 182 | Maryland Commissioner of Financial Regulation and the Consumer Protection Division of the Office of the Attorney General of the State of Maryland (together, "Maryland") | Maryland asserts that the Disclosure Statement fails to fully disclose Maryland's participation and interest in the <u>Gomez v. Jackson Hewitt, Inc., et al.</u> litigation. Moreover, the Plan cannot be confirmed because, among other things, it extinguishes Maryland's right to fully and completely litigate the legal issues in <u>Gomez</u>, which implicate Maryland's police and regulatory power under the Maryland Credit Service Businesses Act (the "MCSBA"), as it has been interpreted by Maryland to apply to RALs.<br><br>**[Objection Withdrawn]** | **Proposed Addition to Confirmation Order**: Maryland and the Debtors have agreed to include the following paragraph in the confirmation order: "Consistent with this Court's Order of July 8, 2011, which recognized the exception to the automatic stay in 11 U.S.C. § 362(b)(4), for purposes of the State of Maryland pursuing its appellate rights in <u>Gomez v. Jackson Hewitt, Inc., et al.</u>, September Term 2011, Petition No. 124, currently pending in the Maryland Court of Appeals, the State's continued right to participate in the appeal in that matter, or otherwise with respect to its police and regulatory power, is not stayed or enjoined under the Debtors' Plan of Reorganization as confirmed by this Court." |
| 225 | Gator Hillcrest Partners, LLLP, Gator Piccadilly Partners, LLLP, Gator Myrtle Beach Partners, Ltd. and Gator Coastal Shopping Centre, LLC | Objectors object to assumption of leases associated with their properties to the extent that assumption does not comply with Bankruptcy Code section 365, including the Debtors' obligation to pay certain rent, charges and fees due under leases, in addition to the pre- and post-petition rental payments, through the effective date of assumption; and to provide sufficient information with respect to adequate assurance of future performance. | **Proposed Addition to Confirmation Order**: <u>Cure Provision.</u> The Reorganized Debtors shall cure any defaults under any Executory Contract and Unexpired Lease as set forth in the Plan and consistent with section 365(b)(1) of the Bankruptcy Code and will remain responsible for year-end adjustments and reconciliations and indemnity obligations, if any, in accordance with the terms of the respective Unexpired Lease, regardless of whether such charges or obligations accrued before or after Plan confirmation. |
| 228 | Watt Management Company | Objector objects to assumption of leases associated with its property unless the Debtors' comply with Bankruptcy Code section 365, including by paying all amounts due and owing under the lease through the effective date of assumption; paying other accrued but unbilled charges; continuing their indemnification obligations under the leases; and paying attorney fees, costs and interest in the event objectors take legal actions to protect its interests. | **Proposed Addition to Confirmation Order**: <u>Cure Provision.</u> The Reorganized Debtors shall cure any defaults under any Executory Contract and Unexpired Lease as set forth in the Plan and consistent with section 365(b)(1) of the Bankruptcy Code and will remain responsible for year-end adjustments and reconciliations and indemnity obligations, if any, in accordance with the terms of the respective Unexpired Lease, regardless of whether such charges or obligations accrued before or after Plan confirmation.<br><br>The Debtors and Watt Management have also agreed upon a cure amount. |
| 231 | Liberty Mutual Insurance Company | Liberty Mutual asserts that the Plan should not be confirmed without the addition of explicit language which clarifies that Liberty's contractual rights, and the Debtors' reciprocal obligations, under directors & officers insurance policies issued to the Debtors' by Liberty are not impaired by confirmation of the Plan and that Liberty is not precluded from enforcing the insurance agreements. | **Proposed Addition to Confirmation Order**: "With respect to any Assumed Contracts and/or any Insurance Contracts (as defined below), notwithstanding any other terms or provisions in the Plan, the Confirmation Order, any exhibit or Plan document, any finding of fact and/or conclusion of law with respect to the confirmation of the Plan, or any Final Order or opinion entered on appeal from the Confirmation Order (including any other provision that purports to be preemptory or supervening), the Confirmation Order: (i) is without prejudice to the legal, equitable or contractual rights, remedies, claims, exclusions, limitations and/or defenses of Liberty Mutual Insurance Corporation or any related insurance companies (collectively, |

