IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                        :
In re:                                  :    Chapter 11
                                        :
JACKSON HEWITT TAX SERVICE              :    Case No. 11-11587 (MFW)
INC., et al.,                           :
                                        :    Jointly Administered
                Debtors.[1]             :    *Rel. Doc. 386*
- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER
(I) APPROVING (A) THE DISCLOSURE STATEMENT PURSUANT TO 11 U.S.C.
§§ 1125 AND 1126(c), (B) PREPETITION SOLICITATION PROCEDURES,
(C) FORM OF BALLOT, AND (D) PUBLICATION NOTICE, AND (II) CONFIRMING
THE AMENDED JOINT PREPACKAGED PLAN OF REORGANIZATION OF
JACKSON HEWITT TAX SERVICE INC. AND SUBSIDIARIES

        Upon the motion (the "Motion") of Jackson Hewitt Tax Service Inc. and its

subsidiaries, the debtors and debtors-in-possession in the above-captioned cases (the "Debtors"),

for entry of (i) an order (a) scheduling a combined hearing on the adequacy of the Debtors'

Disclosure Statement (as defined below) and confirmation of the Amended Joint Prepackaged

Plan of Reorganization of Jackson Hewitt Tax Service Inc. and Subsidiaries (the "Plan")[2], (b)

approving form and manner of the Combined Notice (as defined below), and (c) approving the

procedures for objecting to the adequacy of the Disclosure Statement and confirmation of the

Plan; and (ii) an order (the "Confirmation Order") (a) approving the adequacy of the Disclosure

Statement, (b) approving the prepetition solicitation procedures (the "Solicitation Procedures"),

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Jackson
       Hewitt Tax Service Inc. (9692), Jackson Hewitt Inc. (9705), Jackson Hewitt Technology Services LLC (2409),
       Tax Services of America, Inc. (7427), Jackson Hewitt Corporate Services Inc. (2415), and Hewfant Inc. (0545).
       The address for each of the Debtors, with the exception of Jackson Hewitt Technology Services LLC, is 3
       Sylvan Way, Parsippany, NJ 07054. The address for Jackson Hewitt Technology Services LLC is 501 N.
       Cattlemen Rd., Sarasota, FL 34232.

[2]    Capitalized terms not otherwise defined herein shall have the meanings given to them in the Plan.

(c) approving form of Ballot, (d) approving publication notice, and (e) confirming the Plan; and upon the order, dated May 25, 2011, granting, in part, the Motion (the "Scheduling Order") [Docket No. 47]; and the Court having considered the Debtors' Memorandum of Law in Support of Entry of an Order (I) Approving (A) the Disclosure Statement Pursuant to 11 U.S.C. §§ 1125 and 1126(c), (B) Prepetition Solicitation Procedures, (C) Form of Ballot, and (D) Publication Notice, and (II) Confirming the Amended Joint Prepackaged Plan of Reorganization of Jackson Hewitt Tax Service Inc. and Subsidiaries (the "Confirmation Brief") [Docket No. 349], the Declaration of Daniel P. O'Brien in Support of Confirmation of Amended Joint Prepackaged Plan of Reorganization of Jackson Hewitt Tax Service Inc. and Subsidiaries (the "O'Brien Declaration") [Docket No. 352], the Declaration of Lawrence Kwon in Support of Confirmation of Amended Joint Prepackaged Plan of Reorganization of Jackson Hewitt Tax Service Inc. and Subsidiaries (the "Kwon Declaration") [Docket No. 361] and the Declaration of Richard J. Mizak in Support of Confirmation of Amended Joint Prepackaged Plan of Reorganization of Jackson Hewitt Tax Service Inc. and Subsidiaries (the "Mizak Declaration") [Docket No. 354], each filed by the Debtors in advance of the Confirmation Hearing (as defined below); and the Court having held a hearing on August 8, 2011 pursuant to sections 1128 and 1129 of the Bankruptcy Code (as defined below) to consider confirmation of the Plan (the "Confirmation Hearing"); and the Court having admitted into the record and considered evidence at the Confirmation Hearing; and the Court having taken judicial notice of the docket of the Debtors' Chapter 11 Cases (as defined below) maintained by the clerk of the Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed with, all orders entered by, and all evidence and argument made, proffered or adduced at the hearings held before the Court during the

pendency of the Chapter 11 Cases; and after due deliberation thereon and good and sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[3]

A.  Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a)). This Court has jurisdiction over the above-captioned jointly administered chapter 11 cases of the Debtors (the "Chapter 11 Cases") pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and this Court has jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

B.  Filing of Plan. On May 24, 2011, the Debtors filed the Joint Prepackaged Plan of Reorganization of Jackson Hewitt Tax Service Inc. and Subsidiaries [Docket No. 15] (the "Initial Plan") and the Disclosure Statement for Prepetition Solicitation of Votes with respect to Joint Prepackaged Plan of Reorganization, dated May 23, 2011 [Docket No. 16] (including any supplements and annexes thereto) (the "Disclosure Statement"). On August 5, 2011, the Debtors filed the Plan which modified certain provisions of the Initial Plan [Docket No. 373] (the "Modifications").

C.  Plan Supplements. On June 23, 2011, the Debtors filed the First Plan Supplement pursuant to Article I of the Plan [Docket No. 177] (the "First Plan Supplement"), submitting therein a list of rejected contracts and leases and non-material modifications to the Plan. On June 23, 2011, The Garden City Group, Inc. ("GCG") served the Notice to Contract

---

[3] Each finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law. Each conclusion of law set forth or incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

and Lease Parties Concerning the Assumption and Rejection of Contracts and Leases Under the Debtors' Joint Prepackaged Plan of Reorganization on all parties to Unexpired Leases and Executory Contracts.[4]

        D.      On June 24, 2011, the Debtors filed the Second Plan Supplement pursuant to Article I of the Plan [Docket No. 184] (the "Second Plan Supplement"), containing therein a non-exclusive list of retained claims and causes of action.

        E.      On July 25, 2011, the Debtors filed the Third Plan Supplement pursuant to Article I of the Plan [Docket No. 322] (the "Third Plan Supplement"), disclosing therein the identities of the members of the New Board of Reorganized Jackson Hewitt and an amended list of rejected contracts and leases. On July 25, 2011, GCG served the Notice to Contract and Lease Parties Concerning the Rejection of Contracts and Leases Under the Debtors' Joint Prepackaged Plan of Reorganization.[5]

        F.      On July 26, 2011, the Debtors filed the Fourth Plan Supplement pursuant to Article I of the Plan [Docket No. 322] (the "Fourth Plan Supplement"), disclosing draft forms of certain documents necessary to implement the Plan, including the New Term Loan Facility, the New Revolving Credit Facility, the Intercreditor Agreement, the Shareholders' Agreement, and the Management and Investment Advisory Services Agreement.

        G.      On August 5, 2011, the Debtors filed the Fifth Plan Supplement pursuant to Article I of the Plan [Docket No. 369] (the "Fifth Plan Supplement"), disclosing draft forms of new corporate organizational documents for Reorganized Jackson Hewitt and a revised version of the Management and Investment Advisory Services Agreement.

---

[4]   See Affidavit of Service of Service of Alison Moodie [Docket No. 194].

[5]   See Affidavit of Service of Alison Moodie [Docket No. 328].

H.    On August 5, 2011, the Debtors filed the Sixth Plan Supplement pursuant to Article I of the Plan [Docket No. 374] (the "Sixth Plan Supplement"), disclosing the draft form of the Post Effective Date Trust Agreement (collectively, with the documents filed with the First Plan Supplement, the Second Plan Supplement, the Third Plan Supplement, the Fourth Plan Supplement, and the Fifth Plan Supplement, the "Plan Documents").

I.    Transmittal of Solicitation Package. Prior to the Petition Date, the Debtors, through their solicitation agent, GCG, caused the applicable form of ballot, in the form attached to the Motion as Exhibit D, (the "Ballot") and copies of the Disclosure Statement and Plan (the "Solicitation Packages"), to be served and distributed as required by sections 1125 and 1126 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 3017 and 3018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), all other applicable provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations applicable to such solicitation, including section 4(2) of the Securities Act of 1933 (as amended, and including the rules and regulations promulgated thereunder, the "Securities Act"). The Plan and Disclosure Statement were transmitted to all creditors entitled to vote on the Plan and sufficient time was prescribed for such creditors to accept or reject the Plan. Such transmittal and service was adequate and sufficient under the circumstances and no other or further notice is or shall be required.

J.    Mailing and Publication of Combined Notice. On or before May 26, 2011, the Debtors caused the Notice of Chapter 11 Bankruptcy Cases; Notice of Hearing on Disclosure Statement and Plan Confirmation; and Summary of Plan of Reorganization, attached to the Scheduling Order as Exhibit A (the "Combined Notice") to be mailed to all of the Debtors'

known creditors and interest holders of record.[6]  Additionally, beginning on June 2, 2011, the

Debtors published the Combined Notice in The Wall Street Journal (Global Edition) and in the

50 largest regional newspapers, with a collective circulation of almost 16 million.[7]  The Debtors

also published banner advertising on major internet websites such as Yahoo and CNN, as well as

through three major national online networks.  The internet banner advertising program delivered

over 130 million "impressions" or opportunities to see the banner.[8]  Publication of the Combined

Notice was in substantial compliance with the Scheduling Order and Bankruptcy Rule 2002(l).