| DKT | OBJECTOR | SUMMARY OF OBJECTION | RESPONSE OF PLAN PROPONENTS |
|---|---|---|---|
| | | | "Liberty") or the Debtors and/or Reorganized Debtors under any insurance policies and any other Contracts related to the provision of insurance entered into by or issued to any of the Debtors or any of their predecessors (collectively "Insurance Contracts"), that may provide either pre- and/or post petition coverage for Claims asserted by or against Debtors and/or Reorganized Debtors; (ii) shall not expand or alter any insurance coverage under any of the Insurance Contracts, or shall be deemed to create any insurance coverage that does not otherwise exist, if at all, under the terms of the Insurance Contracts, including, without limitation, insurance coverage for any Debtor and/or Reorganized Debtor that is not a named insured under the Insurance Contracts; (iii) shall not be deemed to grant to any Person, other than Debtors and/or Reorganized Debtors, pursuant to the terms of any Insurance Contracts, any right to sue Liberty directly, in connection with any Claim, that such Person did not have under applicable non-bankruptcy law prior to the commencement of the Bankruptcy Case; (iv) shall not relieve Debtors (or any other Person or entity claiming to be an insured under any Insurance Contracts) from any obligations or duties imposed by any Insurance Contracts; (v) shall not be construed as an acknowledgment either that the Insurance Contracts cover or otherwise apply to any Claims or that any Claims are eligible for payment under any of the Insurance Contracts; (vi) shall not affect, impair or prejudice the claims and/or defenses of the Liberty, the Debtors and/or Reorganized Debtors under any Insurance Contract in any manner; (vii) shall not have any *res judicata*, collateral estoppel, or other preclusive effect on, or otherwise prejudice, diminish, impair or affect (under principles of waiver, estoppel, or otherwise) Liberty's, the Debtors and/or Reorganized Debtors legal, equitable or contractual rights or obligations under any Insurance Contract; (viii) shall not constitute an adjudication, judgment, trial, hearing on the merits, finding, conclusion, other determination, or evidence or suggestion of any such determination: (a) establishing the liability (in the aggregate or otherwise) or coverage obligation of Liberty for any Claims, including, *inter alia*, on the basis of the decision in UNR Industries, Inc. v. Continental Casualty Co., 942 F.2d 1101 (7th Cir. 1991); and/or (b) establishing the liability or obligation of Debtors and/or Reorganized Debtors with respect to any Claim. Notwithstanding the foregoing, and for the avoidance of doubt, the assumption by the Debtor, and assignment to the Reorganized Debtors, of any Insurance Contract shall not and shall not be deemed to affect, impair or prejudice the rights of the Reorganized Debtors to exercise the Debtors' rights under such assigned Insurance Contract." |
| 241 | Miramar Station LLC; Indian Hills Station, Inc.; Tower Station, Inc.; and Rolling Hills Station LLC (together, the "Station Landlords") | Objectors object to assumption of leases associated with their properties to the extent that assumption does not comply with Bankruptcy Code section 365, including the Debtors' obligation to pay certain rent, charges and fees due under leases, in addition to the pre- and post-petition rental payments, through the effective date of assumption; and to provide sufficient information with respect to adequate assurance of future performance.<br><br>[Objection Withdrawn] | Objection resolved, as Rolling Hills Station LLC and the Debtors have agreed upon a cure amount. Other landlords have agreed that they have no cure claims. |

| DKT | OBJECTOR | SUMMARY OF OBJECTION | RESPONSE OF PLAN PROPONENTS |
|---|---|---|---|