On July 6, 2011, the Debtors caused the Notice of Adjournment of Hearing on Adequacy of the

Disclosure Statement and Confirmation of the Plan to be mailed to parties in interest in the

Chapter 11 Cases.[9]  The Debtors have given proper, adequate and sufficient notice of the hearing

to approve the Disclosure Statement as required by Bankruptcy Rule 3017(a).  The Debtors have

given proper, adequate and sufficient notice of the Confirmation Hearing as required by

Bankruptcy Rule 3017(d).  Due, adequate, and sufficient notice of the Disclosure Statement, the

Plan, along with deadlines for filing objections to the Plan and Disclosure Statement, has been

given to all known and unknown holders of Claims and Interests substantially in accordance with

the procedures set forth in the Scheduling Order.  No other or further notice is or shall be

required.

---

[6]  See Affidavit of Service of Isabel Baumgarten re: Notice of Chapter 11 Bankruptcy Cases; Notice of Hearing on Disclosure Statement and Plan Confirmation; and Summary of Plan of Reorganization [Docket No. 81].

[7]  See Declaration of Jeanne C. Finegan with Respect to Proof of Publication for Debtors' Combined Notice [Docket No. 161, ¶¶ 5, 6].

[8]  See id. at ¶ 8.

[9]  See Affidavit of Service of David Schwimmer re: Notice of Adjournment of Hearing on Adequacy of the Disclosure Statement and Confirmation of the Plan [Docket No. 264].

K.        Objections.  The deadline for filing objections to the adequacy of the Disclosure Statement and confirmation of the Plan has passed.  All objections and all reservations of rights that have not been withdrawn, waived, or settled, pertaining to the adequacy of the Disclosure Statement or confirmation of the Plan are overruled on the merits.

L.        Adequacy of Disclosure Statement.  Because the Plan was solicited prior to the Petition Date, the adequacy of the Disclosure Statement is governed by Bankruptcy Code sections 1125(b) and (g).  The Disclosure Statement contained extensive material information regarding the Debtors so that the holders of Secured Senior Credit Facility Claims entitled to vote on the Plan could make informed decisions regarding the Plan.  Additionally, the Disclosure Statement contains adequate information as that term is defined in Bankruptcy Code section 1125(a) and complies with any additional requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.  Specifically, but without limitation, the Disclosure Statement complies with the requirements of Bankruptcy Rule 3016(c) by sufficiently describing in specific and conspicuous bold language the provisions of the Plan that provide for releases and sufficiently identifying the persons and entities that are subject to the releases.

M.        Solicitation.  Sections 1125(g) and 1126(b) of the Bankruptcy Code apply to the solicitation of acceptances and rejections of the Plan, which occurred prior to the commencement of these Chapter 11 Cases.  Votes for acceptance or rejection of the Plan were solicited in good faith and in compliance with Bankruptcy Code sections 1125 and 1126, Bankruptcy Rules 3017 and 3018, and all other applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other rules, laws, and regulations.  In particular, the solicitation of the Plan commenced on May 23, 2011, in accordance with applicable nonbankruptcy law, and the deadline for holders of Secured Senior Credit Facility Claims to vote

to accept or reject the Plan (the "Voting Deadline") remained open until May 26, 2011, as extended for certain parties. Accordingly, the solicitation of the Plan complied with the provisions of Bankruptcy Code section 1125(g). The form of the Ballot was adequate and appropriate and complied with Bankruptcy Rule 3018(c). The form of the Ballot was sufficiently consistent with Official Form No. 14 and adequately addressed the particular needs of these Chapter 11 Cases and was appropriate for Class 3, which was the only Class entitled to vote to accept or reject the Plan.

N.     Good Faith Solicitation (11 U.S.C. § 1125(e)). All persons who solicited votes on the Plan, including any such persons released pursuant to sections 9.4(a) and 9.4(b) of the Plan, solicited such votes in good faith and in compliance with the applicable provisions of the Bankruptcy Code and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code as well as the exculpation and limitation of liability provision set forth in section 9.7 of the Plan and the injunctive provisions set forth in section 9.6 of the Plan.

O.     Tabulation Results. On May 31, 2011, GCG filed the Declaration of Craig E. Johnson of the Garden City Group, Inc. Certifying the Methodology for the Tabulation of Votes on and Results of Voting with respect to the Joint Prepackaged Plan of Reorganization of Jackson Hewitt Tax Service Inc. and Subsidiaries [Docket No. 76] (the "Tabulation Declaration"), certifying the method and results of the ballot tabulation for Class 3, which was the only Class entitled to vote under the Plan (the "Voting Class"). As evidenced by the Tabulation Declaration, the Voting Class has unanimously accepted the Plan with respect to each of the Debtors in accordance with section 1126 of the Bankruptcy Code. All procedures used to tabulate the Ballots were fair and reasonable and conducted in accordance with the applicable

provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

P.     <u>Bankruptcy Rule 3016</u>. The Plan is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement with the clerk of the Court simultaneously with the Plan satisfied Bankruptcy Rule 3016(b).

Q.     <u>Burden of Proof</u>. As more fully set forth herein, the Debtors, as proponents of the Plan, have met their burden of proving each of the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for confirmation of the Plan.

R.     <u>Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. The Plan satisfies section 1129(a)(1) of the Bankruptcy Code because it complies with the applicable provisions of the Bankruptcy Code, including, but not limited to: (a) the proper classification of Claims and Interests (11 U.S.C. §§ 1122, 1123(a)(1)); (b) the specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2)); (c) the specification of treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)); (d) provision for the same treatment of each Claim or Interest within a Class (11 U.S.C. § 1123(a)(4)); (e) provision for adequate and proper means for implementation (11 U.S.C. § 1123(a)(5)); (f) the prohibition against the issuance of non-voting equity securities (11 U.S.C. § 1123(a)(6)); (g) adequate disclosure of the procedures for determining the identities and affiliations of the directors, members and officers with respect to the Reorganized Debtors (11 U.S.C. § 1123(a)(7)); and (h) the inclusion of additional plan provisions permitted to effectuate the restructuring of the Debtors (11 U.S.C. § 1123(b)).

(a)     <u>Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1))</u>. In particular, Article III of the Plan adequately and properly identifies and classifies all Claims and

Interests other than Administrative Claims and Priority Tax Claims, which need not be classified. The Plan designates six (6) Classes of Claims and two (2) Classes of Interests. The Claims or Interests placed in each Class are substantially similar to other Claims or Interests, as the case may be, in each such Class, and such classification therefore satisfies section 1122 of the Bankruptcy Code. Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims or Interests. Thus, the Plan satisfies section 1123(a)(1) of the Bankruptcy Code.

(b)     Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)). The Plan specifies in Article III that Classes 1, 2, 7 and 8 are Unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(c)     Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). The Plan specifies in Article III that Classes 3, 4, 5 and 6 are Impaired under the Plan and sets forth the treatment of the Impaired Classes in Article III of the Plan, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(d)     No Discrimination (11 U.S.C. § 1123(a)(4)). Article III of the Plan provides for the same treatment for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest. Accordingly, the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

(e)     Implementation of the Plan (11 U.S.C. § 1123(a)(5)). Article V of the Plan provides adequate and proper means for implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

(f)     Nonvoting Equity Securities (11 U.S.C. § 1123(a)(6)). The organizational documents of each Reorganized Debtor shall be amended to provide for the inclusion of provisions prohibiting the issuance of nonvoting equity securities. Accordingly, the Plan satisfies section 1123(a)(6) of the Bankruptcy Code.

(g)     Selection of Officers and Directors (11 U.S.C. § 1123(a)(7)). The Debtors have identified proposed directors of the Reorganized Debtors in the Third Plan Supplement. Moreover, the Debtors' existing management will remain in place after the Effective Date. The manner of selection and appointment of such individuals is consistent with the interests of holders of Claims and Interests, and with public policy and, thus, satisfies section 1123(a)(7) of the Bankruptcy Code.

(h)     Additional Plan Provisions (11 U.S.C. § 1123(b)). The Plan's additional provisions are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code.

S.     Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).

The Debtors have complied with the applicable provisions of the Bankruptcy Code, the

Bankruptcy Rules, the Local Rules, the Scheduling Order, and other orders of this Court, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. In particular, the Debtors are proper debtors under section 109 of the Bankruptcy Code. The Debtors are proper proponents of the Plan pursuant to section 1121(a) of the Bankruptcy Code. The Debtors, as proponents of the Plan, complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Scheduling Order in transmitting the Plan, the Disclosure Statement, the Ballot and the Combined Notice and other related notices, and in soliciting and tabulating votes on the Plan.

T. Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Debtors have proposed the Plan in good faith, for proper purposes and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the formulation of the Plan and all modifications thereto. The Chapter 11 Cases were filed, and the Plan and the Modifications thereto were proposed, with the legitimate and honest purpose of reorganizing and maximizing the value of the Debtors and the recovery to claimholders. Therefore, the Debtors have proposed the Plan in good faith and not by any means forbidden by law, and section 1129(a)(3) of the Bankruptcy Code is satisfied with respect to the Plan.

U. Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). All payments made or to be made by the Debtors for services or costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, are subject to the approval of the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

V. Board of Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)). The Debtors have sufficiently disclosed the initial members of the New Board of Reorganized Jackson Hewitt, including the identity of any insider that will be employed or retained by Reorganized Jackson Hewitt. The Debtors have also disclosed the process and procedure for selecting additional members of the New Board of Reorganized Jackson Hewitt. In addition, the Debtors' existing management will remain in place after the Effective Date. The appointment to, or continuance in, such office of each individual, and the methods established therefore, are consistent with the interests of holders of Claims and Interests, and with public policy. Therefore, section 1129(a)(5) of the Bankruptcy Code is satisfied with respect to the Plan.