| 249 | Bexar County, et al. | Bexar County asserts that the Plan does not properly provide for payment of interest on the Taxing Authorities' claims as required by Bankruptcy Code sections 506(b) and 1129(b)(2)(A)(i)(II).<br>The Plan also fails to specifically provide for the retention of the Taxing Authorities' liens on collateral until their claims are paid, as required by Bankruptcy Code section 1129(b)(2)(A)(i)(I).<br><br>**[Objection Withdrawn]** | **Proposed addition to Confirmation Order**: "Allowed Secured Claims, if any, of the Texas Taxing Authorities' shall bear interest at the rate of 12% per annum, as determined by Texas Tax Code Section 33.01, from the petition date until such claims are paid in full. Further, the Texas Taxing Authorities shall retain their liens, if any, in accordance with applicable non-bankruptcy law for any pre- and post-petition unpaid taxes on Debtors' collateral until their claims are paid in full and their lien position, if any, shall not be diminished or primed by any Exit Financing approved by the Court in conjunction with confirmation of this Plan." |
| 267 | The United States | The United States raised various objections to the Plan which have been resolved as indicated in the next column. | **Proposed addition to Plan § 2.1**: "Notwithstanding any other provision in this Plan, Administrative Claims for any federal taxes shall accrue interest at the rate and in the manner established under 26 U.S.C. §§ 6621 and 6622."<br><br>**Proposed addition to Plan § 2.2**: "Unless the Holder of an Allowed Priority Tax Claim and the Debtors agree to a different treatment, on the Effective Date, each Holder of an Allowed Priority Tax Claim shall have such Claim Reinstated, provided however, that any Priority Tax Claims of the United States shall be paid in regular installment payments in cash over a period ending not later than five years after the date of the order for relief with interest at the rate and in the manner established under 11 U.S.C. § 511 and 26 U.S.C. §§ 6621-6622."<br><br>**Proposed addition to Plan § 6.4**: "Unless otherwise specifically provided for in this Plan or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest and penalties shall not accrue or be paid on any Claim, and no Holder of a Claim shall be entitled to interest and penalties accruing on or after the Petition Date through the date such Claim is satisfied in accordance with the terms of this Plan."<br><br>**Proposed addition to Plan § 6.7**: "Notwithstanding any other provision of the Plan, the United States' right to setoff and recoupment are preserved."<br><br>**Proposed addition to Plan § 9.7**: "Nothing in this Plan shall affect the ability of the United States to pursue any non-debtors to the extent allowed by non-bankruptcy law for any liabilities that may be related to any federal tax liabilities owed by the Debtors or the Debtors' Estates. Additionally, the United States may pursue police and regulatory actions or proceedings with respect to the Releasees in the manner, and by the administrative or judicial tribunals, in which the United States could have pursued such actions or proceedings as if this bankruptcy had never been commenced." |

# Unresolved Objections

| DKT | OBJECTOR | SUMMARY OF OBJECTION | RESPONSE OF PLAN PROPONENTS |
|---|---|---|---|
| 208, 209, 210, 211 | NTN Arizona, LLC and Kathryne L. Ward, Esq. (208); G.A.L.T. Investments, LLC, Tracie Eller, and Andrew Fornier (209); DJSG Utah Tax Service, LLC, Donald Godbehere, and Sheila Godbehere (210); and Ronald Clark (211). | The objectors, former franchisees of the Debtors, assert that the Plan misclassifies claims for prepetition damages to the objectors, who are former franchisees/defendants in litigation brought by the Debtors' prepetition. Prepetition claims of franchisees should be separately classified from those of other general unsecured claims. Objectors' claims for damages in connection with the Debtors' termination of their franchise agreement are priority claims based on nondischargeable debt. | The Debtors have properly classified all general unsecured creditors by placing them together in a single class. There is no legal requirement for placing the counterclaims of litigation defendants in their own class. Objectors' claims are not priority claims, nor are any such claims non-dischargeable. They are, instead, simple breach of contract or fraud claims which are dischargeable under the specific provisions of section 1141 of the Bankruptcy Code. The non-dischargeability provisions of section 523 of the Bankruptcy Code upon which objectors rely are inapplicable to reorganizing corporate debtors. |