W. No Rate Changes (11 U.S.C. § 1129(a)(6)). Section 1129(a)(6) of the Bankruptcy Code is not applicable because the Plan does not provide for any change in rates over which a governmental regulatory commission has jurisdiction.

X. Best Interests Test (11 U.S.C. § 1129(a)(7)). The liquidation analysis attached as Appendix B to the Disclosure Statement, the Kwon Declaration, the O'Brien Declaration and other evidence proffered or adduced at the Confirmation Hearing, (1) are persuasive and credible, (2) are based upon reasonable and sound assumptions, (3) have not been controverted by other evidence, (4) provide a reasonable estimate of the liquidation values of the Debtors in the event the Debtors were liquidated under chapter 7 of the Bankruptcy Code, and (5) establish that the holders of Claims and Interests of each of (i) Impaired Classes 4, 5 and 6 will receive at least as much under the Plan as in a liquidation and (ii) Impaired Class 3 will receive more under the Plan than in a liquidation. In the event of a liquidation of the Debtors, the proceeds available for holders of Class 3 Claims would range from approximately $65 million to $80 million, with a recovery of only 18% to 23% for holders of such Claims.

Y.     Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).  Classes 1, 2, 7 and 8 are Unimpaired by the Plan and, therefore, under section 1126(f) of the Bankruptcy Code, such Classes are conclusively presumed to have accepted the Plan.  Class 3 was entitled to vote on the Plan and has unanimously voted to accept the Plan.  Accordingly, Bankruptcy Code section 1129(a)(8) has been satisfied with respect to Classes 1, 2, 3, 7 and 8.  Classes 4, 5 and 6 are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code, but, as found in paragraphs EE through HH below, the Plan is confirmable under Bankruptcy Code section 1129(b) notwithstanding the rejection of the Plan by such Classes.  Therefore, section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to these Classes.

Z.     Treatment of Administrative, Priority Tax and Other Priority Claims (11 U.S.C. § 1129(a)(9)).  The treatment of Administrative Claims and Other Priority Claims under the Plan satisfies the requirements of sections 1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment of Priority Tax Claims under the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.  The treatment of Priority Tax Claims that are Other Secured Claims satisfies the requirements of section 1129(a)(9)(D) of the Bankruptcy Code.

AA.     Allowed Secured Claims, if any, of the Texas Taxing Authorities[10] shall bear interest at the rate of 12% per annum, as determined by Texas Tax Code Section 33.01,

---

[10]   "Texas Taxing Authorities" means Bexar County; Brooks County; Brown CAD; Brownsville ID; Cameron County; Cameron County ID #06; City of Alamo; City of Del Rio; City of Ea-gle Pass; City of Edinburg; City of El Paso; City of Elsa; City of Harlingen; City of La Feria; City of La Joya; City of McAllen; City of Mercedes; City of Pearland; City of San Juan; City of Sullivan; City of Weslaco; Corsicana ISD; Cypress-Fairbanks ISD; Dallas County; Eagle Pass ISD; Ector CAD; Ed-couch-Elsa ISD; Edinburg CISD; Ellis County; Fan-nin CAD; Fort Bend County; Frio CAD; Gainesville ISD; Harlingen CISD; Harris County; Hays CISD; Hidalgo County ESD #02; Hood CAD; Hunt County; Irving ISD; Jim Wells CAD; Judson ISD; Katy ISD; Kaufman County; La Feria ID #03; Lamar CAD; Limestone County; Los Fresnos CISD; Mathis ISD; Maverick County; McLennan County; City of Memphis (TN); Mercedes ISD; Mission CISD; Montgomery County; Orange County; Parker CAD; Pecos-Barstow-Toyah ISD; Pharr-San Juan-Alamo ISD; Reeves County; Rio Grand City CISD; Rockwall·CAD; Rockwall County; Round Rock ISD; San Benito CISD; San Patricio County; Shary-land ISD; South Texas College; South Texas ISD; Tarrant County; Texas City ISD; Val Verde County; Victoria County; Ward County; Wharton County; Winkler County; Wood County; and Zavala CAD.

from the Petition Date until such Claims are paid in full. Further, the Texas Taxing Authorities shall retain their Liens, if any, in accordance with applicable non-bankruptcy law for any pre- and post-petition unpaid taxes on the Debtors' collateral until their Claims are paid in full. Their Lien position, if any, shall not be diminished or primed by any exit financing approved by the Court in conjunction with confirmation of this Plan.

BB.     Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).  Class 3 is Impaired, and, as evidenced by the Tabulation Declaration, which certified both the method and results of the voting, has unanimously voted to accept the Plan. Thus, at least one Impaired Class of Claims voted to accept the Plan, determined without including any acceptance of the Plan by any "insiders." Therefore, section 1129(a)(10) of the Bankruptcy Code is satisfied with respect to the Plan.

CC.     Feasibility (11 U.S.C. § 1129(a)(11)).  The financial projections in Appendix C to the Disclosure Statement, the O'Brien Declaration, the Kwon Declaration and the other evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other credible evidence or sufficiently challenged in any of the objections to the Plan, and (iii) establish that the Plan is feasible and that confirmation of the Plan is not likely to be followed by the liquidation of the Reorganized Debtors or the need for further financial reorganization of the Reorganized Debtors. Therefore, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

DD.     Payment of Fees (11 U.S.C. § 1129(a)(12)).  Section 1129(a)(12) of the Bankruptcy Code requires that certain fees listed in 28 U.S.C. § 1930, determined by the court at the hearing on confirmation of a plan, be paid or that provision be made for their payment. See 11 U.S.C. § 1129(a)(12). All fees payable under 28 U.S.C. § 1930 will be paid on the earlier of

when due or the Effective Date. From and after the Effective Date, the Reorganized Debtors shall be jointly liable for and shall pay the fees assessed against the Estates under 28 U.S.C. § 1930 until entry of a final decree closing the Chapter 11 Cases. Thus, the Debtors have satisfied section 1129(a)(12) of the Bankruptcy Code.

  EE. <u>Post Effective Date Reporting and Fees by Post Effective Date Trustee</u>. The Post Effective Date Trustee shall provide quarterly reports of receipts and disbursements to the Office of the United States Trustee and shall file such reports on the docket in the Chapter 11 Cases with thirty (30) days of the end of each calendar quarter; <u>provided, however</u>, the Reorganized Debtors shall remain solely responsible for timely payment of all United States Trustee fees incurred pursuant to 28 U.S.C. section 1930(a)(6) subsequent to the Effective Date of the Plan and the Post Effective Date Trust and the Post Effective Date Trustee shall have no liability therefor or in connection therewith.

  FF. <u>Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>. Section 7.2 of the Plan provides for the continuation of all retiree benefits after the Effective Date. However, the Debtors do not have any "retiree benefits" within the meaning given to such term in the Bankruptcy Code. Accordingly, section 1129(a)(13) of the Bankruptcy Code is not applicable.

  GG. <u>Section 1129(b); Confirmation of the Plan Over Nonacceptance of Impaired Classes</u>. Holders of Claims and Interests in Classes 4, 5 and 6 are deemed to have rejected the Plan (the "Rejecting Classes"). All of the requirements of section 1129(a) of the Bankruptcy Code, other than Bankruptcy Code section 1129(a)(8) with respect to such Classes, have been met. Notwithstanding the fact that the Rejecting Classes are deemed to reject the Plan and thus do not satisfy Bankruptcy Code section 1129(a)(8), the Plan may be confirmed pursuant to Bankruptcy Code section 1129(b)(1) because the Plan does not discriminate unfairly and is

fair and equitable with respect to the Rejecting Classes. Thus, the Plan may be confirmed notwithstanding the Debtors' inability to satisfy section 1129(a)(8) of the Bankruptcy Code. After entry of this Confirmation Order and upon consummation of the Plan, the Plan shall be binding upon the members of the Rejecting Classes.

HH.     The Plan does not discriminate unfairly because members within each Class are treated similarly. In particular, all of the Class 4 General Unsecured Claims, Class 5 Subordinated 510(b) Claims and Class 6 Interests in Jackson Hewitt are placed into their individual Classes and given the same respective treatment. Accordingly, the Plan does not discriminate unfairly with respect to the Rejecting Classes or any other Class of Claims or Interests.

II.     The Plan is fair and equitable with respect to the Rejecting Classes, because, in accordance with sections 1129(b)(2)(B) and (C) of the Bankruptcy Code, there are no holders of Claims or Interests junior to the holders of Class 4 General Unsecured Claims, Class 5 Subordinated 510(b) Claims and Class 6 Interests in Jackson Hewitt who will receive or retain any property under the Plan. Moreover, pursuant to the Plan, no holders of Claims against the Debtors senior to the Rejecting Classes are receiving more than full payment on account of such Claims against the Debtors. As set forth in the Kwon Declaration, there is insufficient value to pay in full Class 3, which has priority over the Rejecting Classes. Accordingly, the Plan may be confirmed notwithstanding the Debtors' failure to satisfy section 1129(a)(8) of the Bankruptcy Code as to the Rejecting Classes.