| | | Objectors assert that the Plan has not been proposed in good faith as evidenced by the Debtors' continuation of their lawsuit against the objectors, which has no value and hence, is not in the best interests of the estate, and because of the Debtors' determination not to seek recovery of payments made to vendors and employees made prior to the Petition Date. | The Debtors' determination, in the exercise of their business judgment in the ordinary course of their business, to enforce their legal and equitable rights and pursue remedies including injunctive relief against current or former franchisees does not evidence that the Plan was not proposed in good faith. Likewise, the Debtors' determination in the exercise of their business judgment, and in consultation with their secured lenders who will be the owners of the reorganized company, to <u>not</u> pursue avoidance actions against vendors or employees on account of payments made to them prior to the Petition Date, is not evidence that the Plan was not proposed in good faith. Such determinations were made in order not to jeopardize valued business and employee relationships. |
| | | Objectors assert that the Plan is not feasible because the Debtors have not renewed their agreement with Wal-Mart and disclosure about Wal-Mart has been inadequate and misleading. | The Debtors expect to have a new agreement with Wal-Mart. The Disclosure Statement was adequate with respect to this matter, and the only creditors entitled to vote on the Plan were the Debtors' secured lenders, who were already intimately familiar with the status of the Debtors' discussions with Wal-Mart. |
| | | A trustee or, alternatively, an examiner should be appointed. | This conclusory assertion is not cognizable as an objection to confirmation, and no motion for appointment of a trustee or examiner has been made. There are no grounds for appointment of a trustee or examiner in this case, and objectors have failed to allege any. |
| 213 | Dana Watts and Yadira Mosquera | Objectors, who have sued the Debtors and one of their franchisees in that certain case captioned <u>Watts, et al. v. Jackson Hewitt Tax Service, Inc.</u> (Case No. 1:06-cv-6042 (E.D.N.Y.), allege that the Plan's release of claims against the Debtors should be clarified so that it is unequivocal that it does not release claims against the Debtors' franchisees and other non-Debtor parties named as defendants in the <u>Watts</u> case. Also, the Plan should not be approved without clarification that the objectors are permitted to collect on any judgment or settlement of claims in the <u>Watts</u> case against the Debtors' Errors & Omissions insurance policies. | The Plan does not purport to release non-Debtor defendants in the <u>Watts</u> case. Nonetheless, the Debtors will include a paragraph in the confirmation order stating as follows: "Notwithstanding anything in the Plan or this Confirmation Order to the contrary, no defendant other than the Debtors in that action styled <u>Watts, et al. v. Jackson Hewitt Tax Service, Inc.</u>, Case No. 1:06-cv-6042 (E.D.N.Y.) is being discharged or released by any provision of the Plan." The Plan does nothing to alter any rights of any party under any of the Debtors' insurance policies. |
| 224 | Verizon Communications Inc. | Verizon asserts that section 7.5 of the Plan improperly allows the Debtors to assume or reject executory contracts and leases post-confirmation. Moreover, the Plan improperly allows the Debtors to assume their agreements with Verizon without promptly curing | The Debtors and Verizon are in the process of determining an appropriate cure amount, which would resolve Verizon's objection. |

| DKT | OBJECTOR | SUMMARY OF OBJECTION | RESPONSE OF PLAN PROPONENTS |
|---|---|---|---|
| | | any outstanding defaults. | Section 7.5 of the Plan provides that the Debtors will assume or reject their executory contracts and unexpired leases as of the confirmation date, provided that the Debtors will have a limited right to later reject a contract or lease previously identified to be assumed if the parties are unable to resolve any dispute over the cure amounts. There is nothing about this limited proviso that alters the fact that the assumption/rejection determination is being made as of confirmation. The Debtors will establish at confirmation that they have the ability to promptly cure any outstanding arrearages under the Verizon agreement. |