JJ.     Class 7 Intercompany Claims and Class 8 Intercompany Interests are Unimpaired and deemed to accept the Plan. Class 7 Intercompany Claims consists solely of the Claims of a Debtor held by another Debtor. Class 8 Intercompany Interests consists solely of the

Interests of a Debtor held by another Debtor. The preservation of Intercompany Claims and Intercompany Interests is a means to preserve the Reorganized Debtors' corporate structure that does not have any economic substance and that does not enable any claimholder or interest holder junior to the Rejecting Classes to retain or recover any value under the Plan. Accordingly, the Unimpaired status of Class 7 and Class 8 is consistent with the requirement that no holders of Claims or Interests junior to the holders of Claims or Interests in the Rejecting Classes will receive or retain any property under the Plan on account of such Claims or Interests. Accordingly, the Plan is fair and equitable and does not discriminate unfairly, as required by Bankruptcy Code section 1129(b), and may be confirmed under Bankruptcy Code section 1129(b) notwithstanding the Rejecting Classes' deemed rejection of the Plan.

KK. <u>Only One Plan (11 U.S.C. § 1129(c))</u>. Other than the Plan, no other plan has been filed in the Chapter 11 Cases. Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

LL. <u>Principal Purpose of Plan (11 U.S.C. § 1129(d))</u>. The principal purpose of the Plan is neither the avoidance of taxes nor the avoidance of the application of section 5 of the Securities Act, and no governmental unit has objected to confirmation of the Plan on any such grounds. Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

MM. <u>Satisfaction of Confirmation Requirements</u>. Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

NN. <u>Executory Contracts</u>. The Debtors have exercised reasonable business judgment in determining whether to assume or reject their Executory Contracts and Unexpired

Leases pursuant to Article VII of the Plan. Each assumption of an Executory Contract or Unexpired Lease pursuant to Article VII of the Plan shall be legal, valid and binding upon the applicable Debtor or Reorganized Debtor and their assignees or successors and all non-Debtor parties (and their assignees or successors) to such Executory Contract or Unexpired Lease, all to the same extent as if such assumption had been effectuated pursuant to an order of the Court entered before the date of the entry of this Confirmation Order (the "Confirmation Date") under section 365 of the Bankruptcy Code. Each assumption and rejection is in the best interests of the Reorganized Debtors, their Estates and all parties in interest in the Chapter 11 Cases.

    OO. With respect to any Assumed Contracts and/or any Insurance Contracts (as defined below), notwithstanding any other terms or provisions in the Plan, the Confirmation Order, any exhibit or Plan document, any finding of fact and/or conclusion of law with respect to the confirmation of the Plan, or any Final Order or opinion entered on appeal from the Confirmation Order (including any other provision that purports to be preemptory or supervening), the Confirmation Order: (i) is without prejudice to the legal, equitable or contractual rights, remedies, claims, exclusions, limitations and/or defenses of Liberty Mutual Insurance Corporation or any related insurance companies (collectively, "Liberty") or the Debtors and/or Reorganized Debtors under any insurance policies and any other Contracts related to the provision of insurance entered into by or issued to any of the Debtors or any of their predecessors (collectively "Insurance Contracts"), that may provide either pre- and/or post petition coverage for Claims asserted by or against Debtors and/or Reorganized Debtors; (ii) shall not expand or alter any insurance coverage under any of the Insurance Contracts, or shall be deemed to create any insurance coverage that does not otherwise exist, if at all, under the terms of the Insurance Contracts, including, without limitation, insurance coverage for any

Debtor and/or Reorganized Debtor that is not a named insured under the Insurance Contracts; (iii) shall not be deemed to grant to any Person, other than Debtors and/or Reorganized Debtors, pursuant to the terms of any Insurance Contracts, any right to sue Liberty directly, in connection with any Claim, that such Person did not have under applicable non-bankruptcy law prior to the commencement of the Bankruptcy Case; (iv) shall not relieve Debtors (or any other Person or entity claiming to be an insured under any Insurance Contracts) from any obligations or duties imposed by any Insurance Contracts; (v) shall not be construed as an acknowledgment either that the Insurance Contracts cover or otherwise apply to any Claims or that any Claims are eligible for payment under any of the Insurance Contracts; (vi) shall not affect, impair or prejudice the claims and/or defenses of the Liberty, the Debtors and/or Reorganized Debtors under any Insurance Contract in any manner; (vii) shall not have any *res judicata*, collateral estoppel, or other preclusive effect on, or otherwise prejudice, diminish, impair or affect (under principles of waiver, estoppel, or otherwise) Liberty's, the Debtors and/or Reorganized Debtors legal, equitable or contractual rights or obligations under any Insurance Contract; (viii) shall not constitute an adjudication, judgment, trial, hearing on the merits, finding, conclusion, other determination, or evidence or suggestion of any such determination: (a) establishing the liability (in the aggregate or otherwise) or coverage obligation of Liberty for any Claims, including, *inter alia*, on the basis of the decision in UNR Industries, Inc. v. Continental Casualty Co., 942 F.2d 1101 (7th Cir. 1991); and/or (b) establishing the liability or obligation of Debtors and/or Reorganized Debtors with respect to any Claim. Notwithstanding the foregoing, and for the avoidance of doubt, the assumption by the Debtor, and assignment to the Reorganized Debtors, of any Insurance Contract shall not and shall not be deemed to affect, impair or prejudice the

rights of the Reorganized Debtors to exercise the Debtors' rights under such assigned Insurance Contract.

PP.     Adequate Assurance.  The Debtors have cured, or provided adequate assurance that the Reorganized Debtors will cure, defaults (if any) under or relating to each of the Executory Contracts and Unexpired Leases that are being assumed by the Debtors pursuant to the Plan.  The Debtors have provided adequate assurance of future performance with respect to the Executory Contracts and Unexpired Leases to be assumed pursuant to the Plan.  Any other requirements for assumption under the Bankruptcy Code have been satisfied.

QQ.     Compensation and Benefit Programs.  All of the Debtors' programs, plans, agreements and arrangements relating to employee compensation and benefits, including, without limitation, all savings plans, retirement plans, healthcare plans, disability plans, severance plans, incentive plans, and life, accidental death and dismemberment insurance plans, entered into before the Petition Date and not since terminated, shall be deemed to be, and shall be treated as though they are (other than any Executory Contract rejected pursuant to the Plan), Executory Contracts that are assumed under the Plan, and the Debtors' and Reorganized Debtors' obligations under such programs, plans, agreements and arrangements shall survive Confirmation of the Plan and shall be fulfilled in the ordinary course of business.

RR.     D&O Liability Insurance Policies.  As of the Effective Date, the D&O Liability Insurance Policies shall be treated as if they were Executory Contracts that are assumed under the Plan and entry of this Confirmation Order shall constitute Court approval of the foregoing assumption.  Notwithstanding anything to the contrary contained in the Plan, Confirmation of the Plan shall not discharge, impair or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and

each such indemnity obligation shall be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no proof of claim need be filed.

SS.    Indemnification.  Except as otherwise specifically limited in the Plan, any obligations or rights of the Debtors or Reorganized Debtors to defend, indemnify, reimburse, or limit the liability of the Debtors' present and former directors, officers, employees, agents, representatives, attorneys, accountants, financial advisors, investment bankers and consultants (the "Covered Persons") pursuant to the Debtors' or Reorganized Debtors' certificates of incorporation, by-laws, policy of providing employee indemnification, applicable state law, or specific agreement in respect of any claims, demands, suits, Causes of Action, or proceedings against such Covered Persons based upon any act or omission related to such Covered Persons' service with, for, or on behalf of the Debtors prior to the Effective Date, excluding claims resulting from gross negligence, willful misconduct, or intentional tort, shall be treated as if they were Executory Contracts that are assumed under the Plan and shall survive the Effective Date and remain unaffected thereby, and shall not be discharged, irrespective of whether such defense, indemnification, reimbursement, or limitation of liability is owed in connection with an occurrence before or after the Petition Date.

TT.    Compromise and Settlement of Claims, Interests and Controversies.  In consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan, shall constitute a good faith compromise of all Senior Credit Facility Claims, Intercompany Claims and Intercompany Interests and controversies relating to the contractual, legal and subordination rights that a holder of a Senior Credit Facility Claim, Intercompany Claim or Intercompany Interest may have with respect to such Claim or Interest, or any distribution to be made on account of such Claim or Interest.  Entry of this Confirmation

Order shall constitute the Court's approval of the compromise or settlement of all Senior Credit Facility Claims, Intercompany Claims and Intercompany Interests and controversies, as well as a finding by the Court that such compromise or settlement is in the best interests of the Debtors, their Estates and holders of such Claims and Interests and is fair, equitable and reasonable.

UU. Settlement Regarding General Unsecured Claims. In accordance with Bankruptcy Rule 9019, the Plan constitutes a compromise and settlement among the Debtors, the Administrative Agent, the Lenders and the Creditors Committee, regarding the treatment of General Unsecured Claims under the Plan, and reflects and implements such compromise and settlement. Such compromise and settlement is made in exchange for consideration and is in the best interests of the Debtors, their Estates, the Lenders and the holders of General Unsecured Claims; is within the reasonable range of possible litigation outcomes, is fair, equitable and reasonable and is an essential element of the resolution of these chapter 11 cases in accordance with the Plan. The compromise and settlement embodied in the Plan: (i) falls within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), (b) and (d); (ii) is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (iii) is an integral element of the transactions incorporated in the Plan; (iv) confers a material benefit on, and is in the best interests of, the Debtors, their Estates and holders of General Unsecured Claims; (v) is vital to the overall objectives of the Plan to finally resolve all Claims; and (vi) is consistent with sections 105, 1123 and 1129 of the Bankruptcy Code and other applicable provisions of the Bankruptcy Code. The settlement and compromise embodied in the Plan has been negotiated at arm's length and has been entered into in good faith, eliminates the need for costly and time consuming litigation and paves the way toward achieving a successful reorganization. Entry of this Confirmation Order shall constitute the Court's approval of the compromise or settlement

between the Lenders and the Creditors Committee regarding the treatment of General Unsecured Claims, as well as a finding by the Court that such compromise or settlement is in the best interests of the Debtors, their Estates, the Lenders, and holders of General Unsecured Claims and is fair, equitable and reasonable.