| 240 339 | H&R Block Tax Services LLC and HRB Tax Group, Inc. | Prior to the Petition Date, H&R Block Tax Services LLC, the objector in docket number 240, sued the Debtors for alleged patent infringement. Prior to the Petition Date, the Debtors sued H&R Block, Inc. and certain affiliates, including HRB Tax Group, Inc., the objector in docket number 339, for violations of the Lanham Act. HRB Tax Group, Inc. filed counterclaims against the Debtors under the Lanham Act. Both objectors assert that the Disclosure Statement fails to adequately disclose the extent of the Debtors' alleged prepetition, postpetition and post-confirmation liability to H&R Block for alleged patent infringement and violations of the Lanham Act. | The Disclosure Statement was adequate with respect to these matters, as the only creditors entitled to vote on the Plan were the Debtors' secured lenders, who were already intimately familiar with the status of the Debtors' litigation with H&R Block. Moreover, the Disclosure Statement provides that "[t]he Company is, from time to time, subject to various asserted or unasserted legal proceedings and claims [and] the Company cannot ensure that the outcome of all current or future litigation will not have a material adverse effect on the Company and its results of operations." Disclosure Statement, Article V.D.13 (p. 27). |
| | | Objectors assert that the Plan does not satisfy the best interests test because, in a chapter 7 case, the Debtors would be liquidated and hence, would no longer be able to infringe H&R Block's patents and/or violate the Lanham Act. Moreover, because the Debtors are obtaining a discharge under their chapter 11 plan, H&R Block must wait until the next tax season to pursue its patent infringement and/or Lanham Act suits. On the other hand, in a chapter 7 case, the Debtors would not be able to discharge H&R Block's pre-petition patent infringement and Lanham Act claims, and H&R Block would not have to wait until the next tax season for the Debtors' next acts of infringement or Lanham Act violations in order to seek an injunction. | As an initial matter, H&R Block's suit/counterclaims are not "property" of the Debtors' estates under Bankruptcy Code section 1129(a)(7) (creditor must "receive or retain . . . on account of such claim . . . property of a value . . . .") (emphasis added). Accordingly, that the Plan will discharge any monetary claims that H&R Block has does not mean that H&R Block is being deprived of property that it would otherwise receive in a chapter 7. Moreover, the fact that a major competitor of a debtor such as H&R Block may benefit if it succeeds in driving a reorganizing competitor such as the Debtors out of business by causing its liquidation under chapter 7, does not mean that the reorganizing debtor's chapter 11 plan should not be confirmed. If that were the case, every chapter 11 debtor with competitors who would benefit by the debtor's absence from the market would be able to compel a debtor's liquidation under chapter 7. Indeed, the fact that a corporate chapter 11 debtor may obtain a statutory discharge whereas a chapter 7 corporate debtor may not has no bearing on the best interests test. H&R Block otherwise is not precluded from attempting to continue its patent infringement or Lanham Act suits with respect to any postpetition activity of the Debtors if H&R Block chooses to do so. Finally, H&R Block has, at best, only general unsecured claims with respect to its claims of prepetition patent infringement and Lanham Act violations, and such claims will be discharged. By H&R Block's own admission, there has been no postpetition infringement or violation by the Debtors (indeed, the tax season concluded before the Petition Date). |
| | | Objectors assert that the Plan is not feasible because the Debtors have not shown how they can pay H&R Block's postpetition claims that fall within the definition of Administrative Claims. | By H&R Block's own admission, there is no ongoing postpetition infringement of H&R Block's patents or Lanham Act violations by the Debtors. Specifically, H&R Block asserts that it will have "to wait until the next tax season in early 2012 for Jackson Hewitt's next acts of infringement." H&R Block Objection ¶ 8 |

5

| DKT | OBJECTOR | SUMMARY OF OBJECTION | RESPONSE OF PLAN PROPONENTS |
|---|---|---|---|
| | | | [Docket No. 240] (p. 3-4). Thus, H&R Block does not have any Administrative Claims and the Debtors are not required to show the ability to pay such non-existent claims in order to demonstrate the feasibility of the Plan. |