VV.     Releases and Discharges.  Each of the discharge, release, injunction, indemnification and exculpation provisions set forth in the Plan (as modified by this Confirmation Order, as applicable): (i) is within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), (b), and (d); (ii) is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (iii) is an integral element of the transactions incorporated into the Plan; (iv) confers a material benefit on, and is in the best interests of, the Debtors, their Estates and their creditors; (v) is important to the overall objectives of the Plan to finally resolve all Claims among or against the key parties in interest in the Chapter 11 Cases with respect to the Debtors, their organization, capitalization, operation and reorganization; and (vi) is consistent with sections 105, 1123, 1129, and other applicable provisions of the Bankruptcy Code.  The record of the Confirmation Hearing and the Chapter 11 Cases is sufficient to support the discharge, release, injunction, indemnification and exculpation provisions contained in the Plan.

WW.     Issuance of New Common Stock.  Issuance of the New Common Stock is an essential element of the Plan and is in the best interests of the Debtors, their Estates and their creditors.  The Debtors are authorized, without further approval of this Court or any other party, to issue the New Common Stock in accordance with the Plan and to execute and deliver all agreements, documents, instruments and certificates relating thereto.

XX.     Distributions of New Common Stock are Exempt from Registration Under the Securities Act.  The distribution of the New Common Stock pursuant to the Plan in exchange

for the Secured Senior Credit Facility Claims is exempt from the registration requirements of section 5 of the Securities Act, as amended, and any state or local laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker dealing in, a security pursuant to and subject to the limitations in section 1145(a) of the Bankruptcy Code.

YY.    Exit Facilities.  The Reorganized Debtors' entry into the New Term Loan Facility and the New Revolving Credit Facility (together, the "Exit Facilities") is an exercise of reasonable business judgment, proposed in good faith, critical to the success and feasibility of the Plan and in the best interests of the Debtors, the Reorganized Debtors, their Estates and creditors. The liens, claims, liabilities and obligations of the Debtors and/or the Reorganized Debtors created under the Exit Facilities are in the best interests of the Debtors' Estates and creditors and necessary to the consummation of the Plan, and are valid, binding and enforceable and not subject to avoidance.  The Exit Facilities were proposed, negotiated and entered into or will be entered into, as the case may be, by the Debtors, the Reorganized Debtors, and the counterparties thereto without collusion, in good faith, and from arm's-length bargaining positions.  All documents necessary to implement the Exit Facilities shall, upon execution, be valid, binding and enforceable agreements and are not in conflict with any applicable federal or state laws.

ZZ.    Plan Conditions to Confirmation.  The conditions to confirmation set forth in Article VIII of the Plan have been satisfied or waived in accordance with the terms of the Plan.

AAA.  Plan Conditions to Consummation.  Each of the conditions to the Effective Date, as set forth in Article VIII of the Plan, is reasonably likely to be satisfied or waived in accordance with the terms of the Plan.

BBB.  Waiver of Bankruptcy Rule 3020(e).  Under the circumstances, it is appropriate that the fourteen-day stay imposed by Bankruptcy Rule 3020(e) be waived.

CCC.  Plan Modifications.  The Modifications to the Plan, including the settlement with the Creditors Committee, which changes are incorporated in the Plan, were made in a manner consistent with Article XI of the Plan and do not materially or adversely modify the treatment of any Claims or Interests.  The Plan, as modified, satisfies the requirements of Bankruptcy Code sections 1122 and 1123.  Accordingly, pursuant to Bankruptcy Rule 3019, these Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Secured Senior Credit Facility Claims be afforded an opportunity to change previously cast acceptances of the Plan.  The Notice of Filing of Amended Plan constitutes due and sufficient notice thereof under the circumstances of these Chapter 11 Cases.  Such changes are approved pursuant to section 1127(a) of the Bankruptcy Code.

## DECREES

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

### Confirmation of Plan and Related Matters

1.  Approval of Disclosure Statement.  Pursuant to Bankruptcy Rule 3017(b), the Disclosure Statement is approved under Bankruptcy Code sections 1125(a) and 1125(g).

2.  Objections.  All objections and all reservations of rights that have not been withdrawn, waived or settled, pertaining to the adequacy of the Disclosure Statement and confirmation of the Plan are overruled on the merits.

3.  Solicitation.  The Solicitation Procedures, including the procedures for transmittal of the Solicitation Packages, the form of Ballot, and the Voting Deadline, are approved under Bankruptcy Code sections 1125 and 1126, Bankruptcy Rules 3017 and 3018, the

Local Rules, all other applicable provisions of the Bankruptcy Code, and all other rules, laws, and regulations applicable to such solicitation. The solicitation materials are approved under Bankruptcy Code sections 1125 and 1126, Bankruptcy Rules 3017 and 3018, the Local Rules, all other applicable provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations.

4. <u>Confirmation</u>. The Plan, in the form attached hereto as <u>Exhibit A</u>, which includes and incorporates the Modifications, including all provisions thereof and all Exhibits attached thereto, is approved and confirmed under section 1129 of the Bankruptcy Code. All acceptances previously cast for the Plan are hereby deemed to constitute acceptances of the Plan in the form attached to this Confirmation Order. Each term and provision of the Plan is valid and enforceable pursuant to its terms. All references to the Plan shall mean the Plan as modified by the Modifications.

5. <u>Confirmation Order Binding on All Parties</u>. Subject to the provisions of the Plan and Bankruptcy Rule 3020(e), in accordance with sections 1123(a), 1141(a) and 1142(a) of the Bankruptcy Code and notwithstanding any otherwise applicable law, upon the occurrence of the Effective Date, the terms of the Plan and this Confirmation Order shall be binding upon, and inure to the benefit of: (a) the Debtors; (b) the Reorganized Debtors; (c) any and all known and unknown holders of Claims or Interests, including any and all current or former customers of the Debtors on account of the sale of financial products, including refund anticipation loans (irrespective of whether such Claims or Interests are Impaired under the Plan or whether the holders of such Claims or Interests accepted, rejected or are deemed to have accepted or rejected the Plan); (d) any other person giving, acquiring or receiving property under the Plan; (e) any and all non-Debtor parties to Executory Contracts or Unexpired Leases with any of the Debtors;

and (f) the respective heirs, executors, administrators, trustees, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, guardians, successors or assigns, if any, of any of the foregoing.

6. Accordingly, on the Effective Date, all settlements, compromises, releases, waivers, discharges, exculpations and injunctions set forth in the Plan shall be effective and binding on all Persons who may have had standing to assert any settled, compromised, released, waived, discharged, exculpated or enjoined causes of action, and no other Person or entity shall possess such standing to assert such causes of action after the Effective Date.

7. Notice. Notice of the Plan, the exhibits thereto (and all amendments and Modifications thereto), the Disclosure Statement, the Solicitation Packages and the Confirmation Hearing, and the related objection deadlines was proper and adequate, including with respect to any and all current or former customers of the Debtors on account of the sale of financial products, including refund anticipation loans.

8. Effectiveness of All Actions. All actions contemplated by the Plan are hereby authorized and approved in all respects (subject to the provisions of the Plan). The approvals and authorizations specifically set forth in this Confirmation Order are nonexclusive and are not intended to limit the authority of any Debtor or Reorganized Debtor or any officer or director thereof to take any and all actions necessary or appropriate to implement, effectuate and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order. Pursuant to this Confirmation Order, Delaware General Corporate Law section 303, and other applicable law, the Debtors and Reorganized Debtors are authorized and empowered, without action of their respective stockholders or members or boards of directors or managers (but subject to consent rights, if any, set forth in the Plan) to take any and all such

actions as any of their executive officers may determine are necessary or appropriate to implement, effectuate and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order.

9.     Distributions.  The provisions of the Plan governing distributions are approved and found to be fair and reasonable.

10.     Revesting of Assets and Operation as of the Effective Date.  If any Person which has filed or recorded any Liens and/or encumbrances (whether by way of financing statements, mortgages, pledges or other records, documents or agreements) shall not have delivered to the Debtors prior to the Effective Date, in proper form for recordation or filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of mortgages, deeds of trust, and any other documents necessary for the purposes of documenting the release of all Liens and encumbrances which the Person has or may assert with respect to any property of the Debtors' Estates and which do not survive confirmation under the Plan, then the Debtors, the Reorganized Debtors or any agent under the Exit Facilities may execute and file such terminations, statements, instruments, releases and other documents on behalf of such person or entity with respect to the property in question.  In addition, except as otherwise agreed by the Debtors, each Person that has possession of or holds any property of the Estates as collateral shall be required and directed to return such property to the Debtors, the Reorganized Debtors or the agent under the Exit Facilities and all Persons other than the agent under the Exit Facilities shall be directed to terminate and shall be deemed to have terminated all control agreements, access agreements and other documentation reflecting or perfecting any Liens or other priority.

11.     New Organizational Documents.  On or before the Effective Date, Reorganized Jackson Hewitt shall, and is hereby authorized to, file its amended certificate of incorporation, which is attached to the Fifth Plan Supplement as Exhibit L, with the Delaware Secretary of State.

12.     Cancellation of Interests in Jackson Hewitt.  On the Effective Date, all notes, instruments, certificates and other documents evidencing Interests in Jackson Hewitt shall be cancelled, terminated and extinguished and the obligations of the Debtors thereunder or in any way related thereto shall be discharged.