| | | Objectors assert that Class 4 General Unsecured Claims might recover value in a chapter 7 liquidation where an independent trustee can scrutinize the Class 3 Secured Senior Credit Facility Claims. | The Official Committee of Unsecured Creditors has the statutory authority to investigate the Class 3 Secured Senior Credit Facility Claims – and has done so. Speculative assertions about the Class 3 Senior Credit Facility Claims are not valid confirmation objections. |
| | | Objectors assert that the Plan has not been proposed in good faith because the Debtors are turning over ownership to the secured creditors while making no payment to the unsecured creditors. | The Plan has been proposed by the Debtors in good faith, with the legitimate and honest purposes of reorganizing the Debtors' ongoing businesses and enhancing the financial viability of each of the Debtors. That unsecured creditors are not entitled to receive a recovery in these cases does not demonstrate that the Plan has not been proposed in good faith. |
| 256 | Mid-Atlantic Fastax, LLC | The Debtors purchased certain tax preparation franchises prepetition from Mid-Atlantic pursuant to an Asset Purchase Agreement ("APA") dated January 18, 2011. The Debtors did so because of the determination by the Debtors' provider of refund anticipation loans that Mid-Atlantic was not eligible to participate in the loan program. Under the APA, the Debtors allegedly were obligated to make purchase price payments over time. Mid-Atlantic objects to the Debtors' proposed rejection of the APA because the APA is not an executory contract to be rejected. Moreover, if it is determined that the APA is in fact an executory contract, the Debtors cannot equitably reject the APA and still continue to operate the business, but instead must surrender the transferred/occupied property back to Mid-Atlantic. | This is not an objection to confirmation, but is instead an objection to the proposed rejection of the APA. The APA is an executory contract, as each party has continuing obligations under the APA, including the Debtors' obligations to operate the purchased franchises and make periodic payments to Mid-Atlantic, and Mid-Atlantic's obligations to deliver certain documents in connection with the transfer. Mid-Atlantic is not entitled to a return of the franchises upon rejection. Such relief would be, in effect, rescission of the APA. But rejection of an executory contract does not result in rescission. It is instead a breach that gives rise to a rejection damages claim. Moreover, the APA is not an unexpired lease, rejection of which would require that the premises be vacated. Even if the APA is not executory, Mid-Atlantic is the holder of a general unsecured claim for the outstanding purchase price payments. Such claim does not entitle Mid-Atlantic to a right of rescission and return of the franchises. |
| 262 | Brent Wooley and Simpson Varkey | Objectors are plaintiffs in a putative class action alleging breach of contract. In the litigation, plaintiffs assert that the Debtors' failed to honor their contractual commitments under various customer guaranty programs, pursuant to which the Debtors allegedly agreed to reimburse customers for certain errors in their tax returns that result in the imposition of fines or penalties. Plaintiffs assert that their claims are entitled to priority under section 507(a)(7) of the Bankruptcy Code, and that the Plan is defective for not specifying that plaintiffs' claims are entitled to such priority. Such claims should not be discharged unless the Debtors reaffirm their commitments under the guarantees. | This is not an objection to confirmation, but is instead an assertion that plaintiffs' breach of contract claims are entitled to priority. This issue should be resolved in the claim reconciliation process. To the extent the Court later determines that the plaintiffs' claims are priority claims, the Debtors will have sufficient working capital under their post-effective date financing facility to satisfy the claims. Moreover, the plaintiffs' claims are not entitled to priority treatment. While legitimate claims under the Debtors' guaranty programs effectively are entitled to priority treatment because the Debtors have already received court authority to honor such claims in full in the ordinary course and will continue to do so post-confirmation, plaintiffs' claims are instead simple breach of contract claims which are not entitled to priority. Indeed, some of plaintiffs' claims are actually against franchisees, and franchisees have their own, separate guarantee programs which are not affected in any way by the Debtors' bankruptcy. |

909349-New York Server 2A - MSW