13.     Cancellation of Existing Credit Agreement and Hedge Agreements.  All notes, stock, instruments, certificates, agreements, side letters, fee letters and other documents evidencing or giving rise to Senior Credit Facility Claims and Claims under the Hedge Agreements shall be deemed cancelled, and the obligations of the Debtors thereunder or in any way related thereto shall be fully released, terminated, extinguished and discharged, effective upon the Effective Date, in each case without further notice to or order of the Court, act or action under applicable law, regulation, order, or rule, or any requirement of further action, vote, or other approval or authorization by any Person, except as otherwise provided in the Plan, and all Claims arising thereunder shall be deemed satisfied on the Effective Date.  Notwithstanding the foregoing and anything contained in the Plan or this Confirmation Order: the Existing Credit Agreement and the Hedge Agreements shall continue in effect to the extent necessary to allow the Reorganized Debtors and/or the Administrative Agent to make distributions under the Plan to the holders of Allowed Secured Senior Credit Facility Claims pursuant to the Existing Credit Agreement and/or Hedge Agreements and for the Administrative Agent to perform such other functions with respect thereto; provided however, that the preceding proviso shall not affect the

29

discharge of Claims or Interests pursuant to the Bankruptcy Code, this Confirmation Order or the Plan, or result in any expense or liability to the Reorganized Debtors, except to the extent set forth in or provided for under the Plan; provided further, that notwithstanding the foregoing, all mortgages, deeds of trust, Liens, pledges or other security interests shall be and are hereby deemed to be fully released and discharged in accordance with Article IX of the Plan.

14. Issuance of New Common Stock. Issuance of the New Common Stock in accordance with the Plan is approved. Each of the Debtors and the Reorganized Debtors are authorized and empowered, without further approval of this Court or any other party, to take such actions and to perform such acts as may be necessary, desirable or appropriate to implement the issuance of the New Common Stock in accordance with the Plan and to execute and deliver all agreements, documents, securities, instruments and certificates relating thereto. The New Common Stock is hereby deemed issued as of the Effective Date regardless of the date on which it is actually distributed. All New Common Stock issued by the Reorganized Debtors pursuant to the provisions of the Plan is hereby deemed to be duly authorized and issued, fully paid and nonassessable. The New Common Stock shall be subject to dilution by the Management Incentive Plan. Each holder of New Common Stock shall be a party to, and bound by the provisions of, the Shareholders' Agreement, which is annexed to the Fourth Plan Supplement as Exhibit G.

15. Exemption from Registration. The issuance by the Reorganized Debtors of the New Common Stock pursuant to the Plan in exchange for the Secured Senior Credit Facility Claims shall be exempt from the registration requirements of the Securities Act and any state and local securities laws pursuant to section 1145 of the Bankruptcy Code.

16.     <u>Approval of the Exit Facilities</u>.  Entry into the Exit Facilities is approved. On the Effective Date, the Reorganized Debtors, as applicable, are authorized to (a) enter into the Exit Facilities together with all guarantees evidencing obligations of the Reorganized Debtors thereunder and security documents, (b) execute such mortgages, control agreements, certificates and other documentation and deliveries as the agent under the Exit Facilities reasonably requests, and (c) deliver insurance and customary opinions (collectively, the documents in (a)-(c), the "Exit Facility Documents"), and such documents and all other documents, instruments and agreements to be entered into, delivered or contemplated thereunder shall become effective in accordance with their terms on the Effective Date, and are ratified.  The Reorganized Debtors, as applicable, may enter into such amendments and modifications as may be agreed to by and between the Reorganized Debtors, as applicable, and the lenders and agent under the Exit Facilities on and after the Effective Date without further order of the Court to effectuate the transactions contemplated by the Plan and this Confirmation Order, notwithstanding anything to the contrary in the Plan.  The Exit Facility Documents shall constitute the legal, valid, binding and authorized obligations of the Reorganized Debtors, as applicable, enforceable in accordance with their terms.  The Reorganized Debtors are authorized and directed to pay the fees and costs required thereunder and to perform their obligations thereunder.  On the Effective Date, all of the liens and security interests granted in accordance with the Exit Facility Documents are hereby deemed approved and shall be legal, valid, binding, enforceable and non-avoidable liens on the collateral in accordance with the terms of the Exit Facility Documents.  All obligations of the Reorganized Debtors arising pursuant to the Exit Facility Documents are in exchange for fair and reasonably equivalent value and do not constitute a preferential transfer or fraudulent transfer or fraudulent conveyance under applicable federal or state laws and will not subject the lenders

party to the Exit Facilities to any liability by reason of incurrence of such obligations or grant of such liens or security interests under applicable federal or state laws, including but not limited to successor or transferee liability.

17.     Executory Contracts and Unexpired Leases. On the Effective Date, all Executory Contracts and Unexpired Leases of the Debtors, other than any Executory Contract or Unexpired Lease that (a) was previously assumed or rejected, (b) was listed on Exhibit E to the First Plan Supplement or Exhibit E-1 to the Third Plan Supplement as an Executory Contract or Unexpired Lease to be rejected by the Debtors pursuant to the Plan, (c) is subject to a pending motion to assume or reject as of the Confirmation Date, or (d) expired or terminated pursuant to its own terms, shall be deemed assumed as of the Confirmation Date (but subject to the occurrence of the Effective Date) in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code and such assumptions are approved. For the avoidance of doubt, the Debtors are assuming the lease of their headquarters at 3 Sylvan Way, Parsippany, NJ 07054, as modified, as of the Effective Date of the Plan.

18.     All Executory Contracts or Unexpired Leases (including any postpetition amendments) assumed by the Debtors pursuant to the foregoing (the "Assumed Contracts") shall remain in full force and effect for the benefit of the Reorganized Debtors, as applicable, and be enforceable by the Reorganized Debtors, as applicable, in accordance with their terms notwithstanding any provision in such Assumed Contracts that purports to prohibit, restrict or condition such assumption. Any provision in the Assumed Contracts that purports to declare a breach or default based in whole or in part on the Chapter 11 Cases is hereby deemed unenforceable, and the Assumed Contracts shall remain in full force and effect. Any postpetition lease termination agreements entered into by any of the Debtors with respect to nonresidential

real property leases constitute Assumed Contracts and are hereby assumed pursuant to this Confirmation Order.

19. <u>Cure Provision</u>. The Reorganized Debtors shall cure any defaults under any Executory Contract and Unexpired Lease as set forth in the Plan and consistent with section 365(b)(1) of the Bankruptcy Code and will remain responsible for year-end adjustments and reconciliations and indemnity obligations, if any, in accordance with the terms of the respective Unexpired Lease, regardless of whether such charges or obligations accrued before or after Plan confirmation.

20. <u>Rejected Contracts and Leases</u>. All Executory Contracts and Unexpired Leases listed on <u>Exhibit E</u> to the First Plan Supplement and <u>Exhibit E-1</u> to the Third Plan Supplement shall be rejected as of the Effective Date. This Confirmation Order shall constitute an order of the Court approving such rejections pursuant to Bankruptcy Code sections 365 and 1123(b)(2) (subject to the occurrence of the Effective Date).

21. <u>Retained Causes of Action</u>. In accordance with section 1123(b)(3) of the Bankruptcy Code, the Reorganized Debtors shall retain and may (but are not required to) enforce all Retained Actions, except for the Transferred Avoidance Actions, which shall be transferred into the Post-Effective Date Trust in accordance with the Plan. For the avoidance of doubt, the Transferred Avoidance Actions are not Retained Actions and the Transferred Avoidance Actions shall not be released by Article XI of the Plan or any provision of this Confirmation Order. After the Effective Date, the Reorganized Debtors, in their sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), without further approval of the Court. The Reorganized Debtors or any successors, in the exercise of their sole discretion, may pursue such Retained Actions so long as

it is in the best interests of the Reorganized Debtors or any successors holding such rights of action. The failure of the Debtors to specifically list any claim, right of action, suit, proceeding or other Retained Action in the Plan does not, and will not be deemed to, constitute a waiver or release by the Debtors or the Reorganized Debtors of such claim, right of action, suit, proceeding or other Retained Action, and the Reorganized Debtors shall retain the right to pursue such claims, rights of action, suits, proceedings and other Retained Actions in their sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches will apply to such claim, right of action, suit, proceeding, or other Retained Action upon or after the Confirmation or consummation of the Plan.

22.     Settlement Regarding General Unsecured Claims. In accordance with and pursuant to Bankruptcy Rule 9019, the compromise and settlement among the Debtors, the Administrative Agent, the Lenders and the Creditors Committee, which provides for the establishment and transfer of assets to the Post Effective Date Trust, is hereby approved. The terms and provisions of the Plan providing for the establishment of the Post-Effective Date Trust, the transfer of assets into the Post Effective Date Trust, and the administration of the Post Effective Date Trust for the benefit of Holders of General Unsecured Claims is hereby approved. The Post Effective Date Trust Agreement, in substantially the form attached to the Plan as Exhibit N, is hereby approved.

23.     Authority with Respect to the Post Effective Date Trust. The Post Effective Date Trust Agreement, as it may be amended from time to time by the Post Effective Date Trustee, and related documents effectuating the settlement between the Debtors, the Creditors Committee, the Lenders and the Administrative Agent are approved in their entirety.

The Debtors and the Reorganized Debtors are hereby authorized to take any necessary action and to execute any documents, including the Post Effective Date Trust Agreement, required to effectuate the settlement, establish the Post Effective Date Trust, transfer the Post Effective Date Trust Initial Funding and the Transferred Avoidance Actions into the Post Effective Date Trust, and otherwise fully comply with Article XII of the Plan and the Post Effective Date Trust Agreement, all without further approval of the board of directors of the Debtors or the Reorganized Debtors. The Post Effective Date Trust Agreement shall constitute a legal, binding and authorized obligation of the Reorganized Debtors, enforceable in accordance with its terms. The Transferred Avoidance Actions shall be automatically transferred into the Post Effective Date Trust upon the occurrence of the Effective Date and execution of the Post Effective Date Trust Agreement. The Debtors shall transfer the Post Effective Date Trust Initial Funding irrevocably into the Post Effective Date Trust on the Effective Date and the Administrative Agent and the Lenders agrees to same and release and waive any right in such funds.

24.  <u>Appointment of the Post Effective Date Trustee</u>.  On or prior to the Effective Date, subject only to execution of the Post Effective Date Trust Agreement, the Post Effective Date Trustee shall be appointed and shall be deemed to have accepted such appointment.

25.  <u>Objections</u>.  The Post Effective Date Trustee shall be entitled to resolve and object to any and all Class 4 General Unsecured Claims.  Any objections shall be served on the respective claimant and filed with the Bankruptcy Court on or before the latest of (a) 180 days after the Effective Date, (b) 180 days after a proof of Claim has been filed in accordance with any bar date order entered in these Chapter 11 Cases or (c) such later date as may be fixed

by the Bankruptcy Court, whether fixed before or after the dates specified in clauses (a) and (b) above.

26. <u>Authority to Prosecute Objections</u>. After the Effective Date, the Post Effective Date Trustee shall have the authority to file objections to Class 4 General Unsecured Claims and to settle, compromise, withdraw, or litigate to judgment objections to Class 4 General Unsecured Claims. Subject to the terms of the Post Effective Date Trust Agreement, the Post Effective Date Trustee may enter into and consummate settlements and compromises of Disputed General Unsecured Claims without notice to or approval by the Bankruptcy Court.

27. <u>Authority to Prosecute and Settle Transferred Avoidance Actions</u>. After the Effective Date, and subject to the Terms of the Post Effective Date Trust Agreement, only the Post Effective Date Trustee shall have the authority to maintain, prosecute, settle, dismiss, abandon or otherwise dispose of the Transferred Avoidance Actions. Subject to the terms of the Post Effective Date Trust Agreement, the Post Effective Date Trustee may enter into and consummate settlements and compromises of the Transferred Avoidance Actions without notice to or approval by the Bankruptcy Court.

28. <u>Debtors' Cooperation and Supply of Information and Documentation</u>. Upon written request from the Post Effective Date Trustee, the Debtors shall provide all reasonable cooperation, and shall supply all reasonable information, records and documentation, to the Post Effective Date Trustee that is helpful or required to promptly, diligently and effectively (i) evaluate, contest, object to and reconcile the General Unsecured Claims, and (ii) evaluate, file, prosecute and settle the Transferred Avoidance Actions. In particular, upon request by the Post Effective Date Trustee, the Debtors shall use commercially reasonable efforts to promptly provide copies of claim registers, creditor service, shipment and payment histories,

creditor addresses and notice information, relevant contracts and agreements, invoices, other business records, correspondence files and any and all such other information and documentation reasonably requested by the Post Effective Date Trustee. Additionally, upon request by the Post Effective Date Trustee, the Debtors shall use commercially reasonable efforts to make available personnel with information relevant to the General Unsecured Claims and the Transferred Avoidance Actions.

29. <u>Preservation of Privilege and Defenses</u>. In connection with the Transferred Avoidance Actions and Disputed General Unsecured Claims, any applicable privilege or immunity of the Debtors, including, without limitation, any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral), and all defenses, claims, counterclaims and rights to setoff and recoupment shall vest in the Post Effective Date Trust and may be asserted by the Post Effective Date Trustee. Nothing in the Plan, nor any action taken by the Debtors in connection with the Plan, including any action taken pursuant to the Debtors' obligations under section 12.21 of the Plan, shall be (or be deemed to be) a waiver of the any privilege or immunity of the Debtors, including, without limitation, any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral). To the extent the Debtors provide privileged information to the Post Effective Date Trustee, the Post Effective Date Trust, or any party or person associated with the Post Effective Date Trust, such privileged information shall remain privileged.

30. <u>Exculpation</u>. From and after the Effective Date, the Post Effective Date Trustee and any professionals retained by the Post Effective Date Trustee shall be exculpated by the Holders of General Unsecured Claims and other beneficiaries of the Post Effective Date

Trust from any and all Claims or causes of action and assertions of liability arising out of their performance of the duties conferred upon them by the Post Effective Date Trust Agreement, or any orders of the Bankruptcy Court, except to the extent an act constitutes bad faith, gross negligence, willful misconduct, or actual fraud. No Holder of a General Unsecured Claim or representative thereof shall have or pursue any Claim or cause of action against the Post Effective Date Trustee or his professionals for taking any action in accordance with the Post Effective Date Trust Agreement. Nothing in this provision shall be deemed to alter the provisions of the Post Effective Date Trust Agreement.

31.     Retention of Jurisdiction. As provided in Article X of the Plan, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising out of, and/or related to, the Chapter 11 Cases and the Plan, including, but not limited to, (i) interpreting and implementing the provisions of this Post Effective Date Trust Agreement, (ii) reconciliation of General Unsecured Claims and (iii) the Transferred Avoidance Actions.

32.     Deadlines. The deadlines set forth in Articles II and VII of the Plan are hereby approved, including but not limited to, the following:

(a)     Claims of Retained Professionals. Professionals or other Persons asserting a Professional Fee Claim must file and serve on the Debtors and such other Persons who are designated by the Bankruptcy Rules, this Confirmation Order or other order of the Court an application for final allowance of such Professional Fee Claim no later than forty-five (45) days after the Effective Date. Objections to any Professional Fee Claim must be filed and served on the Reorganized Debtors, the Office of the U.S. Trustee and the requesting party no later than sixty-fifty (65) days after the Effective Date.

(b)     Cure Deadline. The Reorganized Debtors shall cure any monetary defaults under any Executory Contract or Unexpired Lease to be assumed pursuant to the Plan by paying to the non-Debtor counterparty the full amount of any monetary default in Cash in the ordinary course of business, provided that such payment shall in no event be made later than thirty (30) days after the Effective Date. If there is any dispute over the amount of a cure claim that cannot be resolved consensually, then either party must file with the Court a request for allowance and payment of such cure claim within seventy-five (75) days from the Effective Date.

33.     Exemption from Certain Transfer Taxes and Recording Fees.  The (a) issuance, transfer or exchange of debt and equity under the Plan, (b) the creation of any mortgage, deed of trust or other security interest, (c) the making or assignment of any contract, lease or sublease, or (d) the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan shall be exempt from all taxes (including, without limitation, stamp tax or similar taxes) to the fullest extent permitted by section 1146 of the Bankruptcy Code, and the appropriate state or local governmental officials or agents shall not collect any such tax or governmental assessment and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

34.     Appointment of Directors.  The election and appointment of the following five persons to the New Board of Reorganized Jackson Hewitt to serve from and after the Effective Date as provided in the Plan, and in accordance with the new governing documents of Reorganized Jackson Hewitt, is approved: John Bolduc; Jackson Craig; Jason T. Eglit; Philip H. Sanford and Benjamin A. Taylor.

## Discharge of Debtors, Releases and Injunctions

35.     Discharge of Debtors.  Upon the Effective Date, the Debtors, and each of them, shall be deemed discharged and released under section 1141(d)(1)(A) of the Bankruptcy Code from any and all known and unknown Claims, including, but not limited to, demands and liabilities that arose before the Effective Date in favor of any Person, including any and all current or former customers of the Debtors on account of the sale of financial products, including refund anticipation loans, and all debts of the kind specified in section 502 of the Bankruptcy Code, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under

section 501 of the Bankruptcy Code, (b) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code, (c) a Claim based upon such debt is or has been disallowed by order of the Court, or (d) the Holder of a Claim based upon such debt accepted the Plan.

36.     As of the Effective Date, except as provided in the Plan or this Confirmation Order, all such Persons shall be precluded from asserting against the Debtors or the Reorganized Debtors, any other or further Claims, debts, rights, Causes of Action, claims for relief, liabilities, or equity interests relating to the Debtors based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date. Except as provided in the Plan or this Confirmation Order, this Confirmation Order shall be a judicial determination of discharge of all such Claims and other debts and liabilities against the Debtors, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtors at any time, to the extent that such judgment relates to a discharged Claim.

37.     Notwithstanding that the Plan discharges claims for monetary damages against the Debtors by the plaintiff, H&R Block Tax Services, Inc., asserted in H&R Block Tax Services, Inc. v. Jackson Hewitt Tax Services, Inc., Case No. 6:08-CV-37 in the United States District Court for the Eastern District of Texas, Tyler Division (the "Patent Case") for acts preceding the Effective Date, neither the Plan, this Order, nor any discharge or discharge injunction under the Plan shall prevent the plaintiff in the Patent Case from seeking injunctive relief based upon actions by Debtor preceding the Effective Date.

38.     Application of Absolute Priority Rule.  No Class of Claims or Interests junior to Class 3 Secured Senior Credit Facility Claims is entitled to receive or retain property

under the Plan. Therefore, the discharge of the Class 4 and Class 5 Claims and the Class 6 Interests pursuant to the Plan is approved.

39.     Releases, Limitations of Liability and Indemnification. The releases set forth in section 9.4 of the Plan, the exculpation and limitation of liability provisions set forth in section 9.7 of the Plan, and the indemnification obligations set forth in section 7.4 of the Plan are incorporated in this Confirmation Order as if set forth in full herein and are hereby approved and authorized in their entirety and shall be, and hereby are, effective and binding, subject to the respective terms thereof, on all persons and entities who may have had standing to assert released Claims or Causes of Action, and no Person or entity shall possess such standing to assert such Claims or Causes of Action after the Effective Date.

40.     Notwithstanding anything in the Plan or this Confirmation Order to the contrary, no defendant other than the Debtors in that action styled Watts, et al. v. Jackson Hewitt Tax Service, Inc., Case No. 1:06-cv-6042 (E.D.N.Y.) is being discharged or released by any provision of the Plan.

41.     Injunctions. Except as provided in the Plan or this Confirmation Order, as of the Effective Date, all Persons that have held, currently hold, may hold, or allege that they hold, a Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, or liability that is released or discharged under Article IX of the Plan, including any and all former customers of the Debtors on account of the sale of financial products, including refund anticipation loans, are permanently enjoined from taking any of the following actions against the Debtors, the Reorganized Debtors, and their respective Affiliates and their property on account of any such released or discharged Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, or liability: (a) commencing or continuing, in any manner or in any place,

41

any action or other proceeding; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any Lien or encumbrance; (d) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to any released Person; or (e) commencing or continuing any action, in each such case in any manner, in any place, or against any Person that does not comply with or is inconsistent with the provisions of the Plan or this Confirmation Order.

42.     Consistent with this Court's Order of July 8, 2011, which recognized the exception to the automatic stay in 11 U.S.C. § 362(b)(4), for purposes of the State of Maryland pursuing its appellate rights in <u>Gomez v. Jackson Hewitt, Inc.</u>, September Term 2011, Petition No. 124, currently pending in the Maryland Court of Appeals, the State's continued right to participate in the appeal in that matter, or otherwise with respect to its police and regulatory power, is not stayed or enjoined under the Plan as confirmed by this Court.

43.     If Mr. Frank A. Kaman and Ms. Ellen M. Kaman prevail on their appeal filed in the case of <u>Jackson Hewitt Inc. vs. Frank A. Kaman, DDS and Ellen M. Kaman</u> pending in the District Court of Appeal for the Second District of Florida, Case No.: 2D10-1801, the Kamans may proceed against the supersedeas bond for payment of the judgment, but may not pursue any of the Debtors or the Reorganized Debtors to execute any judgment.

44.     Nothing in the Plan or Confirmation Order shall or shall be deemed to prejudice defenses (if any) in any pending litigation and setoff rights (if any) within the meaning of section 553 of the Bankruptcy Code of any of HRB Tax Group, Inc. and the following persons: (i) DJSG Utah Tax Service, LLC and Donald and Sheila Godbehere, (ii) NTN Arizona, LLC formerly d/b/a/ National Tax Network, LLC and Kathryne L. Ward, (iii) G.A.L.T. Investments, LLC; Traci Elter; and Andrew Fournier, and (iv) Ronald N. Clark, <u>provided</u>, <u>however</u>, that the

foregoing shall not and shall not be deemed to prejudice any rights of the Debtors and Reorganized Debtors to contest and dispute the merits and/or timeliness of any such asserted defenses and setoff rights, and any claims and counterclaims that have been or might be asserted against the Debtors and Reorganized Debtors in any pending litigation.

45. Exculpations. None of the Releasees shall have or incur any liability to any Entity, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the Disclosure Statement, the formulation, negotiation, or implementation of the Plan, the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors; provided, however, that the foregoing provisions of this exculpation shall have no effect on the liability of any Releasee that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct. Nothing in the Plan shall affect the ability of the United States to pursue any non-Debtors to the extent allowed by non-bankruptcy law for any liabilities that may be related to any federal tax liabilities owed by the Debtors or the Debtors' Estates. Additionally, the United States may pursue police and regulatory actions or proceedings with respect to the Releasees in the manner, and by the administrative or judicial tribunals, in which the United States could have pursued such actions or proceedings as if this bankruptcy had never been commenced.

46. Term of Bankruptcy Injunction or Stays. Except as provided otherwise in the Plan, from and after the Effective Date, the automatic stay of section 362(a) of the Bankruptcy Code shall terminate. All injunctions, stays or exculpation provisions contained in

the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

47. <u>Authorization of Management and Investment Advisory Services Agreement</u>. The Management and Investment Advisory Services Agreement was negotiated in good faith amongst the parties, is fair and reasonable, and the form of such Management and Investment Advisory Services Agreement filed by the Debtors as part of the Fifth Plan Supplement is hereby approved. The Reorganized Debtors are authorized to enter into the Management and Investment Advisory Services Agreement.

## Notice and Other Provisions

48. <u>Notice of Entry of Confirmation Order and Effective Date</u>. On or before the fifth (5th) day following the occurrence of the Effective Date, the Debtors shall serve notice of entry of this Confirmation Order and the occurrence of the Effective Date, pursuant to Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c), on all holders of Claims and Interests, the U.S. Trustee, all parties that have filed notices of appearance in the Chapter 11 Cases, counsel to Bayside Capital, Inc. and counsel to the Administrative Agent under the Existing Credit Agreement by causing a notice of this Confirmation Order and Effective Date in substantially the form of the notice annexed hereto as <u>Exhibit B</u> (the "Notice of Confirmation and Effective Date"), which form is hereby approved, to be delivered to such parties by first class mail, postage prepaid. The Notice of Confirmation and Effective Date shall also be published in The Wall Street Journal (Global Edition) and any other publications the Debtors deem necessary in their sole discretion.

49. Notice need not be given or served under the Bankruptcy Code, the Bankruptcy Rules, the Local Rules or this Confirmation Order to any Person to whom the

Debtors mailed a Combined Notice, but received such notice returned marked "undeliverable as addressed," "moved - left no forwarding address," "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Person of that Person's new address.

50.     Mailing and publication of the Notice of Confirmation and Effective Date in the time and manner set forth in the preceding paragraphs shall be good and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no other or further notice is necessary. The Notice of Confirmation and Effective Date shall have the effect of an order of the Court, shall constitute sufficient notice of the entry of this Confirmation Order to any filing and recording officers, and shall be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

51.     Failure to Consummate Plan and Substantial Consummation.  If the Effective Date does not occur, then the Plan, any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), the assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be null and void.  In such event, nothing contained in the Plan or this Confirmation Order, and no acts taken in preparation for consummation of the Plan, shall, or shall be deemed to, (a) constitute a waiver or release of any Claims by or against or Interests in the Debtors or any other Person, (b) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, (c) constitute an admission of any sort by the Debtors or any other Person, or (d) be construed as a finding of fact or conclusion of law with respect thereto.

52.     References to Plan Provisions.  The failure to include or specifically reference any particular provision of the Plan in this Confirmation Order shall not diminish or

impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its entirety.

53. Exhibits. Each reference to a document, agreement or summary description that is in the form attached as an exhibit to the Plan in this Confirmation Order or in the Plan shall be deemed to be a reference to such document, agreement or summary description in substantially the form of the latest version of such document, agreement or summary description filed with the Court (whether filed as an attachment to the Plan or filed separately).

54. Plan Provisions Mutually Dependent. The provisions of the Plan are hereby deemed nonseverable and mutually dependent.

55. Confirmation Order Provisions Mutually Dependent. The provisions of this Confirmation Order are hereby deemed nonseverable and mutually dependent.

56. Confirmation Order Supersedes. It is hereby ordered that this Confirmation Order shall supersede any orders of this Court issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order.

57. Conflicts Between Confirmation Order and Plan. The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided, however, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

58.   Separate Confirmation Orders.  This Confirmation Order is and shall be a separate Confirmation Order with respect to each of the Debtors in each Debtor's separate Chapter 11 Case for all purposes.

59.   Consents and Approvals.  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any State or any other governmental authority with respect to the implementation or consummation of the Plan and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan.

60.   Retention of Jurisdiction.  Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, this Court, except as otherwise provided in the Plan or herein, shall retain exclusive jurisdiction over all matters arising in, arising out of, and/or related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, but not limited to, the matters set forth in Article X of the Plan.  From and after the Effective Date, the Court does not have or retain jurisdiction over the Exit Facilities or any disputes that may arise among the parties thereto.

61.   Final Order.  This Confirmation Order is intended to be a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

62.   Immediate Effectiveness.  Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, 8001, 8002 or otherwise, immediately upon the entry of this Confirmation Order, the terms of the Plan, the First Plan Supplement, the Second Plan Supplement, the Third Plan Supplement, the Fourth Plan Supplement, the Fifth Plan Supplement and this Confirmation Order shall be, and hereby are, immediately effective and enforceable and deemed binding upon

the Debtors, the Reorganized Debtors, any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are Impaired under the Plan or whether the holders of such Claims or Interests accepted, were deemed to have accepted, rejected or were deemed to have rejected the Plan), any trustees or examiners appointed in the Chapter 11 Cases, all persons and entities that are party to or subject to the settlements, compromises, releases, discharges, injunctions, stays and exculpations described in the Plan or herein, each person or entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors and the respective heirs, executors, administrators, successors, assigns, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians, if any, of any of the foregoing. The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order subject to satisfaction or waiver of the conditions precedent to consummation set forth in Article VIII of the Plan.

Dated: Wilmington, Delaware
    August 9, 2011

_____
UNITED STATES BANKRUPTCY JUDGE